

Plaintiffs' Exhibit P

**IN RE: ASBESTOS LITIGATION Limited to: Bowser, Gerald**

**C.A. No. N10C-05-104 ASB**

**SUPERIOR COURT OF DELAWARE, NEW CASTLE**

*2011 Del. Super. LEXIS 253*

**June 3, 2011, Decided**

**NOTICE:**

THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Related proceeding at *In re Asbestos Litig., 2012 Del. Super. LEXIS 10 (Del. Super. Ct., Jan. 10, 2012)*
Motion granted by, in part *In re Asbestos Litig., 2012 Del. Super. LEXIS 165 (Del. Super. Ct., Mar. 13, 2012)*

**DISPOSITION:** [*1] UPON DEFENDANT PARKER-HANNIFIN CORPORATION'S MOTION FOR SUMMARY JUDGMENT GRANTED IN PART and DENIED IN PART.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff widow of a deceased mechanic maintained an asbestos exposure claim against defendant manufacturer of aircraft brakes. The manufacturer moved for summary judgment.

**OVERVIEW:** The decedent worked as an aircraft mechanic for several decades, beginning in the 1960s. The court found that the widow failed to address the manufacturer's argument that helicopter brakes did not enter the market under its brand until 1983, and the decedent's deposition testimony indicated that he did not believe he was exposed to asbestos while working at one of his jobs. The manufacturer's motion was proper as it related to those circumstances. However, the manufacturer's liability for the mechanic's alleged exposure to the manufacturer's brakes was otherwise a triable issue. The mechanic testified, among other things, that he removed and installed the manufacturer's brakes during his lengthy career. Taken in the context of the mechanic's full testimony, the presence of the manufacturer's boxes at his workplaces offered reasonable support for his assertions that he knew he used the manufacturer's brakes despite being unable to remember particular jobs or plane models that used the manufacturer's products. The record provided sufficient evidence of the mechanic's exposure to asbestos from the manufacturer's brakes to render summary judgment inappropriate.

**OUTCOME:** The manufacturer's motion for summary judgment was granted in part as to Count III of the complaint and as to the allegations that the decedent was exposed to asbestos from the manufacturer's helicopter brakes

between 1961 and 1967, and denied in part as to the remaining claims.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Burden Shifting*
[HN1] When considering a motion for summary judgment, the court examines the record to ascertain whether genuine issues of material fact exist and to determine whether the moving party is entitled to judgment as a matter of law. Del. Super. Ct. R. Civ. P. 56(c). Initially, the burden is placed upon the moving party to demonstrate that its legal claims are supported by the undisputed facts. If the proponent properly supports its claims, the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder. Summary judgment will not be granted if, after viewing the evidence in the light most favorable to the non-moving party, there are material facts in dispute, or if judgment as a matter of law is not appropriate.

*Torts > Products Liability > General Overview*
[HN2] The Lohrmann standard is intended as "a de minimis rule" requiring that a plaintiff prove more than a casual or minimum contact with the product.

*Torts > Products Liability > General Overview*
[HN3] The Supreme Court of North Carolina has held that in an asbestos-exposure case, the plaintiff's evidence at trial must demonstrate that the decedent was actually exposed to the alleged offending products. Such "actual" exposure cannot be established merely by showing that the defendant's products were shipped to various job sites where the decedent worked.

*Torts > Products Liability > General Overview*
[HN4] A product's mere presence at a job site is not independently sufficient to support an inference of exposure.

*Torts > Products Liability > General Overview*
[HN5] Neither Lohrmann nor Wilder require evidence of specific instances or numbers of exposures, and the absence of such precise evidence is often understandable in mesothelioma cases due to the lengthy latency period of that disease.

**JUDGES:** Peggy L. Ableman, Judge.

**OPINION BY:** Peggy L. Ableman

**OPINION**

This 3rd day of June, 2011, it appears to the Court that:

Gerald Bowser ("Bowser") worked as an aircraft mechanic for several decades, beginning in the early 1960s. In 2009, Bowser was diagnosed with mesothelioma, which led to his death in December 2010. Plaintiff Jenny Bowser, his wife, alleges that the defendants in this case each manufactured, distributed, sold, or installed asbestos-containing products that caused Bowser's mesothelioma. Plaintiff's claims against Parker-Hannifin Corporation ("Parker") relate to Bowser's alleged exposures to asbestos-containing aircraft brakes distributed under the brand name Cleveland Wheel & Brakes

("Cleveland"). Cleveland brakes were produced by a predecessor to Parker.

Bowser, who was deposed prior to his death, testified to using Cleveland brakes or seeing Cleveland brake boxes during his employment at three different locations. From 1965 to 1967, Bowser worked on a fleet of three helicopters at Doan Helicopter in Daytona Beach, Florida. Bowser recalled seeing unopened Cleveland brake boxes at Doan, [*2] but did not believe that his work there exposed him to any asbestos.[1] Bowser next worked as an aviation mechanic at the Shelby, North Carolina airport from 1967 to 1973, where he recalled removing and installing four different brands of asbestos-containing airplane brakes: Cleveland, Bendix, Goodyear, and Goodrich.[2] Although he could not remember specific instances in which he used Cleveland brakes, he saw unused Cleveland brake boxes on the parts shelves and open Cleveland boxes on the floor as he was working.[3] He estimated that he performed seventy-five airplane brake jobs during his six years at the Shelby airport.[4] The forty-seven airplanes for which he was responsible at Shelby included a Mooney, as well as a Cessna 150, a Cessna 172, and a Cessna 182.[5] The Cessna 150 was used for training and therefore required frequent brake work.[6]

   1  Gerald C. Bowser Video Dep. Tr., July 27, 2010, at 35:10-20; Gerald C. Bowser Discovery Dep. Tr., July 27, 2010, at 189:2-9.
   2  Gerald C. Bowser Video Dep. Tr. 43:21-44:14. During his time at the Shelby airport, Bowser worked as an airplane mechanic and as a helicopter mechanic for two separate employers.
   3  *Id.*
   4  *Id.* at 42:6-18.
   5  Gerald C. Bowser Discovery [*3] Dep. Tr. 69:14-72:2.
   6  *Id.* at 72:7-73:13.

Finally, Bowser remembered seeing unopened Cleveland brake boxes in the parts room of Fayetteville Aviation in Fayetteville, North Carolina, where he worked as the director of maintenance for six months in 1976.[7] Although he serviced approximately forty planes, he did not remember the brand name of any brakes he installed or removed while at Fayetteville.[8] Nevertheless, he stated that Fayetteville had "Cessna and Beech airplanes, and they wouldn't have had the Cleveland there if they did not go on the airplanes."[9]

   7  *Id.* at 190:25-191:6.
   8  *Id.* at 86:25-87:3.
   9  *Id.* at 191:7-20.

Bowser also testified to performing airplane brake jobs while working as maintenance director at Beaunit Corporation from 1973 to 1976, and as an aircraft mechanic and maintenance director at Henry Wurst, Inc. from 1976 to 1990. Bowser could not identify the manufacturers of the brakes he used at either job. At Beaunit, he thought that he "most likely" used "one of the same companies because that was the most popular of the four" brands he had previously identified.[10] Without explicitly stating which of the four brand names he meant, he added that "It was used on the Beech and the [*4] Cessna."[11]

   10  Gerald C. Bowser Video Dep. Tr. 55:7-9.
   11  *Id.*

Bowser explained that throughout his work as an airplane mechanic, he used brakes recommended or specified by the airplane manufacturer for a given airplane. Multiple brake manufacturers could produce brakes compatible with an airplane, provided the brakes went through a certification process.[12] He did not possess any memory of a specific occasion on which he installed or removed Cleveland brakes, but expressed a belief that he had used Cleveland brakes throughout his career

as an aviation mechanic.[13]

> 12   Gerald C. Bowser Discovery Dep. Tr. 188:1-13.
> 13   *Id.* at 150:12-15; 178:25-179:9.

By its motion for summary judgment, Parker argues that that Plaintiff cannot establish that Bowser was exposed to asbestos from Cleveland brakes on a regular basis over an extended period of time, as required by North Carolina law, which the parties agree is applicable to this case. Parker urges that Plaintiff must show more than that its products were present at Bowser's worksites. As to Bowser's work at Doan, Parker provides a declaration from an employee of its Aircraft Wheel & Brake Division stating that neither Parker nor its predecessor, Van Sickle [*5] Industries, manufactured or distributed helicopter brakes under the Cleveland brand name until 1983.[14]

> 14   Sandra L. Shickel Decl. ¶ 3.

Plaintiff's response contends that Bowser's testimony establishes that he had frequent, actual exposure to asbestos-containing Cleveland brakes over numerous years. Although Bowser was unable to recall specific instances on which he used a particular brand of brake, Plaintiff suggests that his testimony supports that he "generally used" four brands of brakes, including Cleveland, throughout his career, and that he identified those brakes as asbestos-containing.[15] Building upon Bowser's statements that he always used brakes specified by an airplane's manufacturer, Plaintiff has also presented materials showing that Parker produces brakes under the Cleveland name for several of the makes and models of airplanes on which Bowser performed brake work.[16] In addition, Plaintiff provides deposition testimony given by a Parker employee in a New York case, which indicates that Cleveland brand brakes contained asbestos until 1988 and that "[a]t varying times" [*6] Cleveland made asbestos-containing brakes for Cessna models 150, 172, and 182, as well as Mooney aircraft.[17]

> 15   Pl.'s Opp'n to Def. Parker's Mot. for Summ. J. 9.
> 16   Pl.'s Opp'n to Def. Parker's Mot. for Summ. J., Exs. 4, 6.
> 17   Pl.'s Opp'n to Def. Parker's Mot. for Summ. J., Ex. 9 at 116:9-117:1; 119:12-23.

[HN1] When considering a motion for summary judgment, the Court examines the record to ascertain whether genuine issues of material fact exist and to determine whether the moving party is entitled to judgment as a matter of law.[18] Initially, the burden is placed upon the moving party to demonstrate that its legal claims are supported by the undisputed facts.[19] If the proponent properly supports its claims, the burden "shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder."[20] Summary judgment will not be granted if, after viewing the evidence in the light most favorable to the non-moving party, there are material facts in dispute, or if judgment as a matter of law is not appropriate.[21]

> 18   Super. Ct. Civ. R. 56(c).
> 19   *E.g., Storm v. NSL Rockland Place, LLC*, 898 A.2d 874, 879 (Del. Super. 2005).
> 20   *Id.* at 880.
> 21   *Id.* at 879-80.

As [*7] an initial matter, Plaintiff has failed to address Parker's argument that helicopter brakes did not enter the market under the Cleveland brand until 1983, and Bowser's own testimony indicates that he did not believe he was exposed to asbestos while working at Doan. Parker's motion will therefore be granted in part as to any exposures alleged to have resulted from the use

of Cleveland helicopter brakes at Doan, or during Bowser's earlier helicopter work performed while he was in the U.S. Army from 1961 to 1963. Plaintiff has also conceded that Count III of the Complaint, alleging strict liability, must be dismissed because strict liability in tort is not recognized under North Carolina law.

The parties dispute whether North Carolina courts would apply *Lohrmann v. Pittsburgh Corning Corp.*,[22] which held that a plaintiff seeking to establish a reasonable inference of substantial causation must show "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked."[23] At least one federal circuit decision, *Jones v. Owens-Corning Fiberglas Corp.*, applied *Lohrmann*'s so-called "frequency, regularity, and proximity" [*8] standard to a case brought pursuant to North Carolina law, on the theory that there was "nothing to indicate that *Lohrmann* conflicts with North Carolina law."[24]

> 22   *782 F.2d 1156 (4th Cir. 1986)*.
> 23   *Id. at 1162-63*.
> 24   *69 F.3d 712, 716 n.2 (4th Cir. 1995)*.

Upon review of the record, the Court finds that Parker's liability for Bowser's alleged exposures to Cleveland airplane brakes is a triable issue, even assuming for the sake of argument that *Lohrmann* would apply. [HN2] The *Lohrmann* standard is intended as "a *de minimis* rule" requiring that a plaintiff prove "more than a casual or minimum contact with the product."[25] Here, Bowser testified that he knew he removed and installed asbestos-containing Cleveland brakes during his six years working at the Shelby airport, and that he believed that he also used Cleveland airplane brakes throughout his lengthy career as an aviation mechanic. At the Shelby airport, Cleveland was one of the four brake brands Bowser used most frequently over the six-year time period in which he performed approximately seventy-five brake jobs. Bowser's testimony supports the existence of more than casual contact with Cleveland airplane brakes. Furthermore, Plaintiff has provided [*9] some evidence that Cleveland brakes were available for use with several of the make and models of aircraft Bowser specifically recalled from the Shelby airport, although the record is unclear as to whether the airplane manufacturers specified the Cleveland brand product and what timeframes the Cleveland brakes were available on the market. This information does not establish definitively that Bowser used Cleveland brakes on those airplanes, but it suggests the possibility that Cleveland brakes could have been the manufacturer-recommended parts for certain of the aircraft he serviced.

> 25   *Lohrmann, 782 F.2d at 1162*.

Parker argues that "simply establishing that open Cleveland boxes were present during unspecified time periods at some of [Bowser's] employers' facilities is insufficient as a matter of law" to prove exposure.[26] Parker relies upon *Wilder v. Amatex Corp.*, one of the few North Carolina cases to address the quantum of asbestos-exposure evidence required of a plaintiff outside the workers' compensation context. In *Wilder,* [HN3] the North Carolina Supreme Court held that in an asbestos-exposure case, the plaintiff's evidence at trial "must demonstrate that [the decedent] was actually exposed [*10] to the alleged offending products."[27] Such "actual" exposure cannot be established merely by showing that the defendant's products were "shipped to various job sites" where the decedent worked.[28]

> 26   Def. Parker's Reply Br. 4-5.
> 27   *314 N.C. 550, 336 S.E.2d 66, 68 (N.C. 1985)*.
> 28   *Id*.

*Wilder* indicates that [HN4] a product's mere presence at a job site is not *independently* sufficient to support an inference of exposure. But Plaintiff has not attempted to show exposure by "simply establishing that open Cleveland boxes were present" at Bowser's workplaces. Bowser did not blindly assume that he was exposed to Cleveland brakes because he saw Cleveland brake boxes somewhere at his worksites without any other recollection of the brand. Rather, he named the Cleveland brand as one of the four major brake brands he used on a regular basis when following airplane manufacturers' specifications for replacement parts. He drew an association between Cleveland and certain makes of airplane he serviced (Cessna and Beech). He saw Cleveland boxes *in the particular locations from which he retrieved replacement brakes* and in work areas at his Shelby and Fayetteville jobsites. Taken in the context of Bowser's full testimony, the presence [*11] of the Cleveland boxes at his workplaces offers reasonable support for his assertions that he knew he used Cleveland brakes despite being unable to remember particular jobs or plane models that utilized Cleveland products; however, it was clearly not the sole basis for Bowser's product identification.

[HN5] Neither *Lohrmann* nor *Wilder* require evidence of specific instances or numbers of exposures, and the absence of such precise evidence is often understandable in mesothelioma cases due to the lengthy latency period of that disease. Viewed in the light most favorable to Plaintiff, the record provides sufficient evidence that Bowser received frequent and regular exposures to asbestos from Cleveland airplane brakes over an extended period of time to render summary judgment regarding Plaintiff's airplane brake-related claims inappropriate.[29] Therefore, Parker's motion for summary judgment is hereby **GRANTED IN PART** as to Count III of the Complaint and Plaintiff's allegations that Bowser was exposed to asbestos from Cleveland helicopter brakes between 1961 and 1967, and **DENIED IN PART** as to Plaintiff's remaining claims.

> 29 Parker's motion sought summary judgment as to Plaintiff's willful and wanton [*12] conduct claim on the basis that she had not adduced evidence that Parker engaged in willful, wanton, malicious, or fraudulent conduct. Plaintiff has presented evidence that Parker manufactured and distributed asbestos-containing products during the time period of Bowser's alleged exposures. Plaintiff's willful and wanton conduct claim requires further inquiry into Parker's level of knowledge about the potential hazards of its products, which neither party has focused on in its briefing. The Court will deny summary judgment given the parties' failures to develop their arguments and the fact that evidence of Parker's knowledge and conduct will be relevant to Plaintiff's other claims, but the issue may need to be revisited at the close of Plaintiff's evidence.

**IT IS SO ORDERED.**

/s/

**Peggy L. Ableman, Judge**