IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| GRAHAM YATES and BECKY YATES, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 5:12-cv-00752-FL |
| AIR & LIQUID SYSTEMS CORPORATION, et al., | ) ) ) ) |
| Defendants. | ) |

**FORD'S MEMORANDUM IN SUPPORT OF ITS
MOTION *IN LIMINE* TO EXCLUDE THE "WELCH PAPER"**

Defendant Ford Motor Company ("Ford") submits this memorandum in support of its Motion *In Limine* to exclude the article entitled *"Asbestos Exposure Causes Mesothelioma, But Not This Asbestos Exposure: An Amicus Brief to the Michigan Supreme Court"* by Laura S. Welch, *et al.* (the "Welch Paper"), a copy of which is attached hereto as Exhibit A.

**BACKGROUND**

The Welch Paper, published in its article form by the *International Journal of Occupational & Environmental Health*, is an unabashed reprint of an amicus brief filed in support of an asbestos plaintiff in a case styled *Chapin v. DaimlerChrysler Corp.*, 733 N.W.2d 29 (Mich. 2007). Dr. Welch, the lead author, has testified about the genesis of the amicus brief and its subsequent publication as an article. *See* Deposition of Laura Welch, M.D., taken on January 14, 2009 (hereafter "Welch Dep. I"), attached hereto as Exhibit B. Specifically, the plaintiff's attorney in the *Chapin* case contacted Dr. Welch (a well-known plaintiffs' expert in asbestos cases) to enlist her services in preparing an amicus brief to the Michigan Supreme Court

# 4605631_3.Docx

in support of the plaintiff's position that automotive repair work can contribute to the development of asbestos-related disease. *Id.* at 112. Dr. Welch solicited other people in the asbestos field to sign on to her draft amicus brief by emailing contacts from her Outlook list with a description of eight "key points" that would be covered in the brief and encouraging them to join as signatories. *See* Deposition of Laura Welch, M.D. taken on March 22, 2010 (hereafter "Welch Dep. II") at Deposition Exhibit 18, attached hereto as Exhibit C. Critically, a draft of the amicus brief was not attached to Dr. Welch's solicitation email, and it is unknown whether all those who are listed as signatories ever received a draft of the brief. *See id.*

After submitting the amicus brief to the Michigan Supreme Court, Dr. Welch "reformatted and published" the brief as an article for the *International Journal of Occupational & Environmental Health*. *See* Ex. B, Welch Dep. I at 112-114. There is no evidence that the Welch Paper was submitted for peer review by unbiased doctors or scientists before it was submitted as an amicus brief or published as an article. *See id.* at 144. Rather, Dr. Welch and many of the fifty signatories to the amicus brief are expert witnesses who regularly appear on behalf of asbestos plaintiffs across the country. Other signatories to the brief are not scientists at all – for example, the signatories include a Chilean "political ecologist," a Brazilian engineer and coordinator of the Virtual Citizen Ban Asbestos Network, the Director of the Scottish Oral History Centre, the editor of "Hazards" magazine, and an Australian Justice of the Peace and President of the Asbestos Diseases Society. *See* Ex. A, Welch Paper at 323-25.

Similarly, the editor of the *International Journal of Occupational & Environmental Health,* which published the Welch Paper, is a well-known plaintiffs' expert, Dr. Joseph LaDou. *See* Ex. B, Welch Dep. I at 113. Dr. Welch admits that her brief was only published as an article in the *International Journal of Occupational & Environmental Health* at Dr. LaDou's urging—

she did not submit it for peer-review or publication by any other journals. *Id*. at 177-78. Tellingly, when the Welch Paper was published, it was not included in the "Original Articles" section for peer-reviewed articles, but placed in a "Special Contributions" section. *See* Table of Contents, *International Journal of Occupational & Environmental Health,* Vol.13, Issue 3 (01 July 2007), *available at* http://www.maneyonline.com/toc/oeh/13/3, a copy of which is attached hereto as Exhibit D.

Dr. Welch readily admits that her amicus brief/article was drafted as an "advocacy piece." *See* Ex. B, Welch Dep. I at 142. She further admits that she has neither conducted any independent research relating to whether or not mechanics are at an increased risk in developing mesothelioma nor researched what amount of asbestos fibers are released from asbestos-containing friction products during normal use. *Id.* at 195. Instead, the Welch Paper is loosely based on case reports (which are unreliable for the reasons set forth in Ford's separate Motion *In Limine* To Exclude Anecdotal Evidence) and hearsay statements provided to her by the plaintiff's attorney in the *Chapin* case and by Dr. Egilman, another well-known plaintiffs' expert. *See id.* at 130-33.

Despite these facts, plaintiffs' counsel, through their experts, often attempt to introduce the Welch Paper under the guise of a scholarly writing or learned treatise. However, the Welch Paper, even in its "article" format, does not qualify as a learned treatise and is not the type of scientific evidence reasonably relied upon by an expert and, therefore, should not be presented to the jury in any fashion. In addition, any possible probative value of the Welch Paper is substantially outweighed by its prejudicial effect.

**ARGUMENT**

I.  **The Welch Article Is Inadmissible Hearsay For Which There Is No Valid Exception.**

The Federal Rules of Evidence define hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing," which is offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The Welch Paper, which would be offered by Plaintiffs to prove the truth of the matters asserted therein, is, by definition, hearsay.

Plaintiffs will likely argue that the Welch Paper can be introduced through their experts under the "learned treatise exception" contained in Rule 803(18) of the Federal Rules of Evidence. However, the "learned treatise exception" only applies if the scholarly writing in question is a "reliable authority"—which the Welch Paper is not. *See* Fed. R. Evid. 803(18). As stated in the Advisory Committee Notes, learned treatises which qualify as reliable authorities are those that are "written ***primarily and impartially for professionals***" and "subject to scrutiny and exposure for inaccuracy, with the reputation of the writer at stake." Advisory Committee Notes to Fed. R. Evid. 803(18) (emphasis added). The Welch Paper fails both of these standards.

First, the Welch Paper was not written "primarily and impartially for professionals." In fact, the exact opposite is true—it was written at the request of an asbestos attorney to present the pro-plaintiff side of a legal argument to a court of law. Dr. Welch has admitted that she was engaging in a piece of advocacy designed to support a particular point of view when she wrote the amicus brief. *See* Ex. B, Welch Dep. I at 142-43. She also testified that "it was clearly supporting one side in a ***legal argument***." *Id.* at 143 (emphasis added).

Courts in other jurisdictions have held that purported academic works that are submitted in support of litigation do not qualify as "learned treatises" under this hearsay exception. For example, in *O'Brien v. Angley,* the Supreme Court of Ohio reversed a jury verdict because the trial court allowed cross-examination of an expert witness with an editorial contained in a

learned treatise written by an author who may have been biased because of pending litigation. 63 Ohio St. 2d. 159, 407 N.E.2d. 490 (1980). Specifically, the Court noted:

> In our view, the admission of excerpts of the editorial published in the Journal of the American Medical Association was prejudicially erroneous, *as a perusal of that article indicates that it was written with a view toward litigation, and lacked the requisite indicia of objectivity and trustworthiness essential to the admissibility of such material in evidence.* This editorial was not an authoritative exposition of medical theory or principle which might be characterized as a "learned treatise," but was primarily an expression of opinion by a physician concerning a controversial subject which posed a risk of litigation for his colleagues in the medical profession.

*Id.* at 164, 407 N.E.2d at 494 (emphasis added). The *O'Brien* Court concluded: "[w]here the author publishes an article with a view toward litigation . . . a probability of bias exists which undermines the logic supporting the admission of this material in evidence as an exception to the rule against hearsay." *Id.* (citation omitted); *see also Baker v. Barnhart*, 457 F.3d 882, 891–892 (8th Cir. 2006) (holding that the trial court abused its discretion by taking judicial notice of an article as a learned treatise because there was no evidence that the article was trustworthy as an authoritative treatise where the article was not published in a peer-reviewed journal, was based on conclusory statements, and failed to include any "methodical discussion of the facts and principles").

As another court has explained:

> The basis for this 'learned treatise exception' to the hearsay rule is that learned treatises usually have 'sufficient assurances of trustworthiness to justify equating them with the live testimony of an expert. *First, authors of treatises have no bias in any particular case.* Second, they are acutely aware that their material will be read and evaluated by others in their field, and accordingly feel a strong pressure to be accurate.

*In re Welding Fume Prods. Liab. Litig.*, 534 F. Supp. 2d 761, 765-66 (N.D. Ohio 2008) (quoting 2 McCormick on Evidence § 321 (6th ed. 2006)). For these reasons, Dr. Welch's admitted bias

5

and litigation purpose in drafting the Welch Paper dictate that this article cannot qualify as a "learned treatise" because it was not drafted "primarily and impartially for professionals" under Federal Rule of Evidence 803(18).

In addition, the Welch Paper has not been subjected to "scrutiny and exposure for inaccuracy, with the reputation of the writer at stake" because it does not possess any scientific principles which are subject to scientific analysis. *See* Ex. A, Welch Paper. It does not present a hypothesis and does not apply any designated scientific methodology. There is no population under study, no variables tested, no statistical analysis, no reporting of any measure of risk, and no attempt at balance or objectivity. *See id.* Simply put, the Welch Paper is not, and was not intended to be, a methodological or scientific authority on the causes of mesothelioma – it is a piece of legal advocacy aimed to influence the Michigan Supreme Court in a particular legal proceeding. *See* Ex. B, Welch Dep. I at 142-43. As such, it has none of the hallmarks of genuine scientific and/or medical literature upon which its methodologies could be scrutinized and exposed as inaccurate.

Furthermore, there is no indication that the Welch Paper was subjected to the peer review process for scrutiny and exposure for inaccuracy. *See* Ex. B, Welch Dep. I at 144. Peer review asks scientists in the same field to critique and review an article prior to publication in order to ensure that the author's scientific methodologies are sound, that the article contributes to the scientific knowledge on a subject, and that the article is worthy of publication. Here, the Welch Paper was not published as a peer-reviewed "Original Article," but in a "Special Contributions" section of a journal edited by a well-known plaintiffs' expert. *See* Ex. A, Welch Paper; Ex. D, Table of Contents, *International Journal of Occupational & Environmental Health,* Vol. 13, Issue 3 (01 July 2007). Dr. Welch has admitted that she did not receive any peer review

6
Case 5:12-cv-00752-FL   Document 288   Filed 03/31/15   Page 6 of 11

comments nor any requests from the editor requesting changes to the brief/article prior to its inclusion in the journal. *See* Deposition of Laura Welch, M.D., taken on October 3, 2007 at 165, attached hereto as Exhibit E. One of the other signatories to the Welch Paper, Dr. Arthur Frank (another common plaintiffs' expert in asbestos litigation) has confirmed that he is not aware of any peer review process for the amicus brief or the subsequent article, and that both documents are merely opinion pieces, not articles reporting original research. *See* Deposition of Arthur Frank M.D., January 10, 2008 at 114–120, attached hereto as Exhibit F.

For these reasons, trial courts in asbestos cases across the country have excluded the Welch Paper (as well as the underlying amicus brief) from trial. *See Ring v. Alfa Laval, Inc.*, No. 07-00275200, Circuit Court of the City of Richmond, Virginia, July 26, 2008, Transcript of Motions Hearing at 69-80 (sustaining a motion to exclude the Welch Paper and questioning how a legal brief "can ever be considered as scientific evidence"), attached hereto as Exhibit G; *Adams v. Pneumo Abex Corp.*, No. 7870 of 2002, Court of Common Pleas, Westmoreland Co., Pa., Order of Court dated January 25, 2008 (excluding Welch Paper), attached hereto as Exhibit H; *Mannahan v. Catepillar Inc.*, Jefferson Co. Circuit Court, Ky., Order of Court dated March 10, 2014 ("The Court finds that [the Welch Paper] is not a "learned treatise" contemplated by KRE 803(18), but an article written for the purpose of advocating a particular position."), attached hereto as Exhibit I.

Accordingly, the Welch Paper cannot be admitted under the "learned treatise exception" and must be excluded as inadmissible hearsay.

## II. The Welch Paper Cannot Serve As A Basis For Expert Testimony.

Plaintiffs may argue that, even if the Welch Paper is inadmissible as evidence, it may be referenced or relied upon by Plaintiffs' experts under Rule 703. However, such an attempt to introduce unreliable "expert" evidence through the "back door" fails under Rule 703 because the

Welch Paper is not the sort of evidence reasonably relied upon by experts. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (although Rule 703 allows experts "some leeway" in basing their opinions on hearsay evidence, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony"); *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1144 (4th Cir. 1994) (holding that "reports specifically prepared for purposes of litigation are not, by definition, of a type reasonably relied upon by experts in the particular field," and that such reports could not serve as a basis of a testifying expert's opinion).

Under Federal Rule of Evidence 703, experts may be permitted to testify regarding facts or data which are otherwise inadmissible only if: 1) such evidence is of the type other experts in the field would reasonably rely upon, and 2) the probative value of such evidence "substantially outweighs" any prejudicial effect. *See* Fed. R. Evid. 703; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993).

For the reasons set forth above (which will not be restated here for the sake of brevity), the Welch Paper is not —and does not purport to be—a presentation of facts or data based on the scientific method and does not offer any scientific principles which other experts could reasonably rely upon to establish medical causation under Rules 702 and 703. *See id.* at 590 (holding that "in order to qualify as 'scientific knowledge' [under Rule 702], an inference or assertion must be derived by the scientific method"); *Zellers v. NexTech Ne., LLC*, 533 F. App'x 192, 197 (4th Cir. 2013) (excluding expert testimony on causation of medical disorders because doctor's "methodology was not sufficiently reliable" where the doctor "did not reliably apply" the methodology); *O'Neill v. Windshire-Copeland Assocs.*, 372 F.3d 281, 285 (4th Cir. 2004) (excluding expert causation testimony where the testimony was "based more on supposition"

than a reliable scientific method); *Phelan v. Synthes (U.S.A.)*, 35 F. App'x 102, 107 (4th Cir. 2002) (trial court properly determined that the expert's opinion was not supported by reliable methodology where it was based largely on extrapolation from a principle of engineering without examination of the specific product at issue).

Accordingly, the Welch Paper cannot be relied upon by Plaintiffs' experts under Federal Rule of Evidence 702 and 703.

### III. The Welch Paper Should Be Excluded As Unduly Prejudicial.

Finally, the Welch Paper fails the Rule 703 analysis, as well as the Rule 403 analysis, because the prejudicial effect of Plaintiffs' use of the Welch Paper with reference to its fifty signatories—none of whom will appear in Court for cross-examination in this case – vastly outweighs any probative value it may have. *See* Fed. R. Evid. 703 (inadmissible evidence may only be admitted as a basis for expert testimony if its probative value substantially outweighs its prejudicial effect); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2nd Cir. 1981) (excluding report which "would have been presented to the jury in 'an aura of special reliability and trustworthiness' which would not have been commensurate with its actual reliability").

Furthermore, admission of the Welch Paper would unnecessarily prolong the trial as Ford would be required to present lengthy evidence as to the numerous factors that render the Welch Paper unreliable. Even so, without the opportunity to cross-examine Dr. Welch and the other fifty signatories, Ford would still be unfairly prejudiced by the admission of the Welch Paper. *See id.*

## **CONCLUSION**

Based on the foregoing, Ford respectfully requests this Court grant its Motion *In Limine* excluding any testimony, evidence, or reference relating to the Welch Paper during the trial of this action.

This the 31st day of March, 2015.

        SMITH, ANDERSON, BLOUNT, DORSETT,
          MITCHELL & JERNIGAN, L.L.P.

By:   /s/ Addie K.S. Ries
       Kirk G. Warner
       North Carolina State Bar No. 16238
       Christopher R. Kiger
       North Carolina State Bar No. 28618
       Addie K.S. Ries
       North Carolina State Bar No. 31759
       Post Office Box 2611
       Raleigh, North Carolina 27602-2611
       Telephone:   (919) 821-1220
       Facsimile:    (919) 821-6800
       E-Mail:  kwarner@smithlaw.com
                  ckiger@smithlaw.com
                  aries@smithlaw.com

*Attorneys for Ford Motor Company*

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2015, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Janet Ward Black | jwblack@wardblacklaw.com |
| Kevin W. Paul | kpaul@sgpblaw.com |
| Charles E. Soechting | csoechting@sgpblaw.com |
| Jeffrey B. Simon | jsimon@sgpblaw.com |
| H. Lee Davis, Jr. | ldavis@davisandhamrick.com |
| Holly A. Hempel | holly.hempel@nelsonmullins.com |
| Bruce T. Bishop | bbishop@wilsav.com |

                                  SMITH, ANDERSON, BLOUNT, DORSETT,
                                      MITCHELL & JERNIGAN, L.L.P.

By: /s/ Addie K.S. Ries
Kirk G. Warner
North Carolina State Bar No. 16238
Christopher R. Kiger
North Carolina State Bar No. 28618
Addie K.S. Ries
North Carolina State Bar No. 31759
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
E-Mail: kwarner@smithlaw.com
ckiger@smithlaw.com
aries@smithlaw.com

*Attorneys for Ford Motor Company*