IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| GRAHAM YATES and<br>BECKY YATES, spouse, | ) | EDNC File No.5:12-cv-00752-FL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR COMPANY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE UNSUPPORTED EXPERT TESTIMONY CLAIMING PLAINTIFF WAS EXPOSED TO ASBESTOS IN THE NAVY**

Plaintiffs Graham Yates and Becky Yates file this Memorandum in Support of Plaintiffs' Motion in Limine to Exclude Unsupported Expert Testimony Claiming Plaintiff Was Exposed to Asbestos in the Navy and would respectfully show the Court that the motion should be granted.

**INTRODUCTION**

Plaintiffs Graham Yates and Becky Yates ask this Court to exclude speculative defense expert testimony claiming that Plaintiff Graham Yates's mesothelioma was caused by exposure to asbestos-containing thermal insulation in the Navy without laying a proper foundation that Mr. Yates was indeed exposed to asbestos-containing thermal insulation during his time in the Navy. John Graham has already offered such opinions without any factual predicate, and Plaintiffs anticipate that other defense experts will follow suit in reliance on Mr. Graham's unfounded opinions. Such testimony from any defense witness should be excluded because it cannot meet the *Lohrmann* standard for causation.

Although defense experts concede that Graham Yates suffers from mesothelioma, they offer unsupported opinions that Mr. Yates was exposed to asbestos-containing thermal insulation in the Navy and that that exposure was the cause of Mr. Yates's mesothelioma. They offer these opinions despite the fact that there is no evidence Graham Yates ever confronted asbestos-containing thermal insulation in the Navy. Defense experts choose to ignore the proven facts in favor of relying on unproven, assumed facts to form their opinions.

Experts cannot base their opinions on facts that have not been proven by competent evidence. Not only are their opinions about exposure to asbestos in the Navy unsupported, those opinions are irrelevant and will not help a jury understand the issues in this case. Further, even if relevant, any probative value in these opinions is substantially outweighed by the potential for confusion of the issues or misleading the jury. As a result, any and all testimony regarding exposure to asbestos-containing thermal insulation in the Navy or claims that such assumed exposure was a cause of Mr. Yates's mesothelioma should be excluded.

## FACTUAL BACKGROUND

Defense experts are expected to offer opinions at trial that Mr. Yates was exposed to asbestos-containing thermal insulation while he was in the Navy and that his malignant mesothelioma was caused by asbestos exposure in the Navy. But there is no evidence from which it is reasonable to conclude Mr. Yates had this exposure to asbestos in the Navy.

The best way to show the lack of foundation for this opinion is to provide passages from defense expert John Graham's deposition in which he admits the limits of Mr. Yates's testimony. Mr. Yates did not testify that he worked with insulation or was around others who worked with insulation on the YTD-4 or the *USS Jonas Ingram*.

    Q:    In Mr. Yates' testimony, he never testified that he did any work with insulation on the YTD-4; is that correct?

A: That's correct.

**Exhibit 1,** Deposition of John Graham, at 45:19-22.

Q: Did Mr. Yates testify that he was around any other workers who performed work on insulation during the time frame that he worked on the YTD-4?

A: I will go back to my answer a little bit go. He didn't know whether he was exposed to asbestos.

Q: And that's not my question of whether he didn't know he was exposed to asbestos. I'm asking if he testified that he was around other workers performing insulation work on the YTD-4.

A: I don't recall that he did.

*Id.* at 46:15-47:2.

Q: Did Mr. Yates specifically state and testify that he was around insulation work that took place on the YTD-4 at any time in either of his depositions?

A: I think I have answered that at least twice. The answer is no.

*Id.* at 49:6-10.

Q: Okay. Mr. Yates never testified that he personally worked with any thermal insulation on the Jonas Ingram; is that correct?

A: That's correct.

*Id.* at 51:14-17.

Q: Mr. Yates never testified that he was around any other workers performing work on thermal insulation while aboard the Jonas Ingram; is that correct?

A: I agree.

*Id.* at 53:10-14.

While Mr. Yates saw some removal of insulation during the decommissioning of the *USS Clarence Bronson*, Mr. Graham admitted that Mr. Yates never testified about the type of

3

insulation, where on the ship it was, the length of time he was around it, how far away he was, or that he breathed any dust created by the removal of insulation:

> Q: There was a decommissioning of the Clarence Bronson while Mr. Yates was aboard; is that right?
>
> A: That's correct.
>
> Q: And Mr. Yates testified that he was involved in the inventory during that decommissioning; is that correct?
>
> A: That's correct.
>
> Q: Okay. He did not personally work on machinery; is that correct?
>
> A: That's correct.
>
> Q: And he did not personally remove insulation while on the Bronson, correct?
>
> A: That's correct.
>
> Q: Okay. Now, he did testify that other workers removed insulation as part of that decommissioning on the Clarence Bronson; is that correct?
>
> A: That's correct.
>
> Q: Okay. Looking through -- it's your testimony today that any thermal insulation on the Clarence Bronson could have been asbestos containing based on those general class records; is that correct?
>
> A: That's not correct.
>
> Q: Okay. Why is it not correct?
>
> A: Because there was other insulation on the ship such as the -- the water lines for the air conditioning, those kind of things.
>
> Q: Okay. And did those -- that insulation contain asbestos?
>
> A: No.
>
> Q: Did Mr. Yates testify that he was around workers that were specifically working on asbestos-containing insulation while he was on the Clarence Bronson?

4

A: He testified that he saw insulation being removed in the machinery spaces, and that would have had the thermal insulation on it.

Q: Okay. Did he specifically testify to where the insulation was?

A: He saw them removing it from piping.

Q: Okay. Mr. Yates testified that he was all over the ship during the time frame of that decommissioning; is that correct?

A: That's correct.

Q: Okay. With his testimony where he talked about other people removing insulation, can you specifically cite to his testimony where he states that he was around asbestos-containing insulation being removed by other workers?

A: He participated in the inactivation of the ship. The inactivation of the ship requires that thermal insulation be removed so that they can remove valves, open up flanges, and drain all the systems. So I know he was around asbestos-containing thermal insulation.

Q: Did Mr. Yates testify to your statement that you just made?

A: He testified that he participated in the inactivation of the ship.

Q: Okay. He did not testify to being around the removal of thermal asbestos insulation; is that correct?

MR. BISHOP: Objection.

A: He didn't use those specific words.

Q: Okay. And there were other forms of insulation on the ship that did not contain asbestos; we've established that, right?

A: A small amount of it, yes.

Q: Okay. You can't testify to the amount of times that Mr. Yates saw other workers removing insulation from pipes; is that correct?

A: No, I can't.

Q: Okay. You can't testify to how far away Mr. Yates was from other workers removing insulation from pipes; is that correct?

5

| | |
|---|---|
| A: | That's correct. |
| Q: | You can't testify as to how far Mr. Yates was from workers removing insulation from any type of machinery during the time frame that he worked on the Clarence Bronson; is that correct? |
| A: | That's correct. |
| Q: | You can't testify to the duration that he might have been around other workers doing insulation removal on anything in the ship; is that correct? |
| A: | That's correct. |
| Q: | You can't testify that Mr. Yates ever breathed any dust created from other workers doing insulation removal work; is that correct? |
| | MR. BISHOP: Objection. |
| A: | My testimony would be that it was more likely than not that he did. |
| Q: | Did Mr. Yates specifically testify that he breathed any dust created from other workers doing insulation removal work? |
| A: | To the best of my recollection, he testified somewhere that it was dusty in the engine room. |
| Q: | Okay. I move to strike the non-responsive portions. Did Mr. Yates testify that he personally breathed any dust created from other workers doing insulation removal work while he was aboard the Clarence Bronson? |
| A: | No. |

*Id.* at 54:23-59:6. With no testimony regarding the type of insulation or where in the ship it was used, how close Mr. Yates was to the workers removing insulation, how long or how often he was around this work, whether he breathed the dust from it, there is no basis to conclude that Mr. Yates was exposed to asbestos. Nevertheless, this, along with speculation that Mr. Yates would have brushed against asbestos-containing thermal insulation, *see id.* at 62:3-64:8, is the total of Mr. Graham's "evidence" of asbestos exposure in the Navy.

6

Neither are bankruptcy claims evidence of exposure to thermal insulation in the Navy. Plaintiffs made three bankruptcy claims against equipment manufacturers in the Navy. *See* Plaintiffs' Motion in Limine to Exclude Bankruptcy Claim Forms, filed contemporaneously. These claims rely expressly on Mr. Yates deposition testimony and do not provide any evidence of exposure to thermal insulation in the Navy.

Other experts rely on Mr. Graham's opinion that Mr. Yates was around asbestos-containing thermal insulation in the Navy. *See, e.g.,* **Exhibit 2,** Deposition of Gayla McCluskey, March 9, 2015, at 91:4-9; **Exhibit 3,** Deposition of Fionna Mowat, March 5, 2015, at 41:10-12. But Mr. Graham's opinions are without foundation, so they cannot provide support for other experts' exposure and causation opinions. There is no basis for any of Defendants' experts to testify that Mr. Yates was exposed to asbestos in the Navy or to attribute his mesothelioma to asbestos exposure in the Navy.

## ARGUMENTS AND AUTHORITIES

The admission of expert testimony is governed by FED. R. EVID. 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*;

(b) *the testimony is based on sufficient facts or data*;

(c) the testimony is the product of reliable principles and methods; and

(d) *the expert has reliably applied the principles and methods to the facts of the case*.

FED. R. EVID. 702 (emphasis added).

"The touchstones for admissibility under Daubert are two: reliability and relevancy." *United States v. Crisp,* 324 F.3d 261, 268 (4th Cir. 2003). "The proponent of expert testimony has the burden of establishing its admissibility by a preponderance of proof." *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 691 (W.D.N.C. 2003). "*Daubert* [*v. Merrell Dow Pharms.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)] clearly vests the district courts with discretion to determine the admissibility of expert testimony." *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1384 (4th Cir. 1995).

## I. Gatekeeping Function Requires Rejection of Opinions Based on Patently Unsound Reasons.

Experts may only testify if their opinions are based on sufficient facts and reasonably relate to the facts of the case. But in this case, the defense experts rely on supposition, not fact. "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994). "Speculation, guesswork and conjecture are not acceptable substitutes for facts and data, and an opinion based on speculation is not founded on reliable methodology." *Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 470 n.11 (D. Md. 2000); *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000) ("an expert's 'conclusions regarding causation must have a basis in established fact and cannot be premised on mere suppositions'"). If an expert's testimony is based on assumed facts, those facts "must find some support … in the record." *McLean,* 224 F.3d at 801; *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990). Because they are not based on sufficient facts, the opinions of the experts fail under FED. R. EVID. 702 and are inadmissible.

"[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589, 113 S.

8

Ct. 2786, 2795, 125 L. Ed. 2d 469, 480 (1993). An expert opinion is not reliable if it is not based on fact. And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 470-71 (M.D.N.C. 2006). Here, this Court's intervention is necessary to preclude Defendants from offering expert testimony based on speculative and unsound reasoning.

"The court may not abdicate its responsibility to ensure that only properly admitted evidence is considered by the jury. Expert opinion evidence based on assumptions not supported by the record should be excluded." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 143 (4th Cir. 1994). When the opinion testimony of an expert witness is based on assumed facts which are not proven by other competent evidence, the expert testimony has no probative value and should be disregarded by the trier of fact.

Opinions that Mr. Yates was exposed to thermal insulation in the Navy rest on nothing but speculation. Such testimony about a mere possibility has no evidentiary value. Accordingly, Plaintiffs ask this Court to prohibit Defendants' experts from offering any testimony that Mr. Yates was exposed to thermal insulation in the Navy or that any such exposure is a cause of his mesothelioma.

II. **Defense Experts' Opinions about Asbestos in the Navy Will Not Help the Jury to Understand the Evidence or Determine a Fact in Issue Because They Do Not Meet the *Lohrmann* Standard.**

A qualified expert may only give opinion testimony "[i]f the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. These opinions about thermal insulation exposure in the Navy will not help the trier of fact determine the causation issue in this case because these

9

opinions are unrelated to the factual record. There is simply no evidence that Mr. Yates was exposed to thermal insulation in the Navy. This testimony cannot assist the trier of fact to understand the evidence because the opinions are entirely divorced from the actual evidence that the jury will see.

Even if there were some evidence that Mr. Yates was around thermal insulation in the Navy, it cannot meet the standard for causation under North Carolina law and thus is not helpful to the jury. In applying North Carolina law, the Fourth Circuit Court of Appeals has employed the *Lohrmann* exposure standard in requiring that a plaintiff present "'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'" *Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 (4th Cir. 1995) (quoting *Lohrmann v. Pittsburgh-Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986)). There is certainly no evidence that Mr. Yates was exposed to thermal insulation in the Navy over such an extended period of time, regularly and in proximity to where the work was being done. Without such evidence of regular, close in proximity exposure over an extended period, the evidence is insufficient to raise a fact issue on causation and will be of no help to the jury.

Without any basis to conclude that exposure to thermal insulation in the Navy caused Mr. Yates's mesothelioma, the defense experts' testimony will not help the jury resolve the causation issues in this case. Thus, their causation opinions do not meet the Rule 702's requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue," and any such testimony should, therefore, be excluded. FED. R. EVID. 702.

**III. Defense Experts' Testimony Cannot Survive Scrutiny Under Rules 401, 402, and 403 of the Federal Rules of Evidence.**

Expert testimony is subject to Rules 401, 402, and 403 of the Federal Rules of Evidence. Thus, the evidence must be relevant, given by a witness qualified as an expert, and be helpful to

the trier of fact. Relevant evidence is evidence that "has any tendency to make a fact more probable or less probable than it would be without the evidence" when "the fact is of consequence in determining the action." FED. R. EVID. 401. Irrelevant evidence, including irrelevant opinion testimony, is inadmissible. FED. R. EVID. 402.

For the defense experts' opinion that Mr. Yates was exposed to thermal insulation in the Navy to be relevant those opinions must raise a fact issue regarding causation. In applying North Carolina law, the Fourth Circuit Court of Appeals has employed the *Lohrmann* exposure standard in requiring that a plaintiff present "'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'" *Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 (4th Cir. 1995) (quoting *Lohrmann v. Pittsburgh-Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986)). The defense experts have no such evidence of exposure to thermal insulation in the Navy. Accordingly, their opinions do not advance the causation inquiry, and are not admissible under FED. R. EVID. 402.

Given that the experts have failed to link their opinions to the facts of this case, or even to an accepted and reliable foundation, their opinions that Mr. Yates was exposed to thermal insulation in the Navy or that such exposure caused his mesothelioma should also be excluded pursuant to FED. R. EVID. 403. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. The United States Supreme Court has emphasized the importance of Rule 403 in excluding overly prejudicial evidence offered by expert witnesses because "'[e]xpert evidence can be both powerful and quite misleading because

of the difficulty in evaluating it.'" *Daubert*, 509 U.S. at 595 (quoting Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)).

The extremely low probative value (if any) of these opinions is substantially outweighed by the danger that the jury will be misled or confused about the facts of this case. Because they are offered by experts, these objectionable opinions will inherently carry special, and undeserved, weight with the jury. The unfounded suggestion that Mr. Yates was exposed to thermal insulation in the Navy and that such exposure caused his mesothelioma will mislead and confuse the jury about the factual record in this case. As a result, Plaintiffs asks this Court to exclude testimony by any defense expert about exposure to thermal insulation in the Navy or that any such exposure caused Mr. Yates's mesothelioma pursuant to FED. R. EVID. 401, 402, and 403.

## CONCLUSION

For these reasons, Plaintiffs ask this Court to prohibit defense experts from offering opinion testimony that Mr. Yates was exposed to thermal insulation in the Navy and that exposure to thermal insulation in the Navy played any role in the development of Mr. Yates's mesothelioma. Plaintiffs further request all other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ *Kevin W. Paul*
Kevin W. Paul (*Pro Hac Vice*)
MSBA #43730
Jeffrey B. Simon
Texas Bar No. 00788420
Attorney for Plaintiff
Simon Greenstone Panatier Bartlett
3232 McKinney Ave, Ste 610
Dallas, TX 75204
214-687-3248
kpaul@sgpblaw.com
jsimon@sgpblaw.com
*Local Civil Rule 83.1 Counsel*

*/s/ Janet Ward Black*
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiff
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
jwblack@wardblacklaw.com
*Local Civil Rule 83.1 Counsel*

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 31, 2015, I electronically filed the foregoing true and correct copy of PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE UNSUPPORTED EXPERT TESTIMONY CLAIMING PLAINTIFF WAS EXPOSED TO ASBESTOS IN THE NAVY with the Clerk of Court using the CM/ECF System which will send notification of such filing to all counsel of record in the above-referenced matter.

*/s/ Kevin W. Paul*
Kevin W. Paul