IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| GRAHAM YATES and<br>BECKY YATES, spouse, | ) ) ) | EDNC File No.5:12-cv-00752-FL |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| FORD MOTOR COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS MOTIONS IN LIMINE TO EXCLUDE EVIDENCE OF GOVERNMENTAL PRECAUTIONARY STATEMENTS ABOUT ASBESTOS, INCLUDING THE 1986 EPA GUIDANCE**

Plaintiffs file this opposition to Defendants' motions in limine to exclude evidence about governmental precautionary statements about asbestos, specifically:

- Defendant Honeywell International Inc.'s (Honeywell) motion in limine seeking to exclude the EPA Guidance for Preventing Disease Among Auto Mechanics (Doc. 261); and

- Ford's Motion in Limine to Exclude Evidence of Governmental Precautionary Statements About Asbestos (Doc. 294).

Defendants' motions should be denied because:

**I.      Introduction**

Defendants have filed motions in limine seeking to exclude evidence of governmental precautionary statements, including a 1986 Guidance published by the United States Environmental Protection Agency entitled "Guidance for Preventing Asbestos Disease Among Auto Mechanics." The Guidance is commonly referred to as the 1986 Gold Book – likely because of its gold color cover. **Ex. A**, 1986 EPA Guidance Booklet. Governmental statements

1

and publications on asbestos, like the Gold Book, are relevant and admissible. Because it is difficult to talk about the admissibility of evidence in a vacuum, Plaintiffs will focus on the 1986 Gold Book, the exclusive focus of Honeywell's motion and one of the only documents identified by Ford, but the arguments apply with equal force to any precautionary government statements or publications.

In 2009, Defendant Ford Motor Co. lost an appeal on this exact issue – admissibility of the 1986 Gold Book – in *General Motors Corp. v. Grenier*, 981 A.2d 531 (Del. Supr. 2009) (**Ex. B**). In that case, the trial court admitted the 1986 Gold Book into evidence over Ford's objection. *Id*. at 539. On appeal, Ford contended that the Gold Book should not have been admitted because it is allegedly unreliable hearsay. *Id*. The court of appeals disagreed and noted that the Gold Book "is a simply worded pamphlet that describes how auto mechanics could be exposed to asbestos fibers, what diseases they may contract, and what can be done to control their exposure to asbestos. The pamphlet cites 37 sources of information, including articles by scientists, and reports by the EPA and other federal agencies." *Id.* In short, the *Grenier* court concluded that the trial court properly admitted the 1986 Gold Book into evidence. So should this court. Defendants' motions in limine should be denied.

II.  **The 1986 Environmental Protection Agency Guidance Is Relevant to This Case As It Illustrates Methods and Extent of Exposure.**

Plaintiffs are entitled to present relevant evidence, including evidence having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action. Fed. R. Evid. 401. The 1986 Environmental Protection Agency Booklet – "Guidance for Preventing Asbestos Disease Among Auto Mechanics" – is directly relevant to the matters at issue here. The EPA is charged with disseminating information on

2

hazardous substances, including asbestos, and (according to its website) has a mission "to protect human health and the environment." (*See* "About EPA," at http://www.epa.gov/aboutepa/index.html (last visited April 1, 2015). The Gold Book was published in 1986 as part of the EPA's Asbestos Action Program. The EPA is given regulatory control over asbestos by both the Toxic Control Substance Act and the Clean Air Act. *See* 15 U.S.C. §§ 2601, *et seq*. and 42 U.S.C. §§ 7401, *et seq*.

The 1986 EPA Guidance is directly relevant to the case at bar. The evidence shows that Mr. Yates worked with auto mechanics doing brake jobs and opened brake boxes. During that time, Mr. Yates testified that he worked with and around asbestos-containing friction products. The presence of asbestos in the friction products Mr. Yates used is confirmed by defendants' responses to standard friction interrogatories and the depositions of their corporate representatives or persons-most-knowledgeable. This publication directly relates to the issues in this case and the asbestos-containing friction products that were used. The 1986 EPA publication covers topics, including:

> I.   Mechanics' Exposure to Asbestos;
> II.  Health Effects of Asbestos Exposure, Asbestosis, Cancer Mesothelioma, Lung Cancer, Other Cancers, Latency Period;
> III. Medical Tests; and
> IV.  Extent of Exposure During Brake and Clutch Maintenance.

In short, the Gold Book describes how auto mechanics are exposed to asbestos fibers, what diseases they might contract, and what can be done to control their exposure to asbestos. The 2007 EPA booklet is relevant for the same reasons. Again, other governmental precautionary

3

statements are likely to be equally relevant, but that is difficult to address in a vacuum and must wait until specific pieces of evidence are addressed.

**III.     Governmental Precautionary Statements Like the Gold Book Are Admissible.**

In 2009 Ford lost an appeal on the admissibility of the 1986 Gold Book in *General Motors Corp. v. Grenier*, 981 A.2d 531 (Del.Supr. 2009). In that case, the trial court admitted the 1986 Gold Book into evidence over Ford's objection. *Id*. at 539. Consider:

> Ford also contends that the trial court abused its discretion in several evidentiary rulings. First, Ford says that the "Gold Book" should not have been admitted because it is unreliable hearsay. The Gold Book is a 1986 publication by the Environmental Protection Agency titled, "Guidance for Preventing Asbestos Disease Among Auto Mechanics." It is a simply worded pamphlet that describes how auto mechanics could be exposed to asbestos fibers, what diseases they may contract, and what can be done to control their exposure to asbestos. The pamphlet cites 37 sources of information, including articles by scientists, and reports by the EPA and other federal agencies. **The trial court found that the Gold Book is sufficiently trustworthy to qualify as an exception to the hearsay rule and that it would be admissible if Grenier's experts reasonably relied on it.**
>
> D.R.E. 803(8) provides an exception to the hearsay rule for "reports, statements or data compilations, in any form, of a public office or agency setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law." **The EPA is a public agency; the Gold Book is a report that sets forth factual findings; and the EPA has authority to collect and disseminate information on asbestos.** [See 15 U.S.C. § 2609.] **Thus, we find that the trial court acted within its discretion in admitting the Gold Book.**

*Id.* at 539 (emphasis added).

In addition to *Grenier*, other federal and state courts have found similar government documents and governmental precautionary statements admissible. For instance, the Occupational Safety and Health Administration ("OSHA") and EPA regulations concerning asbestos were held admissible under FED. R. EVID. 803(8)(C) in the matter of *Coates v. AC and S, Inc.*, 844 F. Supp. 1126, 1134 (E.D. La. 1994). The court found that the documents set forth

factual findings of the government, were made pursuant to legal authority, and were trustworthy, rejecting various arguments of the defendant asbestos manufacturers, including the contentions that (i) the reports of the EPA and OSHA were not required to be scientifically accurate, and (ii) that the agencies were permitted to "over protect," and (iii) the plaintiff was not an employee, so the regulations were purportedly irrelevant.  *Id.*  The court found the government reports were trustworthy because neither the EPA nor OSHA had a stake in the litigation, both agencies were charged with regulating toxic substances, and the reports and regulations were issued only after reviewing epidemiological and risk assessment studies, as well as public hearings with testimony and cross-examinations on the health effects of asbestos exposure.  *Id.*  The court also held that to the extent there was any prejudice from admission of the documents, it could be countered by an appropriate limiting instruction.  The fact the plaintiff was not an employee was dismissed as a red herring, since the regulations were not submitted to prove negligence *per se*, but merely to provide a standard of negligence by which to judge the defendant's civil liability.  *Id.* at 1132-34.

Similarly, in *Baker Marine Corp. v. Herrera*, 704 S.W.2d 58, 61 (Tex. App. 1985), the court held that OSHA regulations were admissible as being "'relevant to the standard of conduct which should have been employed by defendant,'" and that the regulations were admissible "for the purpose of establishing a standard of conduct to serve as a basis for a negligence cause of action." *Id.*

Other courts have held that reports issued by governmental agencies regarding the hazards of products other than asbestos are admissible to prove the defendant had notice of the dangers of the product and nevertheless failed to warn or take corrective action to eliminate the defect.  Thus, in *Piper Aircraft Corp. v. Evans*, 424 So.2d 586, 589 (1982), the court held FAA reports stating that a metal used by defendants was of "questionable suitability" for use in an

5

airplane muffler, which caused an exhaust failure and the crash of an airplane, killing its occupants, were admissible to prove the defendant was on notice of the defect. Similarly in *Toups v. Sears, Roebuck and Co.*, 507 So.2d 809, 818 (1987), the court held that a publication issued by the United States Consumer Product Safety Commission, which indicated that there should be a warning against storing gasoline powered equipment in same room as water heater, was admissible in action arising after a water heater caused a flash fire. The government publication was admissible to show that the manufacturer should have known that a warning was necessary.

Well-established case law (and exceptions to the hearsay rule) show that governmental precautionary statements like the Good Book are admissible.

## IV. The EPA Guidances Falls Squarely Within A Number of Hearsay Exceptions.

The 1986 and 2007 Environmental Protection Agency Guidances are admissible under a number of exceptions to the hearsay rule, as many other precautionary statements and publications by government agencies would be, including (1) FED. R. EVID. 803(6) Records of Regularly Conducted Activity because document was made in the regular course of business at or near the time of the publication, the document was published by the U.S. EPA and it is a trustworthy document; (2) FED. R. EVID. 803(8) Public Records and Reports as matters observed pursuant to duty imposed by law as to which matters there was a duty to report or as factual finding resulting from an investigation made pursuant to authority granted by law (3) FED. R. EVID. 803(16) Statements in Ancient Documents because the document has been in existence 20 years or more;[1] and (4) FED. R. EVID. 807's Residual Exception. In short, the 1986 and 2007 EPA Guidance are admissible under a number of exceptions to the hearsay rule. Defendants do

---

[1] Obviously, this particular exception to the hearsay rule would apply only to the 1986 EPA Guidance and not the 2007 booklet.

not address the bulk of these exceptions. And although Defendant suggests that the Guidances should not be admissible under the Public Records exception, the Public Records exception was exactly the basis for the Gold Book's admission in the *Grenier* case. *Grenier*, 981 A.2d at 539 (finding the Gold Book admissible under D.R.E. 803(8), Delaware's Public Record's exception).

V.   **Plaintiffs' Experts Should Be Able to Refer to Governmental Precautionary Statements Like the 1986 EPA Guidance.**

First of all, Defendants have not shown that governmental precautionary statements like the 1986 EPA guidance are inadmissible, but even if they were, Plaintiffs' experts could rely on them "[i]f experts in the field would reasonably rely on those kinds of facts or data in forming an opinion." FED. R. EVID. 703. Considering a government agency publication in forming their opinions is certainly reasonable for an expert in the field, and Defendant has presented no evidence to the contrary. Moreover, referring to government publications like the 1986 EPA guidance is not the same as bolstering an expert's opinion by referring to another expert's opinion, and Defendant's argument goes too far. Certainly, Defendants intend to use studies by other experts in the field to support their expert's opinions. But if Defendant is right, no epidemiological studies could be discussed because they would represent the conclusions of other experts used to bolster the testifying expert's opinion. This is certainly not the law, and referring to a government publication is not an improper attempt to bolster an expert's opinion.

VI.  **Information Published by The U.S. EPA Is Not Unduly Prejudicial.**

Information published by the U.S. Environmental Protection Agency (including the 1986 Gold Book) or other government agencies is not unduly prejudicial under FED. R. EVID. 403. Rather, it appears that defendants are confusing "unduly prejudicial" with damaging. They are not the same. Simply because evidence is damaging to defendants does not mean it is

7

inadmissible. "Unfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 404.21[3][b] (Joseph M. McLaughlin, ed., 2d ed. 2002)). Instead, Rule 403 only requires the exclusion of evidence "that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice 'substantially outweighs the probative value of the evidence.'" *Id.*

Evidence is only unfairly prejudicial when the prejudice outweighs the probative value. *Id.* These circumstances are not present here. The primary focus of the Gold Book, for example, is on the information published by the U.S. EPA regarding the hazards of asbestos as they relate to mechanics. The fact that the evidence is also damaging to defendants does not alter its admissibility.

## VII. Conclusion

For these reasons, Plaintiffs respectfully request that Defendants' motions in limine be denied and for such other relief to which they may be justly entitled.

Respectfully submitted,

/s/ *Kevin W. Paul*
Kevin W. Paul (*Pro Hac Vice*)
MSBA #43730
Jeffrey B. Simon
Texas Bar No. 00788420
Attorneys for Plaintiff
Simon Greenstone Panatier Bartlett
3232 McKinney Ave, Ste 610
Dallas, TX 75204
214-687-3248
kpaul@sgpblaw.com
jsimon@sgpblaw.com
*Local Civil Rule 83.1 Counsel*

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiff
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
jwblack@wardblacklaw.com
*Local Civil Rule 83.1 Counsel*
**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 7, 2015, I electronically filed the foregoing true and correct copy of PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS MOTIONS IN LIMINE TO EXCLUDE EVIDENCE OF GOVERNMENTAL PRECAUTIONARY STATEMENTS ABOUT ASBESTOS, INCLUDING THE 1986 EPA GUIDANCE with the Clerk of Court using the CM/ECF System which will send notification of such filing to all counsel of record in the above-referenced matter.

/s/ Kevin W. Paul
Kevin W. Paul