IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-752-FL

GRAHAM YATES and BECKY )
YATES, )
)
Plaintiffs, )
)
v. )                            ORDER
)
FORD MOTOR COMPANY and )
HONEYWELL INTERNATIONAL, )
INC., )
)
Defendants. )

This matter comes now before the court on eight interrelated motions in limine variously

filed by defendants Ford Motor Company ("Ford") and Honeywell International, Inc. ("Honeywell"),

regarding the admissibility of evidence that post-dates plaintiff Graham Yates's last alleged exposure

to defendants' products (DE 255, 256, 261, 281, 283, 285, 289, 294). These motions have been fully

briefed. In this posture, the issues raised are ripe for ruling as set forth below.[1]

## BACKGROUND

Plaintiffs bring claims for personal injury and loss of consortium related to allegations that

plaintiff Graham Yates contracted mesothelioma from defendants' brake products. Remaining for

trial are plaintiffs' claims for negligence in putting asbestos or asbestos-containing products into the

market (First Cause) and failure to warn (Fifth Cause).

Plaintiffs allege that Graham Yates was exposed to asbestos dust from brakes manufactured

---

[1] There remain pending the parties' additional motions in limine: DE 254; 257; 258; 259; 260; 273; 276; 279; 287; 291; 297; 299; 301; 303; 305; 307; 309; 390; and 384.

or supplied by defendant Honeywell's predecessor, Bendix Corporation ("Bendix"). Plaintiffs allege that Graham Yates was exposed from working as a gas station attendant from 1956 to 1957, from brake jobs performed on personal vehicles in the 1950s and 1960, and from clerking in an automobile parts warehouse from 1961 to 1962. Thus, his last exposure to Bendix brakes allegedly occurred in 1962. Plaintiffs also allege that Graham Yates was exposed to asbestos from defendant Ford's products while working as a gas station attendant in 1956 and 1957, and while working as a parts salesman and delivery driver for an independent Ford dealership in 1960. Thus, his last exposure to asbestos from defendant Ford's brakes allegedly occurred in 1960. Plaintiffs allege that these exposures caused Graham Yates's mesothelioma, diagnosed August 13, 2012.

## COURT'S DISCUSSION

A.      Motions to Exclude Evidence Post-Dating Plaintiff Graham Yates's Last Exposures (DE 256, 285)

In parallel motions, defendants seek generally to exclude all evidence which post-dates plaintiff Graham Yates's last exposures to their products. (DE 256, 285). Defendants argue that evidence which post-dates plaintiff Graham Yates's exposures is irrelevant under Federal Rules of Evidence 401 and 402, and that the danger of unfair prejudice substantially outweighs the evidence's probative value under Rule 403. Defendants also argue that post-exposure warnings and design changes are inadmissible under Federal Rule of Evidence 407. Plaintiffs assert that post-exposure evidence is admissible under the rules for the following reasons:

1. Show what defendants knew or should have known regarding the dangers of their products;

2. Show the feasibility of precautionary measures;

3. Impeach defendants' contentions regarding the safety of their

2

products; and

> 4. Provide evidence supporting causation and the danger of defendants' products.

As a subset of their argument that post-exposure evidence may be relevant on the knowledge issue, plaintiffs also assert that defendants are subject to a "continuing duty to warn" which followed plaintiff Graham Yates's exposures. (Pls'. Resp. at 3) (DE 329). They assert that a warning issued after plaintiff Graham Yates's exposures "could have affected his healthcare and future actions." Id.

The court addresses below defendants' arguments that all post-exposure evidence must be excluded on grounds of relevance and unfair prejudice. Then it considers arguments specific to defendants' warnings or design changes which followed plaintiff Graham Yates's exposures. As discussed herein, the motions are granted in part, and denied in part.

> 1. Post-Exposure Evidence Generally

> a. Relevance

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The "basic standard of relevance ... is a liberal one." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993).

In order to analyze relevance, it is first necessary to outline the basic elements of plaintiffs' two claims. "Under North Carolina law, a products liability action based upon negligence requires the plaintiff to prove the following essential elements: 1) duty; 2) breach; 3) causation; and 4) damages." Durkee v. C.H. Robinson Worldwide, Inc., 765 F. Supp. 2d 742, 748 (W.D.N.C. 2011);

Smith v. Wyeth–Ayerst Labs. Co., 278 F.Supp.2d 684, 706 (W.D.N.C.2003). A claim for negligence "has as its basis that a person charged with negligent conduct should have known the probable consequences of his act." Estate of Purkey ex rel. Purkey v. United States, 299 F. Supp. 2d 539, 543 (W.D.N.C. 2004) (quoting Hoots v. Pryor, 106 N.C. App. 397, 407 (1992)); see Wagoner v. N.C. R. Co., 238 N.C. 162, 168 (1953).

Failure to warn, or breach of a duty to warn, is a type of negligence action under North Carolina products liability law. See Edwards v. ATRO SpA, 891 F. Supp. 1074, 1077-80 (E.D.N.C. 1995) (examining negligence claims based on failure to warn, as well as based on manufacturing defect, selection of materials and design); see also Sisk v. Abbott Labs., No. 1:11-CV-159, 2012 WL 3155586, at *4-6 (W.D.N.C. 2012) (analyzing negligence claims based in failure to warn, as well as negligent manufacturing and design). Pursuant to N.C. Gen.Stat. § 99B-5(a), a defendant in a product liability action may be held liable for inadequate warning or instruction if the claimant shows: 1) "the manufacturer or seller acted unreasonably in failing to provide [adequate] warning or instruction;" 2) "the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought;" and 3) either section 99B-5(a)(1) or 99B-5(a)(2) has been satisfied. N.C. Gen.Stat. § 99B-5(a); See Evans v. Evans, 153 N.C. App. 54, 67 (2002).

Section 99B-5(a)(1) applies where the manufacturer or seller becomes aware of the need to warn or instruct while the product is still in its control and provides that the plaintiff show:

> [a]t the time the product left the control of the manufacturer or seller, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

N.C. Gen. Stat. § 99B-5(a)(1); Evans, 153 N.C. at 67.

Section 99B-5(a)(2) deals with the scenario in which the manufacturer or seller only becomes aware of the need to warn or instruct after the product has left its control. Under this section, the claimant must prove that:

> [a]fter the product left the control of the manufacturer or seller, the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

Id.

To satisfy the element of causation that is required for plaintiffs' negligence and failure to warn claims, plaintiffs must demonstrate both that exposure to asbestos can cause mesothelioma as a general matter (i.e. "general causation"), and that Graham Yates's specific instances of exposure were the cause of his own mesothelioma (i.e. "specific causation"). See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 263 (4th Cir. 1999) ("In order to carry the burden of proving a plaintiff's injury was caused by exposure to a specified substance, the plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure.") (quotation marks omitted); Doe v. Ortho-Clinical Diagnostics, Inc., 440 F. Supp. 2d 465, 471 (M.D.N.C. 2006) (distinguishing between general and specific causation).

All of the stated purposes for which plaintiffs seek to introduce post-exposure evidence[2] pertain to the issues of whether defendants' actions caused plaintiffs' injuries, and what defendants "should have known," which as set forth above, are elements common to both of plaintiffs'

---

[2] Again, plaintiffs assert that post-exposure evidence is relevant in order to 1) show what defendants knew or should have known regarding the dangers of their products; 2) show the feasibility of precautionary measures; 3) impeach defendants' contentions regarding the safety of their products; and 4) provide evidence supporting causation and the danger of defendants' products.

remaining claims.

As to causation, the facts presented by post-exposure evidence may very well make it more probable that defendants' products caused plaintiffs' injuries. See United Oil Co. v. Parts Associates, Inc., 227 F.R.D. 404, 414 (D. Md. 2005) (holding that an accident occurring after the one at issue "may have been highly relevant to causation."); Rowan Cnty. Bd. of Educ. v. U.S. Gypsum, 103 N.C. App. 288, 300 (1991) (holding that evidence post-dating the sale of asbestos-containing ceiling materials to county school system went "not to knowledge but to the nature" of the product, and whether it was fit for school buildings).

Likewise as to knowledge, evidence that post-dates plaintiffs' exposures may be indicative of what defendants knew or should have known prior to the incident or event in question. Cross v. Beckwith, 293 N.C. 224, 232 (1977) (holding that "[s]ubsequent acts and conduct are competent on the issue of original intent and purpose" in fraud claim) (quoting Early v. Eley, 243 N.C. 695, 701 (1956)); Rowan Cnty., 103 N.C. App. at 300 (admitting excerpt of corporate counsel's report post-dating sale of asbestos ceiling materials, where evidence was relevant and admissible on issue of asbestos manufacturer's intent in selling products); see also Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 451 (4th Cir. 2001) (reasoning that evidence of post-design conduct could "prove consciousness of wrongdoing" but only if the conduct "points to DaimlerChrysler's consciousness of wrongdoing *at the time it designed the [relevant product]* and not to consciousness of wrongdoing thereafter."). Accordingly, it would not be appropriate for the court categorically to exclude post-exposure evidence offered for the stated purposes herein considered on the ground of relevance, as defendants urge. Having answered the question of relevance in the affirmative, in this part, the motion is denied. Before moving on to consider defendants Rule 403 arguments, the court turns its

6

attention to the question of whether post-exposure evidence may be offered for the purpose of proving defendants had a continuing duty to warn.

<blockquote>i.       Continuing Duty to Warn</blockquote>

Evidence may be admissible for one purpose, but not admissible for another purpose. <u>See</u> Fed. R. Evid. 105. As noted, plaintiffs also assert that defendants are subject to a "continuing duty to warn" which followed plaintiff Graham Yates's exposures. The court must separately address plaintiffs' assertion that post-exposure evidence may be offered to show defendants owed them a continuing duty to warn. For the following reasons, the evidence will not be admitted for this purpose.

As noted above, to establish a "failure to warn" claim, plaintiffs must show that "that the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought." N.C. Gen. Stat. § 99B-5. "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred." <u>Hairston v. Alexander Tank & Equip. Co.</u>, 310 N.C. 227, 233 (1984).

Cases applying proximate cause in the failure to warn context have considered whether the evidence showed that adequate warning would have led to a different result. <u>See</u> <u>Fontenot v. Taser Int'l, Inc.</u>, 736 F.3d 318, 332 (4th Cir. 2013) (finding plaintiff had established proximate cause for purposes of N.C. Gen. Stat. § 99B-5 when he presented sufficient evidence that police officer would have acted differently in using taser if warning was provided); <u>Stanback v. Parke, Davis & Co.</u>, 657 F.2d 642, 645 (4th Cir. 1981) (under Virginia law, insufficient evidence of causation where evidence established that plaintiff would have received flu vaccinations even if warned); <u>Edwards</u>, 891 F.

7

Supp. at 1078 (holding plaintiff failed to present evidence of proximate cause where plaintiff admitted that he never read or asked for the owner's manual for the nail gun at issue, and further admitted he did not read the warning label provided); DeWitt v. Eveready Battery Co., Inc., 144 N.C. App. 143, 153 (2001) (affirming summary judgment where evidence showed that plaintiff was not aware that he had been exposed to battery fluid, and thus even adequate warnings regarding injuries from battery fluid exposure would not have prevented his injury).

The question of whether asbestos suppliers owe a continuing duty to warn individuals exposed to their products has not been addressed by the courts within this circuit, nor in North Carolina. Consistent with the principles noted above, however, the weight of the authorities in other jurisdictions hold that post-exposure evidence may support a failure to warn, if there is evidence that warning could have been effective in preventing or alleviating injury. Lockwood v. AC & S, Inc., 109 Wash. 2d 235, 260 (1987) ("[W]here a person's susceptibility to the danger of a product continues after that person's direct exposure to the product has ceased, the manufacturer still has a duty after exposure to exercise reasonable care to warn the person of known dangers, *if the warning could help to prevent or lessen the harm*.") (emphasis added); Owens-Illinois, Inc. v. Zenobia, 325 Md. 420, 448 (1992) (quoting Lockwood's imposition of a continuing duty to warn where "the seriousness of [plaintiff's] injury might have been reduced" if warning had been provided); compare Sealover v. Carey Canada, 793 F. Supp. 569, 579 (M.D. Pa. 1992) ("Evidence that [manufacturers] learned of the hazards of asbestos sometime after Sealover's exposure is in no way probative of what they actually knew prior to Sealover's exposure. *Although such evidence is relevant in some cases*, depending upon the claims raised, it is not relevant to the issues before this court.") (emphasis added); Ierardi v. Lorillard, Inc., 777 F. Supp. 420, 422-23 (E.D. Pa. 1991) (holding that

8

manufacturer of asbestos-containing cigarette filter had no continuing duty to warn smoker because cigarettes could not be recalled, and plaintiff's own expert had testified that mesothelioma was untreatable and incurable).

In Lockwood, the Washington Supreme Court found post-exposure evidence relevant where plaintiff alleged that he could have stopped smoking if he had been told of the dangers from asbestos. Lockwood, 109 Wash. 2d at 260. In Eagle-Picher Indus., Inc. v. Balbos, 84 Md. App. 10, (1990), the court similarly found that defendant had a duty to exercise reasonable care because, "if the decedents had been apprised of the dangers to their health, they might have sought medical treatment sooner and thus, perhaps, prolonged their lives." Id. at 59, aff'd in part, rev'd in part on other grounds, 326 Md. 179 (1992).

Plaintiffs' allegations are similar to those addressed in Eagle-Picher, asserting that plaintiff Graham Yates could have altered "his healthcare and future actions" if he had received warnings of the dangers of defendants' products.  (Pls'. Resp., 3). However, plaintiffs do not allege what kind of actions plaintiff Graham Yates could have taken, or how these actions could have prevented or alleviated his mesothelioma.  Nor do plaintiffs point to any evidence to support their assertions that plaintiff Graham Yates could have altered his healthcare and future actions. Without such evidence, plaintiffs cannot prevail on a theory of "continuing duty to warn."  Because plaintiffs cannot prevail on this theory, the facts that would be proven by such use of the evidence would not be "of consequence in determining" this action.  Fed. R. Evid. 401(b).  Accordingly, the evidence is irrelevant to the instant action, when offered to show a continuing duty to warn.

For these reasons, to the extent plaintiffs seek to offer post-exposure evidence to show defendants had a continuing duty to warn about the dangers of asbestos and failed to provide

adequate warning, defendants' motions to exclude this evidence are allowed.  In order to be relevant

to the question of what defendants knew or should have known, evidence must either precede

plaintiff Graham Yates's exposures, or point back to what defendants knew prior to those exposures.

> b.      Risk of Unfair Prejudice, Confusion of Issues, Or Misleading the Jury

Under Rule 403, the court may exclude otherwise relevant evidence if the probative value

of such evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence." Fed. R. Evid. 403.   "Because the evidence sought to be

excluded under Rule 403 is concededly probative, the balance under Rule 403 should be struck in

favor of admissibility, and evidence should be excluded only sparingly." United States v. Aramony,

88 F.3d 1369, 1378 (4th Cir. 1996).  Furthermore, the risk of any confusion or undue prejudice may

be mitigated through a limiting instruction.  Deans v. CSX Transp., Inc., 216 F.3d 398, 401 (4th

Cir.2000) ( "The district court alleviated any prejudice or confusion that might have occurred from

the introduction of this testimony with a limiting instruction."); Aramony, 88 F.3d at 1378 ("[T]he

unfair prejudicial value of evidence can be generally obviated by a cautionary or limiting

instruction.") (internal quotation omitted).

To be clear, at this point, the court has held that post-exposure evidence may be relevant to

the purposes of:  1) showing what defendants knew or should have known regarding the dangers of

their products (as limited to knowledge prior to plaintiff Graham Yates's exposures); 2) showing the

feasibility of precautionary measures; 3) impeaching defendants' contentions regarding the safety

of their products; and 4) providing evidence supporting causation and the danger of defendants'

products.  It is not appropriate at this time to issue a broad order addressing whether or not such post-

10

exposure evidence is admissible for these purposes also under Rule 403, however.

As a general principle, evidence such as studies and scientific or medical reports which post-date plaintiffs' exposure may have high probative value for the purposes of showing causation or demonstrating the feasibility of adequate warnings, or impeaching the testimony of defendants' witnesses. See United Oil, 227 F.R.D. at 414. Defendants assert that introduction of such evidence may mislead and confuse the jury by implying that defendants had more knowledge regarding the potential dangers of asbestos than was actually available to them at the time. This potential confusion may be adequately addressed through limiting instructions and appropriate cross-examination. The court denies defendants' motions to the extent they seek the court to exclude all post-exposure evidence at trial under Rule 403. Defendants of course may renew any objection at trial.

2.      Post-Exposure Warnings or Design Changes

Defendant Ford's motion to exclude post-exposure evidence also includes argument directed to a more specific category of post-exposure evidence, concerning "warnings or notices regarding the hazards of asbestos" which were included in its packaging, manuals, training materials, maintenance bulletins, and other materials, along with evidence of "design changes by Ford in the 1980s to non-asbestos friction components." (Ford Memo. In Supp., 4-5) (DE 286). Defendant Ford argues that such materials are inadmissible as "subsequent remedial measures" under Federal Rule of Evidence 407. Although defendant Honeywell does not expressly raise the same argument, the same analysis would likewise apply to any warnings or notices that Honeywell issued following plaintiff Graham Yates's exposures. Proper analysis requires consideration of Rule 407 and Rule 403.

11

a.      Subsequent Remedial Measures

Rule 407 provides that:

When measures are taken that would have made an earlier injury or harmless likely to occur, evidence of the subsequent measures is not admissible to prove:

- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

"Rule 407 promotes an important policy of encouraging subsequent remedial measures."

Werner v. Upjohn Co., Inc., 628 F.2d 848, 856 (4th Cir.1980). "The rationale behind Rule 407 is that people in general would be less likely to take subsequent remedial measures if their repairs or improvements would be used against them in a lawsuit arising out of a prior accident." Id. at 857.

Generally, an objector must show that the proffered evidence is within the scope of Rule 407. Graham, 23 Fed. Prac. & Proc. Evid. § 5291 (citing Fed. R. Evid. 104). Once the objector has shown that the evidence is within the scope of the rule, the burden shifts to the proponent to show that the evidence is relevant for some permissible purpose. Id.; see Reddin v. Robinson Property Grp., 239 F.3d 756, 760 n. 9 (5th Cir. 2001) (placing burden on plaintiff to present specific details regarding why subsequent remedial measures would constitute impeachment).

As an important initial consideration, the court notes that plaintiffs do not dispute that the post-exposure warnings or design changes at issue would constitute subsequent remedial measures under Rule 407. Warnings or post-design changes only qualify under Rule 407 when they would

12

make "an earlier injury or harm less likely to occur." Fed. R. Evid. 407. The analysis which follows assumes that the warnings or design changes at issue would in fact have diminished the risk of an earlier injury or harm, and therefore qualify under Rule 407.

Plaintiffs argue that the evidence shows "when asbestos-free products were available." (Pls'. Resp., 3). Furthermore, plaintiffs assert that evidence of post-exposure warnings or design changes may bear on "whether Defendants' asbestos products were capable of causing asbestos-related disease" as well as "when Defendants were aware of that fact." (Id.). The court turns now to consider each of these proposed uses.[3]

As to the purpose of showing "when asbestos-free products were available," for the reasons discussed above, this fact would only become relevant to the extent that the post-exposure warnings or design changes showed that asbestos-free products were available *prior* to plaintiffs' exposures. Plaintiffs do not explain how these post-exposure warnings or design changes could demonstrate this fact. Even if they could, the clear import of this showing would be that defendants were negligent in failing to use these asbestos-free products, or that their earlier products were defective. This is not permitted under Rule 407. See Werner, 628 F.2d 853-54 (reversing admission of subsequent revised warning offered to show feasibility, where the "obvious inference" and "clear import" was to show that the revised warning should have been used earlier).

Moreover, to the extent plaintiffs seek to show "when asbestos-free products were available" as a means of showing the feasibility of precautionary measures prior to plaintiff Graham Yates's exposures, "Rule 407 does allow evidence of subsequent remedial measures to be used to prove the

---

[3] Plaintiffs also vaguely assert that the post-exposure warnings or design changes are relevant to "other matters." (Id.). This is insufficient to carry plaintiffs' burden to show relevance for a permissible Rule 407 purpose.

feasibility of such measures, but only if feasibility is controverted by the defendant." Id. at 854-55;

see also In re Joint E. Dist. and S. Dist. Asbestos Litig., 995 F.2d 343, 345 (2nd Cir. 1993) (finding

reversible error in admission of evidence that asbestos manufacturer placed warnings on its asbestos

product after decedent's last exposure, where evidence was admitted to show feasibility of warnings

and defendant had not raised any dispute concerning that issue). On the record, there is no indication

that either defendant will contest that asbestos-free alternatives were available prior to plaintiff

Graham Yates's exposures. Unless and until a defendant raises such issue, feasibility is not a

permissible purpose for presenting evidence of the warnings.

With respect to plaintiffs' proposal to use post-exposure warnings or design changes to show

when defendants knew their products could cause asbestos-related disease, such use would be bound

by the principles noted in the previous section. These warnings and design changes may only be

used if they show what defendants knew *prior* to plaintiff Graham Yates's exposures. Jimenez, 269

F.3d at 450-51; Cross, 293 N.C. at 232. On the record, there is no indication that this post-exposure

conduct could actually show pre-exposure knowledge.

Moreover, with respect to this proposed use to show knowledge, as well as plaintiffs'

proposed use to show causation, such exceptions are not expressly provided for in Rule 407. This

is not dispositive of the matter, as the permissible purposes noted in Rule 407 exceptions are

intended to be "illustrative not exhaustive." Werner, 628 F.2d at 856. However, in order to

effectuate the Rule 407 policy of encouraging subsequent remedial measures, the court "should not

be too quick to read new exceptions into the rule because by so doing there is a danger of subverting

the policy underlying the rule." Id. at 857.

If there is a line between using this evidence to show "knowledge" or "causation" and using

14

it for the prohibited purposes in Rule 407, it is thin one, indeed. See id., at 858-59 ("[T]he policy behind Rule 407 does not allow for a new exception to prove causation . . . on the facts of this case."); Freeman v. Funtown/Splashtown, USA, 828 A. 2d 752, 754-55 (Me. 2003) (prohibiting evidence of subsequent remedial measures to show causation under state counterpart to Rule 407, because "[e]vidence of causation is a necessary element of a negligence claim, and, therefore, any evidence used to prove causation is also used to prove negligence. Thus, evidence of subsequent repairs intended to prove causation *is* evidence offered to prove negligence."); see also Kendall v. Bausch & Lomb, Inc., No. Civ. 05-5066-KES, 2009 WL 1740008, at *8 (D.S.D. June 17, 2009) ("The court will not read into Rule 407 an exception for causation, especially in cases where jurors may easily draw inferences from the post-accident remedial measures to a party's negligence or the defectiveness of a product."); Wusinich v. Aeroquip Corp., 843 F. Supp. 959, 961-62 (E.D. Pa. 1994) (excluding evidence of subsequent remedial measures to prove causation because causation was "an essential element" of plaintiffs' strict liability claim). It is not necessary, however, to rule upon whether Rule 407, in itself, requires exclusion in these circumstances. As discussed below, the risk that a jury may draw inferences from this evidence that Rule 407 identifies as impermissible leads the court to exclude the evidence under Rule 403.

   b.  Risk of Unfair Prejudice, Confusion of Issues, Or Misleading the Jury

   To the extent evidence of post-exposure warnings or design changes are offered to show knowledge or causation, the court finds this evidence should be excluded under Rule 403. On the current record, there is no reason to believe that post-exposure warnings or design changes are strongly probative of any knowledge defendants should have had prior to plaintiff Graham Yates's exposures. As to the matter of causation, it appears that evidence of post-exposure warnings or

15

design changes would only be indirectly probative of whether defendants' brake products caused plaintiffs' injury. Defendants' decisions to issue these warnings or design changes were undoubtedly based on reports, studies, or other developments more directly probative on the matter of causation. An abundance of alternative forms of evidence, including those reports and studies themselves, may be offered for this purpose.

On the other hand, the risk of unfair prejudice from this evidence is great. As noted above, it is a small step from using this evidence for the purpose of knowledge or causation, and using it for the purposes prohibited by Rule 407. The clear inference from this use of warnings and design changes is that defendants were negligent, their products were defective, or that warnings or instructions were necessary. The risk of undue prejudice under Rule 403 substantially outweighs the probative value of warnings or design changes that constitute subsequent remedial measures, and requires exclusion. See Malone v. Microdyne Corp., 26 F.3d 471, 480 (4th Cir. 1994) (affirming district court exclusion of subsequent remedial measures where "potential prejudice . . . [was] clear" because jurors "likely would view" the evidence "as proof of culpable conduct;" probative value of evidence was "dubious" because "plenty of other evidence at trial" was probative for the same purposes proposed by plaintiffs, and evidence was not directly probative of the terms of the particular actions at issue); Werner, 628 F.2d 853-54 (reversing admission of remedial measures to prove feasibility, where the "obvious inference" and "clear import" of the use of evidence was that defendant had been negligent).

For these reasons, the court grants defendant Ford's motion as it pertains to subsequent warnings and design changes. And because the same analysis would apply to any post-exposure warnings or design changes employed by defendant Honeywell, evidence of this defendant's

subsequent warnings or design changes likewise willbe excluded under Rule 403.

In sum, defendants' motions as to post-exposure evidence are granted in part, and denied in part. The motions are granted as they pertain to plaintiffs' proposed use of this evidence to support a "continuing duty to warn," and as they pertain to evidence of defendants' post-exposure warnings and design changes. The motions are denied so far as they seek generally to exclude all evidence which post-dates plaintiff Graham Yates's exposures.

B.      Defendant Ford's Motion to Exclude Evidence Related to the Coordinating Committee for Automotive Repair ("CCAR") In Which Defendant Honeywell Joins (DE 281, 360)

Defendant Ford separately moves to exclude evidence related to the CCAR, an independent organization representing the automotive industry. (Memo. In Supp., Ex. 2, Aff. of Robert G. Stewart, ¶¶ 3-4) (DE 282-2). It challenges the CCAR evidence on the grounds of relevance, hearsay, undue prejudice, propensity to mislead the jury, and needless presentation of cumulative evidence. Plaintiffs propose three purposes for admission of the evidence: 1) evidence that defendant Ford endorsed the program contradicts defendant Ford's current position that brake repair is not hazardous and cannot cause disease; 2) the evidence is relevant to refuting defendant Ford's assertions that the opinions of plaintiffs' experts are unscientific or not generally accepted; and 3) the evidence is relevant to the issue of whether defendant Ford's prior warnings were adequate. For the reasons given, this motion is allowed.

1.      Activities Involving the CCAR

Among its activities, the CCAR provides training to current and prospective automobile mechanics. (Id. at ¶ 3). On January 7, 2005, Albert Rocker ("Rocker"), the Field Operations Manager in Ford's Customer Service Division, disseminated a memorandum encouraging Ford and

17

Lincoln Mercury dealers to participate in online Safety and Pollution Prevention ("S/P2") training programs developed by CCAR. (Memo. In Supp., Ex. 4, 3) (DE 282-4); (Pls'. Resp., Ex. 4, 1) (DE 319-4). The memorandum provides that "S/P2 can play a valuable role in the important task of safety and environmental stewardship in both the collision repair and service repair departments." Id., at 3. The CCAR subsequently issued press releases reporting that defendant Ford had "adopted CCAR's 'S/P2' online training" programs. (Pls'. Resp., Ex. 3, 4) (DE 319-3; 319-4). A press release issued February 8, 2005, quotes Rocker as follows:

> S/P2 is industry-recognized and recommended for dealership use as part of an overall environmental awareness plan . . . . Ford and Lincoln Mercury Dealers are encouraged to participate in the S/P2 training, which can play a valuable role in the important task of safety and environmental stewardship in both collision repair and service repair departments.

(Pls'. Resp., Ex. 4, 1)

A press release issued March 14, 2005, quotes Lee Cork ("Cork"), a manager in Ford's Customer Services Division, as follows:

> Among Ford Motor Company, our dealers, and the schools that make up our Technical Career Entry Programs, there is a shared commitment: to protect the environment, as well as the health and safety of students . . . . The adoption of S/P2 and our partnership with CCAR is a further demonstration of this commitment.

(Pls'. Resp. Ex. 3, 1).

The 2006 S/P2 training program included a module on "Mechanical Pollution Prevention: Asbestos." (Id., Ex. 5) (DE 319-5). The module included the following statement:

> Although asbestos is a very *useful* material and *inexpensive* to produce, there is a *dangerous downside.* If asbestos, and *particularly the fine dust* from wear, is not handled correctly during repair, the tiny asbestos fibers can *become airborne and can be inhaled.* Inhalation of too much dust and fibers can cause a disease called *asbestosis.* This disease can lead to other lung diseases, including mesothelioma and cancer.

18

(Id., 3) (emphasis in original). The module also warns that mechanics could be exposed to asbestos through brake and clutch products, cautions that dust clouds seen during brake work with asbestos may contain thousands of asbestos fibers, provides federal recommendations on methods to avoid working around asbestos products, and makes other recommendations on how to work with asbestos products. (Id.). The S/P2 program consisted of other modules beside the asbestos module. (Pls'. Resp., Ex. 6, Rocker Dep., 17) (DE 319-6).

Although contents of the 2005 "S/P2" training program have not been submitted into the record, defendant Ford does not dispute that the video in existence at the time of adoption included recommendations on the avoidance of exposures to asbestos dust. (Memo. In Supp., 2). In a deposition taken August 10, 2006, Rocker acknowledged that the statement quoted above was part of the training program that he recommended. (Rocker Dep., Ex. 6, 2, 19). He also affirmed that a number of other statements from the 2006 S/P2 asbestos module were used in defendant Ford's training. (Id., 18-29). In 2007, Rocker notified the CCAR that defendant Ford was withdrawing its recommendation of the S/P2 training, and issued communications stating that it no longer recommended the training "[d]ue to numerous inaccuracies and problems." (Memo. In Supp., Ex. F, 5-6) (DE 282-7).

2.     The CCAC Evidence

a.     Relevance

As noted, plaintiffs assert the evidence that defendant Ford endorsed the program contradicts defendant Ford's current position that brake repair is not hazardous and cannot cause disease. Evidence of inconsistency in defendant Ford's current position makes it more probable that those brake products may in fact have a causal relationship with mesothelioma, supporting general

19

causation for purposes of plaintiffs' negligence and failure to warn claims. The evidence satisfies Rules 401 and 402, when offered for this purpose. Second, along similar lines, plaintiffs assert that the evidence is relevant to refuting defendant Ford's assertions that the opinions of plaintiffs' experts are unscientific or not generally accepted, because the materials "illustrate Ford's constant and repeated statements to the contrary outside the courtroom." (Pls'. Resp., 2) (DE 319). Again, the court agrees that defendant Ford's endorsement of the S/P2 video contradicts its contentions, and makes it more likely that such opinions regarding the hazards of asbestos in brake products are generally accepted, which again goes to the element of causation in both claims. So for these reasons, to the extent defendants' motion to exclude relies on relevance ground, the motion is denied.

Third, plaintiffs assert that these materials are relevant to the issue of whether defendant Ford's prior warnings were adequate. They assert that "[t]he copious stronger warnings issued by Ford to its own employees and employees of its independent dealerships over the past 35 years are powerful evidence that its belated and half-hearted cautionary language to consumers was insufficient." (Pls' Resp., 2-3). This is the weakest of the arguments offered in support of the admission of this evidence. The S/P2 warnings appeared over 40 years after plaintiff Graham Yates's last exposure to a Ford product, in an online format that was not available prior to his exposure. Moreover, the parties' main dispute in this case is whether defendant Ford's products caused plaintiff Graham Yates's condition, not whether any prior warning was adequate. Even if relevant, there is no proposed purpose for which this evidence may be used, as discussed below.

        b.       Risk of Unfair Prejudice, Confusion of Issues, Or Misleading the Jury

The value of the CCAR evidence, when offered for the purposes plaintiffs propose, is slight. The asbestos module was only one of a number of modules that comprised the S/P2 program. The

20

Rocker memorandum and the accompanying press releases only make general references to the S/P2 program, and do not discuss the asbestos module of the program, or any of the specific statements regarding asbestos.

Moreover, defendant Ford withdrew its endorsement and discontinued using the S/P2 program within two years, alleging the program had "numerous inaccuracies and problems." (Memo. In Supp., Ex. F, 5-6). The evidence that defendant Ford may have previously accepted that its brakes could be hazardous is only indirectly probative of the ultimate matters in dispute – whether the asbestos in defendant Ford's brakes actually cause mesothelioma in general, and whether this asbestos specifically caused plaintiff Graham Yates's mesothelioma. And, as noted above, other forms of evidence are available to demonstrate that brake repair may cause disease or that the opinions of plaintiffs' experts are sound. For these reasons, the probative value of the CCAR evidence is significantly diminished. And, as already noted, adequacy of prior warning is not a material point of contention. Moreover, the S/P2 warnings appeared over 40 years after plaintiff Graham Yates's last exposure to a Ford product, in format not available at the times in question.

On the other hand, the risk that the jury will inappropriately infer from this evidence that defendant Ford was negligent, that its products were defective, or that it was required to provide a warning or instruction is strong. Nor does the probative value of the evidence justify the time that may be spent on trial exploring the circumstances behind the CCAR's development of the materials, the relationship between CCAR and defendant Ford, and the process behind defendant Ford's decision to adopt these statements. Accordingly, the evidence is excluded under Rule 403.[4]

_____

[4] While defendant Ford's motion to exclude evidence relating to the CCAR did not expressly argue for exclusion on the basis of Rule 407, the Rule 407 arguments advanced in defendant Ford's motion to exclude post-exposure evidence in general (DE 285) are broad enough also to cover this specific type of post-exposure warning. Plaintiffs do not propose

C. Motion to Exclude Documents of the Friction Materials Standards Institute ("FMSI") and Asbestos Textile Institute ("ATI") (DE 255)

Defendant Honeywell separately moves to exclude documents or testimony about the asbestos trade organizations FMSI and ATI. Defendant Honeywell asserts that the documents are unauthenticated, irrelevant, and constitute hearsay. For reasons given, this motion is allowed.

1. Authenticity

"Authentication represents a special aspect of relevancy, in that evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims." United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992) (brackets and quotation marks omitted). Authentication may be met by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Resolution of whether evidence is authentic calls for a factual determination by the jury, and admissibility is therefore governed by the procedures set forth in Federal Rule of Evidence 104(b). Branch, 970 F.2d at 1370. "Before admitting evidence for the jury's consideration, the district court must determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." Id.; see also United States v. Cornell, 780

---

to use the CCAR-produced materials in themselves. Rather, each of plaintiffs' proposed uses of this evidence relies upon and incorporates defendant Ford's endorsement of these materials. This endorsement was given for purposes of promoting safety. Instructing dealers to follow safety procedures set forth in the S/P2 program constitutes a measure that "would have made an earlier injury or harm less likely to occur," and falls squarely within the bounds of Rule 407. Applying Rule 407 to these warnings is consistent with the Rule's rationale to encourage parties to take steps in furtherance of safety. See Werner, 628 F.2d at 856. With respect to its proposed use of these subsequent warnings to show the inadequacy of earlier warnings, plaintiffs essentially present the type of use that the Fourth Circuit rejected in Werner. Werner, 628 F.2d at 853 (holding that plaintiff's use of a 1975 warning to show that defendant " 'should have' included the information in the 1975 warning in the 1974 warning . . . was impermissible."). Since Werner, Rule 407 was amended to expressly provide that subsequent remedial measures are not admissible to prove "a need for a warning or instruction." See Fed. R. Evid. 407, advisory committee notes, 1997 amends. Accordingly, Rule 407 mitigates against introduction of this evidence.

F.3d 616, 629 (4th Cir. 2015). ("[A] district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic.").

To support authentication, plaintiffs point to the testimony of ATI Executive Secretary Doris Fagan, given in a deposition undertaken May 23, 1979; the testimony of FMSI Secretary and Executive Director Edward Drislane, given in depositions undertaken August 23, 1982 and July 23, 1999; and the affidavit of Margaret Baumgardner, Research Coordinator of the Claims Resolution Management Corporation, dated September 17, 2009. Plaintiffs' proposed use of these statements requires accepting the truth of the matters asserted therein. Plaintiffs point to no applicable hearsay exception. These statements cannot be admitted at trial. See Fed. R. Evid. 802. The jury will have no foundation on which to reasonably find the ATI and FMSI documents are authentic. On this basis, the proffered documents must be excluded. The court need not reach objections as to relevance or hearsay.

Plaintiffs assert that, even if the documents are inadmissible, their experts may rely on them. An expert may rely on inadmissible facts or data in forming an opinion on a subject, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. However, plaintiffs point to no evidence supporting that experts would reasonably rely on these documents in forming their opinions. For the foregoing reasons, defendant Honeywell's motion to exclude FMSI and ATI documents is granted.

D.     Defendant Ford's motion to Exclude Evidence of Foreign Bans on the Importation of Chrysotile Asbestos, in which defendant Honeywell Joins (DE 289, 360)

Defendant Ford moves the court to: 1) prohibit any testimony, evidence or reference to

23

foreign bans on the importation of chrysotile asbestos; 2) order counsel for plaintiffs to inform all witnesses not to refer to such bans; and 3) order that violation of any instructions would constitute irreparable harm, deprive Ford of a fair and impartial jury trial, and may constitute contempt and necessitate a mistrial. Defendant Ford argues that this evidence is irrelevant to establish notice or medical causation, hearsay, and cannot support an expert opinion under Rule 703. This motion is granted in part and remaining part held in abeyance, for the reasons given below.

1. Relevance

Plaintiffs state that the evidence is relevant to show defendant Ford's knowledge or notice. Foreign government actions may indeed be probative as to the "state of the art" concerning the dangers of chrysotile asbestos:

> State of the art represents all of the available knowledge on a subject at a given time, and this includes scientific, medical, engineering, and any other knowledge that may be available. State of the art includes the element of time: What is known and when was this knowledge available.

Horne v. Owens-Corning Fiberglas Corp., 4 F.3d 276, 280-81 (4th Cir. 1993) ((quoting Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1164 (4th Cir.1986)) (quotation marks omitted). Government regulations may be pertinent to the available knowledge that comprises the state of the art. Id. at 281 (finding Occupational Safety and Health Act ("OSHA") regulations relevant to state of the art). The "state of the art," in turn, is relevant to whether defendants should have known the dangers of their products. Lohrmann, 782 F.2d at 1164 ("[s]tate of the art in the present case would determine the manufacturer's duty to warn of the danger of asbestos . . . . The question was when the state of the art included knowledge that people such as [plaintiff] were at risk.").

Nevertheless, to show knowledge or notice, any foreign bans on the importation of chrysotile

24

asbestos must adhere to the principles set forth above as to post-exposure evidence. The foreign government action must either precede plaintiff Graham Yates's exposures, or point back to what defendants knew prior to those exposures. Because there is no evidence that any post-exposure chrysotile asbestos ban actually points back to defendants' notice or knowledge prior to those exposures, the court allows defendant Ford's motion to exclude post-exposure bans. To the extent that plaintiffs' evidence includes any foreign bans on the importation of chrysotile asbestos that preceded plaintiff Graham Yates's exposures, analysis continues.

2.      Unfair Prejudice, Jury Confusion and Waste of Time

As to foreign bans which pre-dated plaintiff Graham Yates's exposures, the court takes note of authorities in other jurisdictions which have excluded evidence of foreign regulations on the finding that such regulations would lead to jury confusion and waste of time. See Fed. R. Evid. 403; Katzenmeier v. Blackpowder Prods., Inc., 628 F.3d 948, 950, n.4 (8th Cir. 2010); Hurt v. Coyne Cylinder Co., 956 F.2d 1319, 1327 (6th Cir. 1992); Deviner v. Electrolux Motor, AB, 844 F.2d 769, 773-74 (11th Cir. 1988); In re Seroquel Products Liab. Litig., 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009); In re Baycol Prods. Litig., 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007). Allowing evidence of these foreign government actions may divert the case into a series of "mini-trials" regarding the grounds for those decisions and the regulatory schemes of the countries involved. Seroquel, 601 F. Supp. 2d at 1318.

Nevertheless, courts within this circuit have declined to grant motions broadly seeking to exclude evidence of foreign regulatory actions when those motions, as here, lack specificity and context. E.g. Eghnayem v. Boston Sci. Corp., No. 2:13-CV-07965, 2014 WL 5465741, at *5 (S.D.W. Va. Oct. 28, 2014); Blevins v. New Holland N. Am., Inc., 128 F. Supp. 2d 952, 959 (W.D.

25

Va. 2001).  The court adheres to this reasoning.

Where the specific evidence regarding these bans has not yet been presented to the court, the court cannot now balance the probative value of any particular ban against the risks.  Accordingly, at the upcoming hearing on motions in limine, plaintiffs are directed to present any pre-exposure regulatory decisions they wish to introduce into evidence, for more specific consideration under the principles noted above.  In this part the motion is held in abeyance.

2.      Hearsay

The use of foreign government bans to show notice does not require proving the truth of the matter asserted.  See Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1385-86 (4th Cir. 1995) (admitting over hearsay objection case reports and case summaries regarding adverse drug effects, because such documents were relevant to show notice).  Accordingly, the evidence will not be excluded as hearsay.  To the extent it is admitted, defendants may propose limiting instructions regarding this evidence.

E.      Defendant Ford's Motion to Exclude "Don't Blow It" Video In Which Defendant Honeywell Joins (DE 283, 360)

Defendant Ford moves to exclude a video prepared by the Environmental Protection Agency ("EPA") in 1986, related to safe practices in performing brake repairs.  In the video, two men represented as automotive repair shop workers give advice on the proper way to perform brake and clutch replacements in a manner which minimizes exposure to asbestos dust.  (Def.'s Memo. In Supp., Ex. 1, Tr. of "Don't Blow It" Video) (DE 284-1).  The men generally discuss the dangers of asbestos, including the manner that asbestos can enter the lungs during brake maintenance work.

(Id., 3-5[5]).  They instruct workers to use a vacuum canister to clean dust, instead of using an air hose which could blow the asbestos into the air, and offer other instructions on eating, laundry, and smoking habits.  (Id. at 2-5).  They also refer to an unspecified magazine article which reported that family members of asbestos workers were being diagnosed with cancer caused by dust that men brought home on their clothes.  (Id. at 4).  The men discuss a chart purporting to show the enhanced risk of lung cancer experienced by asbestos workers who smoked.  (Id.).  Defendants challenge the video on the grounds of relevance and hearsay, assert that it cannot support an expert opinion, and allege that it would cause unfair prejudice, jury confusion and a prolonged trial.  For reasons discussed below, in all parts this motion is allowed.

      1.     Exclusion of the Video

         a.     Relevance

Defendant Ford argues that the video is irrelevant because it only pertains to brake mechanics, and plaintiff Graham Yates did not work as a brake mechanic.  Plaintiffs offer two purposes for using this evidence.

First, plaintiffs argue that the evidence is relevant as "a real-life example of a reasonably available alternative warning that Ford could have provided."  (Pls'. Resp., 2) (DE 320).  This use of the evidence is relevant for the purpose of illustrating adequate warning, and thus goes to the elements of whether defendants' prior warnings, or lack thereof, were inadequate.

Second, plaintiffs state that the video demonstrates general acceptance of the opinion that brake asbestos is harmful.  The court finds this use relevant as well.  The disputes between the

---

[5]  The transcript includes multiple pages on each docket entry page.  Citations are to the page numbers assigned by the docket, not the page numbers in the transcript itself.

parties' experts, their methods, and their biases are key issues in this case. The EPA is assumed to

be an objective government body. See Zeus Enters., Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 241

(4th Cir. 1999) (noting that public agencies are generally presumed reliable). It is tasked with,

among other things, identifying and regulating hazardous pollutants and carrying out the purposes

of the Toxic Substances Control Act, as well as conducting research, investigations, experiments,

surveys and studies regarding the causes, effects, and control of air pollution under the Clean Air

Act, and publishing its findings. 15 U.S.C. § 2609; 42 U.S.C. § 7403. The fact that the EPA

accepted the position that brake asbestos could cause lung disease makes it more likely that those

studies supporting a link between brake asbestos and lung disease are valid. This, in turn, supports

proximate cause for plaintiffs' negligence and failure to warn claims. Thus, when used to show

general acceptance of the opinion that brake asbestos is harmful, the evidence is relevant. As such,

the evidence passes the relevance tests provided under Rules 401 and 402. The analysis must

continue, however.

> b.      Unfair Prejudice, Jury Confusion and Prolonging Trial

The video does not withstand Rule 403 analysis, however. The video has limited probative

value to the question of current consensus on the hazards of brake asbestos. First, the main thrust

of the video is not that the general consensus has found brake asbestos is hazardous, but rather to

show that brake asbestos *is* hazardous. The video cites to no specific studies or reports, and makes

no statements as to the opinions of the scientific community in general. In addition, the video is

nearly 30 years old, undermining its probative value as a statement of current opinions regarding

brake asbestos.

The video also has limited probative value as an illustrative tool for the type of warning that

defendant Ford should have provided. Plaintiffs have provided no evidence that the brake cleaning methods and technology described in the video were known or available at the time of plaintiff Graham Yates's exposures.

On the other hand, the danger of unfair prejudice is substantial. Given that the video's primary message presents a hazard, it is likely that the jury will in fact take such statements for the truth of the matter asserted. Doing so would circumvent the rules on hearsay.[6] Moreover, to the extent the video suggests that defendants should have endorsed certain precautionary methods, without evidence that those methods were known or available prior to plaintiff Graham Yates's exposures, the video would be prejudicial and potentially confusing or misleading to the jury.

The impact of such unfair prejudice would further be enhanced because the report bears the imprimatur of the federal government, leading the jury to grant these statements undue weight. See Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) (affirming district court decision to exclude government report under Rule 403, noting "the prejudicial effect such an official report might have on the jury"); Carter v. Burch, 34 F.3d 257, 265 (4th Cir. 1994) (excluding judicial opinion due to the risk that such findings "would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice"); In re Air Crash at Charlotte, N.C. on July 2, 1994, 982 F. Supp. 1060, 1066 (D.S.C. 1996) (excluding evidence of federal government's admission, noting that the jury "might place undue weight on statements of an official government agency").

Finally, introduction of this evidence seems likely to protract trial by raising collateral issues

---

[6] Plaintiffs make conclusory statements that the video falls within a number of exceptions, but their argument provides nothing more than a recitation of the law without showing how this law applies to the video or other facts in this case. Plaintiffs fail to show that any hearsay exception applies, and therefore the video cannot be used for the truth of the matter asserted in the statements.

regarding the accuracy of this video and the methods of its production. See City of N.Y. v. Pullman, Inc., 662 F.2d 910, 915 (2d Cir. 1981) (affirming exclusion of government report where "admission of the report would have been likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation"); John McShain, Inc. v. Cessna Aircraft Co., 563 F.2d 632, 662 (3d Cir. 1977) (affirming exclusion of government reports where reception "would have involved a lengthy attempt to sift out admissible hearsay, as well as an inquiry into the circumstances bearing on the trustworthiness of the investigators' conclusions") (quotation marks omitted). This consumption of time is not justified in light of other evidence available to plaintiffs on the pertinent issues, and the limited probative value of the evidence. For these reasons, where the court finds the probative value of the "Don't Blow It" video substantially outweighed by the danger of unfair prejudice and jury confusion, defendant Ford's motion to exclude the video is allowed.

      2.     Exclusion of Expert Opinion Testimony

Defendant Ford also argues that the video cannot be used to support the opinions of plaintiffs' experts. Rule 702 requires courts to evaluate the "reliability" of expert testimony, including a consideration of whether testimony is "the product of reliable principles and methods." Fed. R. Evid. 702. Plaintiffs bear the burden of showing that the testimony of their experts is reliable by a preponderance of proof. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

Federal Rule of Evidence 703 further addresses the kind of facts or data than an expert may rely upon to form an opinion:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject,

they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Plaintiffs' argument that their experts may provide testimony concerning the video only refers to Rule 703, making a conclusory statement that "[c]ertainly, it is appropriate for experts to consider the positions taken by governmental agencies . . . in forming their opinions." (Pls'. Resp., 5) (DE 320). Plaintiffs point to no evidence supporting this statement, nor do they forecast how their experts might rely on the video. It is not at all clear that experts in medicine or pathology would "reasonably rely" on a government video nearly 30 years old, lacking any reference to any studies or other literature, to support their opinions. Nor is it clear that doing so would constitute "reliable principles and methods" under Rule 702. Having failed to carry their burdens under Rules 702 and 703, plaintiffs also are precluded from presenting the video through expert testimony.

F.    Defendant Honeywell's Motion to Exclude Evidence of the EPA's 1986 Pamphlet Which Defendant Ford Separately Advances (DE 261, 294); Defendant Ford's Motion to Exclude Evidence of Government Precautionary Statements About Asbestos In Which Defendant Honeywell Joins (DE 294, 360)

Defendant Honeywell moves to exclude evidence of a June 1986 Pamphlet entitled "Guidance for Preventing Asbestos Disease Among Auto Mechanics," also known as the "Gold Book." ("1986 Gold Book") (Pls'. Resp., Ex. A) (DE 317-1). Defendant Ford submits a related motion to exclude evidence of government precautionary statements about asbestos, which refers specifically to the 1986 Gold Book and a 2007 EPA booklet, "Current Best Practices for Preventing Asbestos Exposure Among Brake and Clutch Workers." ("2007 Booklet") (Def. Honeywell Memo. In Supp., Ex. B) (DE 270-3). However, defendant Ford's motion also sweeps broader, seeking

exclusion of *any* statement about the health risks arising from asbestos made by any domestic or foreign government. The court finds it appropriate to address these motions with three separate analyses, according to the items of evidence at issue: first, the 1986 Gold Book; second, the 2007 Booklet; and, finally, government precautionary statements about asbestos, in general. For the reasons given, each motion is granted in part and denied in part.

1. Motions Concerning the 1986 Gold Book (DE 261, 294)

Defendant Honeywell asserts that 1986 Gold Book is inadmissible by its own or as the basis of expert testimony, because: 1) it is irrelevant; 2) the pamphlet is a regulatory agency's risk assessment communication and not a peer-reviewed, original scientific study; 3) the pamphlet constitutes hearsay for which there is no valid exception; and 4) the probative value of the document is outweighed by its prejudicial effect. Defendant Ford similarly argues that government precautionary statements are irrelevant and incompetent to prove medical causation, they are irrelevant and unreliable, and they are unduly prejudicial and misleading.

a. Relevance

Plaintiffs propose three uses for the 1986 Gold Book: 1) to describe how auto mechanics are exposed to asbestos fibers; 2) to show what diseases they may contract; and 3) to show what can be done to control their exposure to asbestos. While plaintiff was not himself an auto mechanic, he has alleged that some of his exposures occurred while working around auto mechanics. The methods by which auto mechanics are exposed, the diseases they may contract, and the methods of minimizing their exposure are relevant to the element of causation in plaintiffs' claims, and the third use is also relevant to show inadequate warning and breach of duty.

The document achieves these purposes. As discussed above with respect to the "Don't Blow

It" video, the EPA is presumed to be an objective body, and is tasked with conducting research and investigations and disseminating information regarding toxic substances and air pollution. The fact that this governmental body surveyed pertinent literature and found it necessary to issue a document regarding the risks of asbestos exposures to brake mechanics makes it more probable that asbestos found in brake products can in fact cause diseases such as plaintiff's mesothelioma. Furthermore, the 1986 Gold Book relies on some of the same authorities that plaintiffs' experts relied upon in forming their opinions. See, e.g., (Expert Report of Eugene Mark, 8) (DE 184-20); (Expert Report of Steve Hays, 74) (DE 183-16); (1986 Gold Book, 9) (all citing Rohl, A.N., Langer, A.M, Wolff, M.S. & Weisman, I., "Asbestos Exposure During Brake Lining Maintenance and Repair." Env't Research, 12, 110-128 (1976)). The fact that a presumably objective agency relied on these same reports lends weight to the underlying source material of plaintiffs' experts, and thus indirectly supports those experts' theories regarding causation. Likewise, the fact that the EPA, which issues numerous protective standards and regulations, has recommended certain precautionary practices to prevent asbestos exposure makes it more probable that those precautionary practices are effective and feasible.

Defendant Ford argues that many of the agency regulations and precautionary statements only address asbestos generically, and do not specifically address chrysotile asbestos. The 1986 Gold Book illustrates this objection, where it does not mention chrysotile asbestos but appears to treat all asbestos the same. However, defendant Ford has not yet demonstrated that this distinction is meaningful enough to justify exclusion of evidence simply because it fails to distinguish between chrysotile asbestos and other forms. On summary judgment this court held that a genuine issue of material fact existed as to whether chrysotile asbestos could cause plaintiff Graham Yates's

mesothelioma. <u>Yates v. Air & Liquid Sys. Corp.</u>, No. 5:12-CV-752-FL, at 39 (Sept. 30, 2014) (DE 217). Defendant Ford offers no new evidence in connection with its motion to alter the court's conclusion. On the showing made, the court finds the evidence relevant. Fed. R. Evid. 401; 402.

b.    Lack of Peer Review/ "Tier" of Publication

Defendant Honeywell also argues that the 1986 Gold Book should be excluded because it is not a "peer reviewed, scientific publication" and is at "the bottom tier" of government publications. (Honeywell Memo. In Supp., 3) (DE 270). It cites no rule or authority holding that evidence must be "peer reviewed" in order to be admissible. <u>Daubert</u> held that publication in a peer reviewed journal was "a relevant, though not dispositive, consideration." <u>Daubert</u>, 509 U.S. at 593-94. Furthermore, <u>Daubert</u> dismissed peer reviewed opinions in the context of analysis of the reasoning or methodology underlying an expert opinion, under Rule 702. It is not clear whether plaintiffs intend to offer this document through their expert, or in some other manner. Even if they did offer it through an expert, <u>Daubert</u> did not hold that its test for reliability applies to each and every item which stands as the basis of the expert's opinion.

Such a holding would conflict with Rule 703 and its accompanying guidance. The advisory committee notes to Rule 703 offer illustrations of the proper bases of expert testimony to include "statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." Fed. R. Evid. 703, advisory committee notes, 1972. None of these categories of evidence would be peer reviewed. Lack of peer review, in itself, is not a ground for excluding the 1986 Gold Book.

Defendant Honeywell's arguments as to the appropriate "tier" for this document or how that tier affects admissibility lacks any supporting caselaw. The court is not persuaded.

34

c.      Hearsay

Defendants also both assert that the document should be excluded as hearsay.  As an initial matter, to the extent the 1986 Gold Book supports the credibility of plaintiffs' witnesses by referring to the same studies or reports, the document's probative value rests in the fact that these references were made, and it is not necessary to accept them for the truth of any matter asserted.  Accordingly, they are not hearsay.  <u>United States v. Ayala</u>, 601 F.3d 256, 272 (4th Cir. 2010).

However, plaintiffs also offer this document for hearsay purposes as well.  The 1986 Gold Book consists of out of court statements regarding the manner that automobile mechanics may be exposed to asbestos, the link between asbestos and diseases including mesothelioma, and effective measures to control exposure.  Plaintiffs  offer these statements for their truth to show: 1) how plaintiff may have been exposed; 2) that asbestos causes mesothelioma; and 3) that these measures would be effective.  These uses of the 1986 Gold Book constitute hearsay, and are inadmissible unless otherwise provided by federal statute, the rules of evidence, or other rules promulgated by the Supreme Court.  Fed. R. Evid. 801(c); 802.

Towards that end, plaintiffs assert that the 1986 Gold Book meets several exceptions, including the "public records" exception.  Rule 803(8)  provides that"[a] record or statement of a public office" may be admissible if:

(A)      it sets out:

(i)      the office's activities;
(ii)      a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
(iii)      in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

35

(B)     the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

The public records exception "is grounded on the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Zeus Enters., 190 F.3d at 241. "Admissibility in the first instance is assumed because of the reliability of the public agencies usually conducting the investigation, and their lack of motive for conducting the studies other than to inform the public fairly and adequately." Ellis v. Int'l Playtex, Inc., 745 F.2d 292, 300 (4th Cir. 1984). EPA reports "are generally admissible" under this rule. See Parker v. Allentown, Inc., 891 F. Supp. 2d 773, 783 (D. Md. 2012) (quoting O'Dell v. Hercules, Inc., 904 F.2d 1194, 1206 (8th Cir. 1990)).

Plaintiffs offer no argument or evidence as to how the 1986 Gold Book could meet the exception for records setting forth "the office's activities," nor do they point to how the 1986 Gold Book constitutes "a matter observed while under a legal duty to report." Rather, they suggest that Rule 803(8)(A)(iii) applies, also with reliance on a 2009 case from the Delaware Supreme Court. Gen. Motors Corp. v. Grenier, 981 A.2d 531 (Del. 2009).

The court in Grenier held the 1986 Gold Book admissible over a hearsay challenge by Ford. Id. at 539. The court took note of the EPA's statutory authority under 15 U.S.C. § 2609, which directs the agency to "conduct such research, development, and monitoring as is necessary to carry out the purposes" of the Toxic Substances Control Act. Id. 539, n. 21. Relying on Delaware Rule of Evidence 803(8), which is substantially similar to Federal Rule of Evidence 803(8), the court reasoned as follows:

36

> D.R.E. 803(8) provides an exception to the hearsay rule for "reports, statements or data compilations, in any form, of a public office or agency setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law." The EPA is a public agency; the Gold Book is a report that sets forth factual findings; and the EPA has authority to collect and disseminate information on asbestos.

Id.

Likewise, this court finds that the 1986 Gold Book results from an investigation conducted by the EPA into relevant literature on the hazards of asbestos, pursuant to the Toxic Substances Control Act and the Clean Air Act. 15 U.S.C. § 2609; 42 U.S.C. § 7403. The document sets forth the EPA's findings regarding the risks of asbestos to brake mechanics. It also describes the agency's findings regarding best safety practices.

Defendant Ford references United States v. Gray, 852 F.2d 136 (4th Cir. 1988) in arguing that the Rule 803(A)(iii) exception should not apply. There, the court affirmed the trial court's exclusion of an internal IRS referral report indicating that the defendant's former counsel was involved in transactions possibly constituting criminal tax fraud. Id. at 139. The court rejected the argument that the report should have been admitted as the factual findings of an investigation, and found the report was "only a tentative internal report not purporting to contain agency findings." Id. Defendant Ford asserts that the 1986 Gold Book likewise does not set out "purport to contain factual findings." (Memo. In Supp., 8) (quotation marks omitted) (DE 295).

The phrase "factual findings," as used in Rule 803(A)(iii), is to be "interpreted broadly." Ellis, 745 F.2d at 301. The 1986 Gold Book certainly sets forth assertions of fact. In contrast to Gray, the 1986 Gold Book was published and disseminated to the public, not limited to internal use. There is no indication that these statements were only tentative.

Defendants assert that the 1986 Gold Book does not satisfy the standard for "trustworthiness"

37

under Rule 803(8)(B). Nonexclusive factors that may be used to determine trustworthiness include: 1) the timeliness of the investigation; 2) the investigator's skill or experience; 3) possible bias; 4) inadequate investigation; 5) inadequate foundation for conclusions; and 6) invasion of the jury's providence. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 n. 11 (1988); Anderson v. Westinghouse Savannah R. Co., 406 F.3d 248, 264 (4th Cir. 2005). Because "[m]ost government sponsored investigations employ well accepted methodological means of gathering and analyzing data," the party opposing admission of public record evidence has the burden to establish that the sources of information or other circumstances indicate untrustworthiness. Ellis, 745 F.2d at 301; see also Zeus Enters., 190 F.3d at 241.

Defendants argue that the 1986 Gold Book is unreliable because it relies upon studies conducted by other scientists and reports issued by other agencies and organizations. The argument goes to whether the report is appropriately based on firsthand observation. "[I]n a hearsay situation, the declarant is, of course, a witness." Fed. R. Evid. 803, advisory committee notes, 1972. Accordingly, the hearsay declarant remains subject to rules applicable to witness testimony. If the declarant is not an expert, his testimony must be based on firsthand knowledge, including "relevant historical or narrative facts that the witness has perceived." MCI Telecomm. Corp. v. Wanzer, 897 F.2d 703, 706 (4th Cir. 1990); see also Jones v. Colonial Life & Accident Ins. Co., No. 98-1133, 1999 WL 261858, at *2 (4th Cir. 1999); Fed. R. Evid. 701(a) (opinion by lay witness must be "rationally based on the witness's perception"); Ellis, 745 F.2d at 303 & n. 10 (considering whether statements that formed the basis of public records satisfied personal knowledge requirement by falling within separate hearsay exceptions). As defendants point out, the copious references in the 1986 Gold Book demonstrate that its findings are not based on the author's firsthand observations,

38

but rather are based on other literature.

However, "[u]nlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Daubert, 509 U.S. at 592. The 1986 Gold Book sets forth an opinion based on "scientific, technical, or other specialized knowledge" and is more properly analyzed as an expert opinion rather than a lay witness opinion. See Fed. R. 701(c). Therefore, the report may include opinions on subjects beyond those observed firsthand.

Defendants point out that plaintiffs have failed to demonstrate that the author of the document was qualified as an expert. However, Rule 803(8) does not require that the author of a report be qualified as an expert before the report becomes admissible. See Clark v. Clabaugh, 20 F.3d 1290, 1294-95 (3d Cir. 1994); see also Amerisure Ins. Co. v. Ex-Cell-O Corp., No. 96-2082, 1998 WL 30817 at *5 (6th Cir. 1998); Dale v. Ala Acquisitions I, Inc., 398 F. Supp. 2d 516, 521 (S.D. Miss. 2005). It is assumed "that a public official will perform his duty properly," that public agencies usually conduct investigations in a reliable manner, and that government investigations "employ well accepted methodological means of gathering and analyzing data." Ellis, 745 F.2d at 300-01. From these assumptions, it also follows that the agency has designated a qualified individual to conduct investigations. It is defendants' burden to come forward with affirmative evidence impugning the expert's qualifications. Id. ("The factors that may be used to determine admissibility include . . . the special skill or experience of the official . . . . But the burden is on the party opposing admission to demonstrate that the report is not reliable."); see also Derosiers v. Flight Int'l of Fla. Inc., 156 F.3d 952, 962 (9th Cir. 1998) (putting burden on opponents of Rule 803(8) report to show that author of report was not qualified to render expert opinions); Clark, 20 F.3d at

39

1295 "[B]efore an objection to the opinion testifier's expert qualifications may be recognized, the party challenging the validity of an official report admitted under 803(8)(C) must come forward with some evidence which would impugn its trustworthiness."). Merely pointing out that plaintiffs have not established the qualifications of the 1986 Gold Book's author is not enough.

Defendant Ford asserts that the 1986 Gold Book was not prepared by a public office or agency, but rather was prepared by an outside consultant to the EPA. It is unclear what evidence defendant Ford relies upon to make this statement. The title page of the document bears the EPA emblem, and the document otherwise appears to be an official publication. On this argument, defendant Ford fails to carry its burden.

Defendant Ford also asserts that the 1986 Gold Book is not based on an "ascertainable record." (Memo. In Supp., 9) (citing Rambus, Inc. v. Infineon Tech. AG, 222 F.R.D. 101, 109 (E.D. Va. 2004). The 1986 Gold Book includes citations to 37 sources of information, including articles by scientists and reports by the EPA and other federal agencies. The record is sufficient.

Defendants' arguments may also be construed to assert that, because it is based on other studies and reports, the opinions presented by the 1986 Gold Book are not the product of "reliable principles and methods." Fed. R. Evid. 702(c). Here again, defendants have the burden "to demonstrate that the methodology [of a study] was flawed." Ellis, 745 F.2d at 302. The mere fact that the 1986 Gold Book relies on other studies and reports does not carry this burden. Defendants' experts themselves rely on studies conducted by others to support their opinions on the risks of asbestos exposure, including publications by the EPA. E.g. (Ford Mem. In Supp. of Summ. J., Ex. D, Mowat Rep., 25) (DE 175-4). Plaintiffs are not required to demonstrate the reliability of consulting other sources, rather defendants must show that the sources are untrustworthy, or that the

40

method used by consulting these sources was untrustworthy. "It is unfair to put the party seeking admission to the test of 're-inventing the wheel' each time a report is offered." Ellis, 745 F.2d at 301.

Defendants also suggest that the 1986 Gold Book is untrustworthy because it is a government agency report which purports to make statements regarding causation. Courts have indeed recognized a distinction between the assessments of regulatory agencies and the standard of medical causation necessary for tort liability:

> The methodology employed by a governmental agency results from the preventive perspective that the agencies adopt in order to reduce public exposure to harmful substances. The agencies' threshold of proof is reasonably lower than that appropriate in tort law, which traditionally makes more particularized inquiries into cause and effect and requires a plaintiff to prove that it is more likely than not that another individual has caused him or her harm.

Mitchell v. Gencorp Inc., 165 F.3d 778, 783, n.3 (10th Cir. 1999) (quotation marks omitted).[7]

However, these cases largely address contexts other than statements which have been found to satisfy the standards of a government investigation under Rule 803(8). While the court may take these authorities into account in evaluating challenges to an expert, or in considering whether a regulatory risk assessment or standard is probative of causation, these cases do not persuade the court to hold as a rule that public records are untrustworthy simply because they address the subject of

---

[7] See McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1248-49 (11th Cir. 2005) (holding expert's use of FDA data and recommendations to establish medical causation was improper); Glastetter v. Novartis Pharms. Corp, 252 F.3d 986, 991 (8th Cir. 2001) ("The FDA will remove drugs from the marketplace upon a lesser showing of harm to the public than the preponderance-of-the-evidence or more-likely-than-not standards used to assess tort liability . . . . The FDA's 1994 decision that Parlodel can cause strokes is unreliable proof of medical causation in the present case because the FDA employs a reduced standard (vis-a-vis tort liability) for gauging causation when it decides to rescind drug approval."); Allen v. Pa. Eng'g Corp., 102 F.3d 194, 198 (5th Cir. 1996) (holding experts' use of "weight of the evidence" methodology that regulatory and advisory bodies employed was improper to demonstrate a link between plaintiff's exposure and brain cancer, because "[t]he agencies' threshold of proof is reasonably lower than that appropriate in tort law."); see also In re Garlock Sealing Tech., LLC, 504 B.R. 71, 81 (Bankr. W.D.N.C. 2014) (Regulatory statements, policies, or regulations as to exposure to chrysotile asbestos "cannot be probative on the issue of causation because of the differences in the way courts and regulatory authorities assess risk.").

causation. The Fourth Circuit has held that, under a Rule 803(8)(A)(iii) analysis, "scientific reports should [not] be treated any differently from other public findings of fact." Ellis, 745 F.2d at 301. The court will not make a special distinction for scientific reports regarding causation. Where defendants have not pointed to a more concrete and specific flaw in the 1986 Gold Book's methodology, they have not carried their burden to show untrustworthiness.

Defendants' remaining arguments as to why the 1986 Gold Book lacks trustworthiness are conclusory. Defendant Honeywell asserts that the 1986 Gold Book is not trustworthy because it "is filled with assertions that are supported by the citation of dubious sources such as a British television special; contradict the established science, and even contradict government regulations and the subsequent pronouncements of the EPA itself." (Honeywell Mot. In Supp., 12) (DE 261). Defendant Honeywell does not explain what makes the sources "dubious," or how the 1986 Gold Book is contradicted by "established science" or subsequent EPA regulations and pronouncements. The mere fact that one of the cited sources was a television special does not stand as grounds to deny the admissibility of the entire report, especially when defendant Honeywell fails to explain the reason why the television special was inappropriate to consider. This is insufficient to carry defendant Honeywell's burden to show untrustworthiness.

Defendant Ford likewise argues that the 1986 Gold Book is unreliable because "in the quarter century since it was published, the weight of the scientific evidence has confirmed the absence of any association between brake mechanic work and asbestos-related disease." (Ford Memo. In Supp., 8) (DE 295). Defendant Ford fails to present the specific scientific evidence which contradicts the 1986 Gold Book. This is not sufficient to carry its burden to show untrustworthiness.

For these reasons, the court finds the 1986 Gold Book will not be excluded as hearsay.

42

d.    Unfair Prejudice and Jury Confusion

Defendants finally contend that the danger of unfair prejudice and jury confusion would outweigh the probative value of this evidence. Defendants' arguments are conclusory and fail to identify the prejudice they would suffer from introduction of this evidence. "Unfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." United States v. Mohr, 318 F.3d 613, 619 (4th Cir. 2003). Evidence need only be excluded if it "damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence." Id.

To the extent that plaintiffs seek to introduce this evidence to show what precautionary methods or procedures may be used to contain asbestos, the court agrees that the evidence should be excluded. As has been explained, the time period of the negligent conduct in this case is limited to the time prior to defendant Graham Yates's exposures. Plaintiffs have not provided evidence showing that the precautionary methods described in the 1986 Gold Book were known or available at the time of plaintiff Graham Yates's exposure. Without this, introducing evidence of what methods may contain asbestos has low probative value to the pertinent issue of whether defendants had a duty to provide warnings prior to defendant Graham Yates's exposures. This low probative value would be substantially outweighed by the risk of unfair prejudice, confusing the issues, and misleading the jury posed by implying that such methods were known and available. Accordingly, plaintiffs are precluded from presenting those parts of the 1986 Gold Book that provide evidence of appropriate methods of asbestos containment.

However, when used to show how mechanics may be exposed to asbestos or what diseases

they may contract, the evidence has significant probative value which is not substantially outweighed by negative Rule 403 factors. As noted, the 1986 Gold Book surveys literature on the subject of asbestos and makes findings on the manner that mechanics may be exposed or what diseases they may contract has significant probative value for purposes of establishing causation. Defendant Ford argues that the 1986 Gold Book should be excluded because it bears the markings of an official EPA document. The argument might have weight if the 1986 Gold Book were *not* such an official document, but there is no reason to believe that is the case. There is nothing unfairly prejudicial about an official document representing itself as an official document.

Furthermore, the mere fact that the 1986 Gold Book is a government report does not in itself justify exclusion. In contrast to the "Don't Blow It" video discussed above, where the primary import of the video was hearsay, which was further enhanced by the fact that the evidence was a government publication, here the risk of hearsay is much reduced due to the finding that this document meets the public records requirement under Rule 803(8).

Thus, the evidence may be used to show how mechanics can be exposed to asbestos or what diseases they may contract (which includes the purpose of using the 1986 Gold Book to support the credibility of plaintiffs' experts). The evidence may not be used to show precautionary methods or measures that may be used to control asbestos. Plaintiffs should redact the 1986 Gold Book accordingly. Defendants are invited to proffer limiting jury instructions on this evidence.

Defendants also ask the court to preclude plaintiffs' experts from referring to the 1986 Gold Book. Again, in order for plaintiffs' experts to base their opinions upon this evidence, plaintiffs must show that doing so would be consistent with "reliable principles and methods." Fed. R. Evid. 702(c). The court has identified above one purpose on which plaintiffs' experts may rely on this

44

document – by pointing to the reliability of studies that the experts themselves use to support their opinions regarding causation, to the extent those sources are also relied upon by the EPA. As to any other uses of this document, plaintiffs' conclusory assertions in their response do not carry their burden to show such use would be consistent with Rule 702(c). Accordingly, although the 1986 Gold Book is itself admissible, plaintiffs' experts can only refer to it to support the validity of any studies cited therein which plaintiffs' experts also rely upon. Defendant Honeywell's motion is granted in part, and denied in part, in this respect.

For the reasons stated above, defendants' motions, as they pertain to the 1986 Gold Book, are granted in part and denied in part. The motion is granted to the extent plaintiffs seek to introduce this evidence to show appropriate methods of asbestos containment. The motion is also granted in part, to the extent plaintiffs' experts seek to refer to this document. The motion is otherwise denied, where plaintiffs may offer the 1986 Gold Book to show how auto mechanics are exposed to asbestos fibers and to show what diseases they may contract. It is also denied, to the extent plaintiffs' experts may refer to the 1986 Gold Book's reliance on reports or studies that the experts themselves have relied upon, to support the reliability of those common sources.

2. Defendant Ford's Motion Regarding the 2007 Booklet in Which Defendant Honeywell Joins (DE 294, 360)

Defendant Ford separately challenges the admission of the 2007 Booklet. The 2007 Booklet begins with general statements regarding asbestos and how it can cause health problems, including mesothelioma. (2007 Booklet, 2) (DE 261-3). This section of the 2007 Booklet directs the reader to visit the website of the Agency for Toxic Substances and Disease Registry (ATSDR) "for more information on the health effects of asbestos exposure," but does not specifically provide the source

of these general statements regarding asbestos.  (Id.).  The 2007 Booklet goes on to discuss why mechanics should be concerned about asbestos exposure, relates OSHA best practices for working with asbestos, briefly references EPA regulations, and directs the reader to an OSHA bulletin for additional information.  (Id., 3-6).

Defendant Ford raises the same general arguments here as were raised against the 1986 Gold Book.  As to this document, the court agrees with defendant Ford.

Plaintiffs argue that the 2007 Booklet is relevant for the same reasons as the 1986 Gold Book, and the court agrees that these uses are relevant.  However, as with the 1986 Gold Book, these uses constitute hearsay.  In contrast with the 1986 Gold Book, however, plaintiffs have failed to show an exception applies.

Plaintiffs raise three exceptions: 1) Rule 803(6), for "Records of Regularly Conducted Activity;" 2) Rule 803(8), for "Public Records;" and 3) Rule 807, the "Residual Exception." Plaintiffs' arguments are entirely too conclusory to satisfy Rule 803(6) and 807, where they consist of little more than recital of the law.  As to Rule 803(8), plaintiffs fail to show how the document sets forth the EPA's activities, represents a matter observed under a legal duty to report, or sets forth factual findings from any legally authorized investigation.  The record of sources for this report is far reduced from that used by the 1986 Gold Book, consisting largely of general references to OSHA and EPA standards and regulations, rather than any studies or reports.  Outside of OSHA and the EPA, the 2007 Booklet only references the ATSDR website.  Yet it is not clear whether the 2007 Booklet actually relied on the ATSDR website to support the statements it makes regarding asbestos. Rather than the product of any investigation, the document appears to be a compilation of federal standards and regulations on proper work practices.  Accordingly, plaintiffs have not shown that this

document qualifies as a "public record" for purposes of the Rule 803(8) exception. On the record, the 2007 Booklet is inadmissible hearsay.

In addition, plaintiffs have failed to show that experts would reasonably rely on the facts or data presented in the 2007 Booklet, where plaintiffs' arguments are merely conclusory. Accordingly, plaintiffs' experts may not rely on this document as a basis of their opinion. For these reasons, the court grants defendant Ford's motion as it pertains to the 2007 Booklet.

        a.      Government Precautionary Statements

As noted, defendant Ford moves more broadly to exclude all evidence or expert testimony regarding regulations and publications concerning the health risks of asbestos. The court's consideration of issues concerning the 1986 Gold Book and the 2007 Booklet , and the different conclusions reached, demonstrates why such a ruling would be inappropriate at this time. Analyzing the admissibility of these statements will depend on the particular pieces of evidence to be offered and the purpose for which plaintiffs propose to use the evidence. However, the principles provided throughout this order should guide the parties in future, similar evidentiary disputes.

## CONCLUSION[8]

Based on the foregoing, the court orders the following:

A.      Defendants' motions to exclude evidence post-dating plaintiff Graham Yates's exposures (DE 256, 285) are GRANTED IN PART, and DENIED IN PART. The motions are GRANTED as they pertain to plaintiffs' proposed use of this evidence to support a "continuing duty to warn," and as the evidence consists of post-exposure

---

[8] On any item of evidence held admissible for a limited purpose over a party's objection, without waiving any objection, the court encourages limiting instructions be proposed in advance of trial.

warnings and design changes. The motions are DENIED so far as they seek to generally exclude all evidence which post-dates plaintiff Graham Yates's exposures.

B.      Defendant Ford's motion to exclude evidence related to the CCAR (DE 281), joined by defendant Honeywell (DE 360), is GRANTED.

C.      Defendant Honeywell's motion to exclude exhibits regarding the FMSI and ATI (DE 255) is GRANTED.

D.      Defendant Ford's motion to exclude evidence of foreign bans on the importation of chrysotile asbestos (DE 289), joined by defendant Honeywell (DE 360), is GRANTED, to the extent the evidence post-dates plaintiff Graham Yates's exposures. The remainder of the motion is HELD IN ABEYANCE, and plaintiffs are DIRECTED to present any pre-exposure regulatory decisions that they wish to introduce at the upcoming hearing on motions in limine.

E.      Defendant Ford's motion to exclude the "Don't Blow It" video (DE 283), joined by defendant Honeywell (DE 360), is GRANTED.

F.      Defendant Honeywell's motion to exclude evidence of the EPA's 1986 Pamphlet (DE 261) is GRANTED in part, and DENIED in part. The 1986 Gold Book is admissible to describe how auto mechanics are exposed to asbestos fibers, and what types of diseases they may contract, and as to these uses defendant Honeywell's motion is DENIED. Defendant Honeywell's motion is GRANTED to the extent plaintiffs seek to introduce this evidence to show appropriate methods of asbestos containment. As to the use of this document by plaintiffs' experts, defendant Honeywell's motion is GRANTED in part, and DENIED in part. Plaintiffs' experts

48

may use the 1986 Gold Book to support the reliability of studies the experts themselves rely upon, that are also cited in this government document. Otherwise, plaintiffs' experts may not rely upon this document. To the extent plaintiffs seek to introduce this document into evidence, they are DIRECTED to redact it accordingly.

G.    Defendant Ford's motion to exclude evidence of government precautionary statements about asbestos (DE 294), joined by defendant Honeywell (DE 360), is GRANTED in part, and DENIED in part. The motion is GRANTED to the extent plaintiffs seek to introduce the 1986 Gold Book to show appropriate methods of asbestos containment. The motion is DENIED to the extent plaintiffs' experts refer to the 1986 Gold Book to support the reliability of any studies or reports cited therein that plaintiffs' experts themselves rely on to form their opinions. The motion is GRANTED to the extent plaintiff's experts seek to use this document for any other reasons as a basis in forming their opinions. The motion is also GRANTED as it pertains to the 2007 Booklet, and this document will be inadmissible whether introduced directly by plaintiffs or through their experts. Defendant Ford's motion is DENIED as it pertains generally to any and all government precautionary statements.

SO ORDERED, this the 11th day of May, 2014.

LOUISE W. FLANAGAN
United States District Judge

49