IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA, WESTERN DIVISION

| | |
|---|---|
| GRAHAM YATES and BECKY YATES, <br><br> Plaintiffs, <br><br> vs. <br><br> AIR & LIQUIDS SYSTEMS CORPORATION, et al., <br><br> Defendants, | File No. 5:12-cv-00752-FL |

**DEFENDANT HONEYWELL INTERNATIONAL INC.'S REPLY MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO PRECLUDE EVIDENCE SUGGESTING THAT BRAKE DUST CAUSES PLEURAL MESOTHELIOMA OR THAT "EVERY EXPOSURE COUNTS"**

Plaintiffs hope that clever word games and generalities about asbestos and mesothelioma will prevent this Court from holding Plaintiffs and their experts to their burden of proving both general and specific causation by a preponderance of the evidence. Rather than respond to the substance of Honeywell's challenge – that Plaintiffs' experts fail to utilize a proper methodology to support causation opinions that brake dust causes pleural mesothelioma generally or that Mr. Yates' dose of brake dust was a substantial contributing factor in the development of his mesothelioma – Plaintiffs' Opposition focuses on whether chrysotile has been shown to cause mesothelioma. Not one of Plaintiffs' arguments establishes that their experts followed the scientific method to determine general and specific causation for this brake dust exposure case and satisfied the *Daubert* standard outlined in Honeywell's Motion.

The Court should hold Plaintiffs to their burden of proving, by a preponderance of the evidence, that their experts' opinions are reliable and admissible, rather than allow Plaintiffs to confuse the jury with unfounded opinions that carry the imprimatur of expert scientific analysis.

**I. PLAINTIFFS' ASSERTION THAT THEIR EXPERTS INTEND TO TESTIFY REGARDING "CUMULATIVE EXPOSURE" RATHER THAN "EVERY EXPOSURE" IS A MATTER OF SEMANTICS AND NOT A MEANINGFUL DISTINCTION.**

Plaintiffs' first claim Honeywell's Motion is moot because their experts do not intend to offer testimony that each and every exposure to asbestos caused Mr. Yates' mesothelioma.[1] Instead, Plaintiffs

---

[1] *See* Plaintiffs' Opposition at 1 [Doc. No. 392].

suggest that their experts will testify that "mesothelioma is caused by a person's *cumulative* asbestos exposure."[2] The suggestion that cumulative exposure means something different than "each and every exposure" is misplaced.[3] The Court should not permit improper, unreliable expert testimony based on Plaintiffs' attempted rebranding of their experts' opinions.

In *Smith v. Ford Motor Co.*, plaintiff's expert based his causation opinion on the premise that because he could not rule any exposures "out," he would simply rule all exposures "in," concluding that "the plaintiff's mesothelioma was caused by his total and **cumulative exposure** to asbestos, with all exposures and all products playing a contributing role."[4] The Court found that this "cumulative exposure" causation opinion "seeks to avoid not only the rules of evidence but more importantly the burden of proof." *Id*. The Court compared plaintiff's expert's attempt to determine causation to a homicide detective who discovers a murdered man from a large family. While the Court noted that experience shows family members are often the killer in such cases, and the detective is unable to *rule out* any relative, this does not allow the detective to attribute legal liability to *every* family member on the basis of such a theory.[5]

Instead of addressing how Dr. Mark and Dr. Brody meet the *Daubert* factors, Plaintiffs simply alter how they phrase their opinions.

## II.     PLAINTIFFS DO NOT ESTABLISH GENERAL AND SPECIFIC CAUSATION

Plaintiffs' misinterpret the *Daubert* challenge by focusing on whether there is a "general consensus" that chrysotile at any dose can cause mesothelioma. This is not the relevant issue. Plaintiffs, instead, must show a reliable methodology under *Daubert* for determining that the alleged exposures to Bendix brakes caused Mr. Yates' mesothelioma. This requires a determination of both general causation, whether a low-dose exposure to *brake dust* is scientifically demonstrated to cause mesothelioma, and

---

[2] *Id.* at 1 (emphasis added).
[3] Dr. Mark's opinion has remained the same since it was rejected in a Philadelphia *Frye* hearing. *See* Frye Hearing, February 11, 2008 (Afternoon Session), *Chrysler Asbestos Litigation,* at 21, [Doc. No. 296-8].
[4] 2013 WL 214378, at *5 (D. Utah Jan. 18, 2013) (quotation marks omitted) (emphasis added).
[5] *Id.*; *see also Juni, et al. v. A.O. Smith Water Products*, No. 190315/12, at *35 (N.Y. Sup. Ct. 2015) ("In asserting that the cumulative exposure controls, plaintiffs avoid the requirement of showing even an approximate quantification … and fail to offer sufficient evidence that any specific exposure increases the risk of a disease and is thus a significant contributing factor to causing the disease.") [Doc. No. 381-6].

2
Case 5:12-cv-00752-FL   Document 395   Filed 05/26/15   Page 2 of 11

specific causation, whether the alleged exposure to Bendix brakes that Mr. Yates experienced caused his mesothelioma.[6] Plaintiffs fail to show how their experts' each and every exposure (or cumulative exposure) theory is a scientifically reliable methodology for determining causation.

None of the studies referenced in Plaintiffs' Opposition show that friction products cause mesothelioma at any dose. Instead of looking at the evidence as a whole, Plaintiffs focus on a couple original studies which cannot be used to show an increased risk of mesothelioma from exposure to brake dust. *See supra* III.A-B. Further, Plaintiffs (like their experts) do not address the significant differences between brake dust and raw chrysotile. Instead, Plaintiffs' Opposition essentially equates brake dust with chrysotile despite Dr. Mark's admission that he does not know whether chrysotile in friction products loses its biological properties as a result of the manufacturing and braking process.[7]

By his own definition, Dr. Mark has failed to show that any exposure to Bendix brakes was a special exposure (and thus a cause of Mr. Yates' mesothelioma). Dr. Mark defines a "special exposure" as one for which there is scientific reason to conclude that such an exposure creates a risk of developing the disease.[8] He has not provided any evidence or "scientific reason" to conclude that *Mr. Yates' exposure* to Bendix brakes created a risk for mesothelioma. This would require some comparison of Mr. Yates' exposure to an exposure that has been shown in the peer-reviewed literature to increase the risk for mesothelioma, which he has not done.

---

[6] Plaintiffs allege that Mr. Yates was exposed to Bendix brakes from his work as a gas station attendant from 1956 to 1957, washing cars and windshields, putting in oil, and helping mechanics. Video Deposition of Graham Yates, taken on 2/13/13, at 71. [Doc. No. 296-2] Mr. Yates did not perform any maintenance work. *Id.* at 71. Additionally, they allege exposure as a clerk in the parts warehouse at North Carolina Equipment Depot from 1960 to 1962, from fetching Bendix replacement brakes in the warehouse and bringing them to delivery truck drivers. Mr. Yates only contact with the brakes was to open the box when he pulled them in the warehouse and again when he verified them with the drivers. *Id.* at 82-85. Mr. Yates also testified to performing two brake changes on the front brakes only, one in 1960 and one in the 1950s, in which he used Bendix replacement brakes. *Id.* at 19-20, 24-25.

[7] *See Yates v. Air & Liquid Systems Corp., et al.*, Vol. 1, Dep. of Dr. Mark, 3/16/15 at 44. [Doc. No. 296-1] Similar to the Court in *Parker* taking issue with plaintiff's failure to account for the differences between gasoline containing benzene and pure benzene (which had a higher concentration of benzene), Plaintiffs, here, fail to take into account the distinction between brake dust and raw chrysotile. *See Parker v. Mobile Oil Corp*., 793 N.Y.S.2d 434, 437, 16 A.D.3d 648 (App. Div. 2005).

[8] *See id.* at 48. He has still yet to define the "well-defined criteria" which he apparently relies upon before determining special exposures. *See* Plaintiff's Opposition at 46.

3

Additionally, Plaintiffs argue that Dr. Mark considered both fiber type and dose in reaching his specific causation opinion in this case. Defendants do not suggest, as claimed by Plaintiffs, that Dr. Mark must provide an exact quantification of dose in order to meet the specific causation requirement. However, Dr. Mark's reference to studies which demonstrate potential exposure to brakes from different activities does not equal causation. Dr. Mark has to demonstrate that those types of exposures have been shown to cause mesothelioma. He has not shown qualitatively or quantitatively any reference in the literature that the exposure that Mr. Yates allegedly experienced from Bendix brakes causes mesothelioma.

Further, Plaintiffs argue that Dr. Mark acknowledges the differences in fiber type, but scientific evidence has never demonstrated a threshold below which exposure to chrysotile asbestos does not occur.[9] This "no-safe dose" argument impermissibly shifts the burden of proof from Plaintiffs to Defendants. Courts have rejected this approach:

> "Although there may be no known safe level of asbestos exposure, this does not support Dr. Hammar's leap to the conclusion that therefore every exposure Comardelle had to asbestos must have been a substantial contributing cause of his mesothelioma. The Court agrees that this "is not an acceptable approach for a causation expert to take." *Krik*, 2014 WL 7330901, at *4, and it is "precisely the kind of testimony the Supreme Court in *General Electric Co. v. Joiner* . . . observed as being nothing more than the 'ipse dixit of the expert.'" *Smith*, 2013 WL 214378, at *2 (quoting 522 U.S. 136, 146 (1997))."[10]

### III.  PLAINTIFFS HAVE NOT SATISFIED THE *DAUBERT* FACTORS

However the Plaintiffs wish to characterize their experts' flawed causation opinion, they have not addressed causation in the context of a *Daubert* challenge. Plaintiffs fail to even address three of the *Daubert* factors: whether the proffered knowledge can be or has been tested; the known or potential rate of error; and the existence and maintenance of standards controlling the technique's operation.[11] Of the

---

[9] *See* Plaintiffs' Opposition at 47.
[10] *Comardelle v. Pennsylvania General Insurance, et al.*, 2015 WL 64279, *8 (E.D. La. 2015).
[11] Plaintiffs requested that Dr. Mark execute an affidavit, which was filed with their Opposition, yet Dr. Mark chose not to address these issues. His affidavit did, however, blatantly misrepresent that the Order entered by Judge Tereshko in the 2008 Pennsylvania Court *Frye* Hearing was overturned on appeal. *See* 5/18/15 Affidavit of Dr. Mark. [Doc. No. 392-1] Judge Tereshko's opinion was not overturned. In fact, the decision was cited with approval by the Supreme Court of Pennsylvania in *Betz*. *See Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 49 (Pa. 2012).

two factors which Plaintiffs do address, neither provides support for the general causation issue *in this case*: whether exposure to brake dust can cause mesothelioma.

### A. Plaintiffs Have Failed to Show that the Theory Is Supported by Peer-Reviewed Scientific Publications.

Plaintiffs have not cited to any peer-reviewed scientific publications which support the general causation issue in this case. Plaintiffs cite to one epidemiological study, Roelofs et al., which purports to show an increased risk for mesothelioma among auto mechanics.[12] However, the study is unable to take into account confounding factors, such as asbestos exposures from sources other than friction products because the authors were only able to consider the last occupation of the participants.[13][14]

Plaintiffs do not attempt to refute or even address the recent animal inhalation studies which directly address the causation question at issue and reported that the animals exposed to normal air and brake dust experienced no damage to the lung or pleura.[15] Additionally, they focus their attack on the

---

[12] *See* Plaintiffs' Opposition at 23.
[13] *See* Roelofs, et al., "Mesothelioma and Employment in Massachusetts: Analysis of Cancer Registry Data 1988-2003," Am. J. Ind. Med. 56:985-992, 990, 2013 ("The major limitation of a cancer registry-based surveillance strategy is that recorded usual industry and occupation is a limited surrogate for a detailed exposure history. Reported usual occupation and industry may miss or mask the true source of the asbestos exposures, or may suggest universal exposure for non-uniform occupations."). The authors recognize the study's limitations:

> There are number of occupations … that were not previously reported to be at risk for mesothelioma. It is not possible in this analysis to determine if these cases resulted from exposure to asbestos experienced during employment in the reported "usual" occupation, i.e., work in a post office, or if these cases were exposed to asbestos in a prior occupation such as ship building, or in the military, or in another occupation or exposure context not reported as their "usual occupation."

*Id.* at 991.
[14] Additionally, the authors cite to Pukkala, E., et al, "Occupation and cancer – follow-up of 15 million people in five Nordic countries," Acta Oncologica, 48:646-790, 2009, as an article that shows an increased risk for mesothelioma among auto mechanics. Plaintiffs misinterpret the data. The article reports an excess of mesotheliomas in a group labeled "mechanics" generally, which included iron and metalware workers. The article does not specify which cases of mesothelioma in mechanics, if any, were in *auto* mechanics. The article does not reach the conclusion that *auto* mechanics have any increased risk of mesothelioma.
[15] *See* Honeywell's Motion at 6-7 [Doc. No. 381]; Bernstein, D., et al, "Evaluation of the deposition, translocation and pathological response of brake dust with and without added chrysotile in comparison to crocidolite asbestos following short-term inhalation: Interim results," Toxicology and Applied Pharmacology 276:28-46, 2014. [Doc. No. 381-12]; Bernstein DM, et al., "Evaluation of the fate and pathological response in the lung and pleura of brake dust alone and in combination with added chrysotile compared to crocidolite asbestos following short-term inhalation exposure," Toxicology and Applied Pharmacology 283:20-34, 2015. [Doc. No. 381-13]

5

funding sources of the more than twenty epidemiological studies which show no increased risk of mesothelioma among auto mechanics rather than the substance of the studies.[16]

### B. Plaintiffs Have Failed to Show that the Theory Is Generally Accepted in the Relevant Scientific Community.

Plaintiffs have not cited to any literature which shows the every exposure to brake dust causes mesothelioma theory is generally accepted in the relevant scientific community.

#### 1. Contrary to the Suggestion in Plaintiffs' Opposition, Honeywell's Expert Does not Agree with Dr. Mark's Experts' Opinion

Plaintiffs erroneously claim that Defendants' expert, Dr. Roggli, "is entirely in agreement on all the major scientific principles underlying Dr. Mark's causation opinions in this case."[17] They rely on statements from two affidavits filed in factually dissimilar cases in 2001 and 2005, neither of which involved brake exposures. First, any suggestion that Dr. Roggli follows the "each and every exposure opinion" underlying Dr. Mark's opinions is misguided and inaccurate. Dr. Roggli executed an affidavit in this case addressing Plaintiffs mischaracterization of his opinions, which explains that "Plaintiffs misinterpret my methodology and use of the term 'background levels.'"[18] His use of the term "background exposure" refers to fibers that accumulate in the lungs above the levels found in his control subjects without occupational or other suspected asbestos exposure. Dr. Roggli believes that if the dose of asbestos in the lungs does not exceed the levels observed in the lungs of people without occupational or other suspected asbestos exposure, then there is insufficient exposure to contribute to the development of mesothelioma. He believes there are levels of exposure to chrysotile that do not accumulate in the lungs above the background range.[19] In fact, he has published the results of his research which has shown no elevated levels of asbestos in the lungs as a result of brake repair in cases of mesothelioma.[20]

---

[16] "[T]he overwhelming majority of the research was performed by universities and government health departments which have traditions of independence from outside influence." *See* 3/12/15 Affidavit of David Garabrant, M.D. at 10. [Doc. No. 296-3].
[17] Plaintiffs' Opposition at 9.
[18] *See* 5/21/15 Affidavit of Dr. Roggli, attached as **Exhibit A**.
[19] *Id.* at 3-4.
[20] Butnor KJ, Sporn TA, Roggli VL, "Exposure to brake dust and malignant mesothelioma: a study of 10 cases with mineral fiber analyses," Ann. Occup. Hyg., 47:325-330 (2003), attached as **Exhibit B**.

6

Second, despite Plaintiffs attempts to suggest otherwise, Dr. Roggli's consistent opinion has been that exposure to chrysotile from friction products is unlikely to be a significant or substantial contributing factor to the development of mesothelioma, based upon his review of the epidemiology literature, the biological properties of brake dust, and his own fiber burden analyses.[21] Nothing in the affidavits was intended to or should be read as conflicting with his well-known published opinions on the relationship (or lack thereof) of pleural mesothelioma from exposure to brake dust.

### 2. The Helsinki Criteria Are Not Proper Support for Dr. Mark's Opinion

Moreover, Plaintiffs cite to the Helsinki Criteria, co-authored by Dr. Roggli, as additional evidence of a "consensus" that exposure to asbestos products, including friction products, at brief or low-levels should be considered sufficient to attribute an occupational exposure to mesothelioma.[22] However, "[t]he Helsinki Criteria were not formulated with compliance with the *Daubert* test in mind nor does it [sic] supplant it."[23] Dr. Roggli makes clear that the Helsinki Criteria do not distinguish between the different types of asbestos when discussing exposure, nor do they stand for the proposition that all exposures to any type of asbestos above ambient air levels are substantial contributing factors in the causation of pleural mesothelioma.[24] A brief or low-level exposure should be considered sufficient to attribute it to mesothelioma if the exposure is *significant*. A significant asbestos exposure for pleural mesothelioma is an exposure for which there is a statistically significant increased risk demonstrated in the epidemiologic literature, or an exposure that results in an increased level of asbestos in the lung tissue

---

[21] *Id.* at 3; *see also* Roggli, V.L. and A. Sharma, "Analysis of Tissue Mineral Fiber Content," Chapter 11 in *Pathology of Asbestos-Associated Diseases*, Roggli V.L., et al., eds. (2d ed. 2004), at pp. 339-40, excerpt attached as **Exhibit C**; Roggli, V.L. and A. Sharma, "Analysis of Tissue Mineral Fiber Content," Chapter 11 in *Pathology of Asbestos-Associated Diseases* (Oury T.D., Sporn T.A., Roggli V.L., eds.) (3d ed. 2014) at pp. 277-78 excerpt attached as **Exhibit D.**

[22] The Supreme Court of Pennsylvania in *Betz* summarized the criticisms of the document: "participation in the conference was selective; the purpose was to fashion a recommended compensation scheme unto itself, not to provide a measure of legal causation appropriate to longstanding requirements of Pennsylvania tort law; and, in any event, the conference reports do not state anywhere that every exposure to asbestos, regardless of dose, is causative." *Betz*, 44 A.3d at 47.

[23] *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 552 (Ga. Ct. App. 2011).

[24] *Id.* at 5.

above background range.²⁵ Further, it was not the intent or purpose of the Helsinki Criteria to examine or determine the potential toxicity of brake linings or any other specific product.²⁶

### 3. Plaintiffs' Reliance on Pronouncements from Regulatory Bodies for Causation Is Inappropriate and Does not Satisfy Plaintiffs' Burden.

Moreover, Plaintiffs' Opposition contains references to various pronouncements from regulatory and policy bodies purportedly cited as evidence that there is no known safe level of asbestos exposure and as evidence of a causal relationship between chrysotile and mesothelioma.²⁷ Reliance on governmental public policy risk assessment models is inappropriate for tort causation.

As the United States Supreme Court has explained, administrative agencies "may make regulatory decisions…based on postmarketing evidence that gives rise to ***only a suspicion of causation***."²⁸ It cannot be the foundation for causation opinions.²⁹ Regulatory agencies are responsible for protecting the general public from the potential future adverse effects of toxic substances.³⁰ Conclusions drawn in the context of regulatory fact-finding and risk assessment compared to decisions on causation evaluation required in a tort case differ both with respect to the degree of particularity and the degree of confidence with which the assessment must be made. An agency does not have to support its causal finding with a high degree of confidence or "anything approaching scientific certainty."³¹

Ultimately, a regulatory agency must act "in part on factual issues but largely on choices of policy, on an assessment of risks [and] on predictions dealing with matters on the frontiers of scientific knowledge..."³² By contrast, in a tort case the court or jury must find that it is more probable than not that

---

²⁵ *Id.*
²⁶ *Id.* at 6.
²⁷ *See* Plaintiffs' Opposition at 12-14, 18-22.
²⁸ *Matrixx Initiatives, Inc. v. Siracuso*, 131 S. Ct. 1309, 1320 (2011) (emphasis added).
²⁹ *Dellinger v. Pfizer, Inc.*, 2006 WL 2057654, *9 (W.D.N.C. July 19, 2006) (Regulatory reports "fail to test a causal hypothesis and therefore cannot support a causation opinion").
³⁰ *See generally Ethyl Corp. v. EPA*, 541 F.2d 1 (D.C. Cir. 1976).
³¹ Federal Register, Vol. 51, No. 119, Friday, June 20, 1986, Rules and Regulations ("OSHA is not required to support the finding that a significant risk exists with anything approaching scientific certainty."); Camus, et al., "Nonoccupational Exposure to Chrysotile Asbestos and the Risk of Lung Cancer," The New England Journal of Medicine, 338 (22):1565, 1568, 1998 ("Regulatory policies regarding asbestos … are controversial because they rely on unverified assumptions and imprecise data.").
³² *Ethyl Corp.*, 541 F.2d at 23 (quoting *Amoco Oil Co. v. EPA*, 501 F.2d 722 (D.C. Cir. 1974)); Federal Register, Vol. 51, No. 119, Friday, June 20, 1986, Rules and Regulations ("[OSHA] is free to use conservative assumptions in

the allegedly toxic substance in question can cause the type of disease involved and in fact caused the particular individual's cancer.

The each and every (or cumulative) exposure theory is an outgrowth of this public policy risk assessment model. It is scientifically and legally improper to take a highly protective precautionary governmental policy on risk assessment, which treats all fiber types the same, and turn it into a causation opinion that purports to be sufficient to form a basis for liability in a toxic tort case. In fact, the EPA has stated:

> While scientists have been unable to agree on a level of asbestos exposure at which we, as public policy makers, can confidently say, 'there is no risk,' this does not mean that all or any exposure is inherently dangerous. To the contrary, almost every day we are exposed to some level of asbestos fibers in buildings or in the outdoor air.[33]

Courts have also properly distinguished the reasonably lower threshold of proof for regulatory assessment models from the tort threshold necessary for proof of causation from a scientific standpoint. "The regulatory standards are not probative of scientific analysis or acceptance in the scientific community."[34] The every exposure theory, based on these highly conservative governmental risk assessment models, is nothing more than a theoretical assumption.

### IV. SUBSTANTIAL FACTOR CAUSATION STANDARD IS INCOMPATIBLE WITH THE EACH AND EVERY EXPOSURE OPINION

---

interpreting the data with respect to carcinogens, risking error on the side of overprotection rather than under protection."); 40966 Federal Register, Vol. 59, No. 153, Aug. 10, 1994, Rules and Regulations ("[T]he Agency may base its finding largely on policy considerations and has considerable leeway with the kinds of assumptions it applies in interpreting the data supporting it").

[33] U.S. E.P.A., An Advisory to the Public on Asbestos in Buildings, 1991, attached as **Exhibit E**.

[34] *See Sutera v. Perrier Grp. of America, Inc.*, 986 F.Supp. 655, 664-65 (D. Mass. 1997) ("[The] regulator's purpose is to suggest or make prophylactic rules governing human exposure . . . in so doing, the agencies' threshold of proof is reasonably lower than that in tort law, which requires a plaintiff to prove that it is more likely than not that another individual has caused him or her harm."); *see also Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996)("Regulatory and advisory bodies such as IARC, OSHA, and EPA utilize a weight of the evidence method to assess the carcinogenicity of various substances in human beings ... The agencies' threshold of proof is reasonably lower than that in tort law which traditionally makes more particularized inquiries into cause and effect..."); *Parker*, 793 N.Y.S.2d at 438 ("regulatory standards . . . are not measures of causation but rather are public health exposure levels determined by agencies pursuant to statutory standards set by the United States Congress."); *Cornell v. 360 W. 51st St. Realty, LLC*, 22 N.Y.3d 762, 782 (N.Y. 2014) ("[G]overnment reports and public health initiatives [which] treat mold in damp indoor environments as a public health concern … [are] irrelevant since 'standards promulgated by regulatory agencies as protective measures are inadequate to demonstrate legal causation'").

Plaintiffs argue that Dr. Mark's causation opinion is "a reliable part of the Plaintiffs' evidence of substantial factor causation," which under North Carolina law requires Plaintiffs to demonstrate that Mr. Yates' alleged exposure to Bendix and Ford brakes was a "but for" cause of his mesothelioma.[35] North Carolina law requires Plaintiffs to prove that each Defendant's negligence "produced the result in continuous sequence, and without which it would not have occurred."[36]

However, by its very terms, the "each and every exposure" theory is incompatible with the "*substantial* factor" test. Numerous courts have found that the substantial factor test is rendered meaningless if expert opinions that "there is no safe level of exposure to asbestos, and that every exposure to asbestos, however slight, was a substantial factor" in causing mesothelioma were sufficient for a plaintiff to meet his burden."[37] Such a result is particularly appropriate here because Dr. Mark has testified that he cannot state that Mr. Yates' alleged exposures to brake dust increased his chances of developing mesothelioma by more than *1/1000%* chance.[38]

## CONCLUSION

Nothing in Plaintiffs' Opposition dispels the argument that the every exposure or cumulative exposure theory of causation is unreliable and fails the *Daubert* standard. The theory improperly reverses the burden of proof because Plaintiffs' experts assume that mesothelioma is asbestos-related unless proven otherwise. The Court should not permit such opinion testimony to reach the jury in this case.

Honeywell restates the prayer in its Motion.

This the 26th day of May, 2015.

/s/ H. Lee Davis, Jr.
H. Lee Davis, Jr.
NC State Bar No: 7683

---

[35] *See* Plaintiffs' Opposition at 9; *McNair v. Boyette*, 282 N.C. 230, 236, 192 S.E.2d 457, 461 (1972).
[36] *Id.*; *see also Prekler v. Owens-Corning Fiberglass Corp.*, 60 F.3d 824 (4th Cir. 1995).
[37] *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 493 (6th Cir. 2005); s*ee also Betz*, 44 A.3d at 56 (holding that the "every exposure theory" is in "irreconcilable conflict with itself" and fundamentally inconsistent with the substantial factor test because if "each and every exposure" is a "substantial contributing cause," then no exposure can be insubstantial); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009); *Krik*, 2014 WL 7330901 at *3-6; *Comardelle*, 2015 WL 64279, *8; *Davidson v. Ga. Pacific, LLC*, No. 12-1463, 2014 WL 3510268, *6 (W.D. La. July 14, 2014).
[38] *See* Mark Dep. at 99:9-25. [Doc. No. 296-1]

DAVIS & HAMRICK, LLP
635 West Fourth Street
PO Box 20039
Winston-Salem, NC  27120-0039
Telephone: 336 725-8385, ext 107
Facsimile: 336 723-8838
E-mail: ldavis@davisandhamrick.com

*Attorney for Defendant Honeywell International Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, I electronically filed, on behalf of the Defendant, Honeywell International Inc., the foregoing **REPLY MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO PRECLUDE EVIDENCE SUGGESTING THAT BRAKE DUST CAUSES PLEURAL MESOTHELIOMA OR THAT "EVERY EXPOSURE COUNTS** with the Clerk of the United States District Court for the Eastern District of North Carolina using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/ H. Lee Davis, Jr.
H. Lee Davis, Jr.
NC State Bar No: 7683
DAVIS & HAMRICK, LLP
635 West Fourth Street
PO Box 20039
Winston-Salem, NC  27120-0039
Telephone: 336 725-8385, ext 107
Facsimile: 336 723-8838
E-mail: ldavis@davisandhamrick.com

*Attorneys for DefendantHoneywell International Inc.*