IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-752-FL

| | |
|---|---|
| GRAHAM YATES and BECKY YATES, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FORD MOTOR COMPANY and )<br>HONEYWELL INTERNATIONAL, )<br>INC., )<br>)<br>Defendants. ) | ORDER |

This matter comes now before the court on defendant Ford Motor Company's ("Ford") motion in limine to exclude expert testimony regarding corporate conduct (DE 291), which has been joined by defendant Honeywell International, Inc. ("Honeywell") (DE 360). The motion has been fully briefed, and is ripe for ruling as set forth below.[1]

**BACKGROUND**

Plaintiffs allege that Graham Yates was exposed to brake dust from brakes manufactured or supplied by defendant Honeywell's predecessor, The Bendix Corporation ("Bendix"). They allege that Graham Yates was exposed to asbestos from Bendix brakes as a gas station attendant from 1956

---

[1] Plaintiffs' motion to introduce a witness at hearing next week through video-conferencing technology, (DE 400), was allowed at telephonic hearing and conference May 28, 2015. The court also confirmed no evidence will be offered of the type which would implicate two of plaintiffs' motions in limine, (DE 303, 307), and, accordingly, denied these motions as moot. Separate order issued May 26, 2015, on plaintiffs' motion to strike motions, denying same. (DE 387). The court issued ruling May 11, 2015, on eight interrelated motions in limine variously filed by defendants. (DE 255, 256, 261, 281, 283, 285, 289, 294). Certain other motions were addressed at telephonic hearing April 8, 2015. (DE 277, 311, 330). As of this date, there remain pending the parties' additional motions in limine, (DE 254, 257, 258, 259, 260, 273, 276, 279, 287, 297, 299, 301, 305, 309, 380, 382), together with plaintiffs' motion to amend complaint. (DE 377).

to 1957, from brake jobs performed on personal vehicles in the 1950s and 1960, and from working as a clerk in an automobile parts warehouse from 1961 to 1962. Plaintiffs also allege that Graham Yates was exposed to defendant Ford's products while working as a gas station attendant in 1956 and 1957, and while working as a parts salesman and delivery driver for an independent Ford dealership in 1960. These exposures allegedly caused Graham Yates's mesothelioma, diagnosed August 13, 2012.

## COURT'S DISCUSSION

Defendant Ford moves for order prohibiting plaintiffs' experts from opining on whether Ford's corporate conduct in utilizing asbestos-containing friction components was reasonable, whether Ford knew the dangers of asbestos, and/or whether defendant Ford's warnings were reasonable. Defendant Ford asserts that plaintiffs' experts should be precluded on opining on such issues

> regardless of how Plaintiffs' questions or their experts opinions may be worded. For instance, other examples of impermissible 'expert' opinions regarding Ford's corporate conduct might include: i) opinions as to whether Ford's corporate actions were or were not in accordance with principles of public health or appropriate for the protection of employees and end-users of products; ii) whether or not Ford should have undertaken different or additional actions to investigate or analyze the dangers of asbestos; and iii) whether or not Ford should have included different or additional warnings regarding asbestos-containing components.

(Ford's Memo. In Supp., 4) (DE 292).

The evidence is challenged under Federal Rules of Evidence 702 and 403. The court considers each rule in turn.

1. Rule 702

Defendant Ford first asserts that plaintiffs' experts are not qualified to offer opinions regarding corporate conduct because they do not have scientific, technical, or specialized knowledge

2

regarding the management of an automobile company or the manufacture or design of automobile parts.

The proponent of expert testimony must establish its admissibility by a preponderance of the proof. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993). This relaxation of the permissible boundaries of testimony "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." Id. Accordingly, in order to offer such opinions, a witness must be "qualified as an expert." Fed. R. Evid. 702. Rule 702 provides five ways in which a witness may qualify as an expert: knowledge, skill, experience, training, or education. Kumho Tire v. Carmichael, 526 U.S. 137, 147 (1999). When an expert's qualifications are challenged, " 'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.' " Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993) (quoting Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir.1989)). Experts may offer opinions when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Testimony from an expert is presumed to be helpful." Kopf, 993 F.2d at 377. "The subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend. If . . . . the proposed testimony will recount or employ 'scientific, technical, or other specialized knowledge,' it is a proper subject." Id.

As an initial matter, plaintiffs' response only addresses the qualifications of two of their three experts, Eugene Mark, M.D., ("Mark") and Steve Hays ("Hays"). Hays is a professional engineer

3

and certified industrial hygienist. Thus, plaintiffs have not carried their burden to show that their third witness, Arnold Brody, Ph.D., ("Brody"), may make statements on corporate conduct. In this respect, defendant Ford's motion is granted.

Plaintiffs forecast that Mark and Hays will be asked to opine on issues concerning the following:

- The state of medical and scientific knowledge about the hazards of asbestos products at various times, including the manipulation of brake linings;
- The state of medical and scientific knowledge about how to prevent asbestos disease at those times; in comparison with
- The information about those hazards contained in defendants' historical documents and in testimony by defendants' corporate witnesses, for the purpose of
- Testifying as to the timeliness and adequacy of defendants' actions in preventing plaintiff Graham Yates's mesothelioma.

(Pls'. Resp., 2-3) (DE 322).

Plaintiffs further indicate that Mark will be asked to opine on whether defendant met "the known standard of care in medicine," while Hays will be asked to opine on whether defendants met "the known standard of care in . . . industrial hygiene." (Pls'. Resp., 3).

The court will address each of the subjects on which plaintiffs seek to offer expert opinion testimony, outlining legal principles that apply.

> a. Testimony as to State of Medical and Scientific Knowledge About Asbestos Hazards and Prevention of Disease Caused by Asbestos

Under North Carolina law, the "essential elements" of an action for negligence, including a products liability action, include "(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances; (2) breach of that standard of care; (3) injury caused directly or proximately by the breach, and; (4) loss because of the injury." City of Thomasville v.

Lease-Afex, Inc., 300 N.C. 651, 656 (1980). Failure to warn is a type of negligence action under products liability law. See Corprew v. Chem. Corp., 271 N.C. 485, 491 (1967) ("[N]egligence [of a manufacturer] may be found over an area quite as broad as his whole activity in preparing and selling the product . . . . He may fail to use proper care to give adequate warning to the user [of the product]."); see also Edwards v. ATRO SpA, 891 F.Supp. 1074, 1077–80 (E.D.N.C.1995) (examining negligence claims based on failure to warn, as well as based on manufacturing defect, selection of materials, and design). Hence, plaintiffs' failure to warn claim requires them to show that defendants' "failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought." N.C. Gen. Stat. § 99B-5(a). In the context of this case, both claims require plaintiffs to demonstrate that the asbestos in defendants' products caused plaintiff Graham Yates's mesothelioma.

The remaining claims in this case also require plaintiffs to show that defendants "should have known" the dangers of their products. See N.C. Gen. Stat. § 99B-5(a) (requiring plaintiff asserting a claim based on inadequate warning to show that manufacturer or seller "in the exercise of ordinary care should have known" that product posed a risk); Estate of Purkey ex rel. Purkey v. United States, 299 F.Supp.2d 539, 543 (W.D.N.C.2004) (explaining that a claim for negligence "has as its basis that a person charged with negligent conduct should have known the probable consequences of his act."); Wagoner v. N.C. R. Co., 238 N.C. 162, 168 (1953) (same). In showing whether defendants "should have known" such risks, the universe of available knowledge on a subject, also known as the "state of the art," is relevant. See Horne v. Owens-Corning Fiberglas Co., 4 F.3d 276, 281 (4th Cir. 1993).

In this case, a time frame applies to the "knowledge" element of plaintiffs' claims. With respect to claims for negligence in design or manufacture of defendants' products, the applicable inquiry is whether the manufacturer acted unreasonably "at the time of [the product's] manufacture." N.C. Gen. Stat. § 99B-6(a). Furthermore, as provided in the court's earlier order on various motions in limine pertaining to post-exposure evidence, plaintiffs may not assert that defendants had a "continuing duty to warn" that extended beyond the dates of plaintiff Graham Yates's last exposures to defendants' products. Yates v. Ford Motor Co., No. 5:12-CV-752, 2015 WL 2189774, at *4-5 (E.D.N.C. May 11, 2015). Accordingly, testimony regarding historical knowledge about the dangers of asbestos within the medical, scientific and industrial communities is relevant to this case.

Plaintiffs indicate that Mark and Hays will provide testimony upon causation and knowledge during the relevant time period. The court finds these experts qualified to provide such testimony. Illuminating further Mark's qualifications, he is a physician and pathologist with expertise in asbestos-related disease. He is a professor at Harvard Medical School, and has served on editorial boards for various professional medical journals. Hays has held certification as an industrial hygienist since 1990, is a seminar faculty member at Georgia Tech Research Institute and The Environmental Institute, and has served on Environmental Protection Agency committees which include the committee responsible for developing regulatory language required by the Asbestos Hazard Emergency Response Act. According to the OSHA handbook on industrial hygiene, industrial hygiene is "the science of anticipating, recognizing, evaluating, and controlling workplace conditions that may cause workers' injury or illness." Occupational Safety & Health Admin., Informational Booklet on Industrial Hygiene (1998), available at http://www.osha.gov/

6

Publications/OSHA3143/OSHA3143.htm) ("OSHA 3143"). The reports provided by both experts indicate each is well-versed with the historical medical, regulatory and scientific literature regarding asbestos, as well as with more recent publications on the subject. (Mark Expert Report & Decl., 24-28) (DE 322-7); Hays Asbestos Exposure Report, 4-15 (DE 183-16)).

Both experts are qualified on the grounds of experience and knowledge to opine as to the state of medical and scientific knowledge about the hazards of asbestos products at various times, and the state of medical and scientific knowledge about how to prevent asbestos disease at those times. Furthermore, on the same grounds, both experts are qualified to opine as to matters of causation. Their testimony concerns matters of specialized knowledge outside the everyday knowledge and experience of an ordinary juror, and their testimony on these matters will assist the jury in understanding when defendants should have known of the dangers from their products.

    b. Comparison of Historical Knowledge Regarding Asbestos with Information About the Hazards of Asbestos in Defendants' Historical Documents

In general, courts have permitted experts to testify about their review of internal corporate documents, so far as the expert's opinions are based on those documents. See In re C.R. Bard, Inc., 948 F. Supp. 2d 589, 611 (S.D.W. Va. 2013) (allowing expert to testify "as to a review of internal corporate documents solely for the purpose of explaining the basis for his or her opinions"); see also Kruszka v. Novartis Pharms. Corp., 28 F. Supp. 3d 920, 937 (D. Minn. 2014); Georges v. Novartis Pharms. Corp., No. CV 06-05207-SJO-VBKX, 2013 WL 5217198, at *15 (C.D. Cal. April 4, 2013); Deutsch v. Novartis Pharms. Corp., 768 F. Supp. 2d 420, 443 (E.D.N.Y. 2011). In Deutsch, Novartis argued that the expert's opinions should be excluded because the Novartis documents provided were non-scientific, and the opinions were inferences that a layperson could make from

7

the same documents. Deutsch, 768 F. Supp. 2d at 441-42. In a well-reasoned opinion, the court rejected the argument, finding that the expert's testimony could

> be helpful in defining complex or specialized terminology, or drawing inferences that may not be apparent without the benefit of experience or specialized knowledge . . . . While it is true that some Novartis internal documents are capable of interpretation by a layperson, [the expert's] testimony has been informed by the evidence as a whole, and therefore he should be permitted to testify as to what evidence he relied upon, even if some of those documents do not require expert knowledge.

Id. at 443.

Deutsch allowed the expert to "opine on the medicine and science that was available at the time regarding the risks and benefits of [the products], and . . . compare that information to what was disclosed on the label or in other materials Novartis presented to the medical community." Id. Because "information on the known risks" could be "derived from internal Novartis documents," the court found the expert's knowledge was "helpful to the trier of fact in understanding those documents." Id.

At the same time, Deutsch limited experts from opining on "intent, motive, or state of mind, or evidence by which such state of mind may be inferred." Id. at 442. The "evidence by which such state of mind may be inferred" included opinions regarding how certain employees reacted to particular studies, such as the opinion that Novartis had taken actions to misdirect the focus of medical attention. Id. at 443. This testimony was found inadmissible because "the opinions of expert witnesses on the intent, motives, or states of mind of corporations . . . ha[s] no basis in any relevant body of knowledge or expertise." Id. at 442 (quoting In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (brackets omitted)); see also In re C.R. Bard, 948 F. Supp. 2d at 611.

8

Deutsch is persuasive authority in setting the proper boundaries of the admissibility of plaintiffs' expert opinions regarding internal corporate documents. Plaintiffs' experts will be permitted to opine on whether defendants' internal documents or the testimony provided by defendants' employees includes information regarding the hazards of asbestos or proper methods to prevent asbestos disease. However, plaintiffs' experts will not be permitted to affirmatively opine as to whether defendants knew the dangers of asbestos or proper methods of disease prevention, based on these internal documents or any other evidence. Such determination is reserved for the jury.

     c.  Testimony as to the Timeliness and Adequacy of Defendants' Actions

Plaintiffs also forecast that their experts will testify as to whether defendants' actions were "timely" or "adequate." This testimony implicates the qualifications of plaintiffs' experts, as well as the proper boundaries of expert testimony.

      i.  Qualifications

As noted, defendant Ford argues that plaintiffs' experts must have specialized knowledge or experience as to automobile manufacturing or design in order to offer opinion on such matters. This is too narrow of a standard for testimony. "[L]ack of direct experience is not a sufficient basis to reject [a proposed expert's] testimony but may affect the weight that testimony is given." Martin v. Fleissner GMBH, 741 F.2d 61, 64 (4th Cir. 1984). Experts may testify concerning applications of their specialized knowledge. See Kopf, 993 F.2d at 377 (allowing testimony that will "employ" specialized knowledge); see also Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991) ("In a products liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications."); Hollman v. Taser Int'l, 928 F. Supp. 2d 657, 668-69

9

(E.D.N.Y. 2013) (rejecting argument that professor of electrical engineering was required to be an expert in law enforcement or warnings in order to offer opinion as to warnings defendant should have given to law enforcement personnel about use of electronic control devices).

As an industrial hygienist, Hays specializes in "anticipating, recognizing, evaluating, and controlling workplace conditions that may cause workers' injury or illness." OSHA 3143. "Industrial hygienists . . . are trained to anticipate, recognize, evaluate, and recommend controls for environmental and physical hazards that can affect the health and well-being of workers." Id. It is readily apparent how this field would require making judgments and rendering opinions as to whether and when certain industrial actions might be appropriate. In offering his opinion on these subjects, plaintiffs' expert Hays would be employing his specialized knowledge and experience.

On the other hand, plaintiffs have failed to offer sufficient evidence to qualify Mark to testify as to whether certain actions were "timely" or "adequate." Plaintiffs point to Mark's qualifications in his medical degree, certification in pathology, academic positions and publications, but they do not explain how these qualifications are linked with knowledge or experience in making recommendations to industry as to what actions or technology are effective or appropriate in the prevention of disease. Accordingly, Mark will be precluded from testifying as to such opinions. See In re C.R. Bard, 948 F. Supp. 2d at 611 (excluding expert opinion of urogynecologist due to plaintiffs' failure to show any expertise in the area of warnings or labels for medical devices).

    ii.  Expert Opinion on Legal Issues

Plaintiffs' proffer of expert opinion on the timeliness and adequacy of actions also raises the issue of the proper boundaries of expert opinions with respect to legal issues in a case. Under Rule 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid.

10

704. "However, opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." United States v. McIver, 470 F.3d 550, 561-62 (4th Cir. 2006). This is because such testimony is less likely to be helpful to the jury. United States v. Offil, 666 F. 3d 168, 175 (4th Cir. 2011); United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002). The Fourth Circuit has provided guidance on whether opinion testimony improperly states legal conclusions: "[t]he best way to determine whether opinion testimony contains legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." Barile, 286 F.3d at 760 (quotation marks omitted). The court "should consider first whether the question tracks the language of the legal principle at issue or of the applicable statute, and second, whether any terms employed have specialized legal meaning." Id.

"To state the general rule, however, is not to decide the far more complicated and measured question of when there is a transgression of the rule." United States v. Perkins, 470 F.3d 150, 158 (4th Cir. 2006) (quotation marks omitted). "The rule makes ultra-fine distinctions, with admissibility often turning on word choice." Id. As examples, questions such as "Did T have capacity to make a will?" should be excluded, while opinions on whether T had "sufficient mental capacity to know the nature and extent of his property" may be admissible. Barile, 286 F.3d at 760. Another example of testimony held inadmissible is whether a product was "unreasonably dangerous." McIver, 470 F.3d at 562 (quoting Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 685-86 (8th Cir. 1981)).

In Perkins, the court observed that an expert's use of some terms, such as "discrimination," "negligence," or "fraud," carries "considerable legal baggage" that "nearly always invades the

11

province of the jury." Perkins, 470 F.3d at 158.  However, for other terms, such as "recklessly" and "extreme disregard for human life," the legal meaning "is not so distinctive from the colloquial meaning," and therefore a much closer question is presented.  Id. at 158-59.  Perkins addressed whether it was impermissible for a police officer to testify on the reasonableness of the defendant police officer's use of force in kicking a motorist.  Id. at 157.  Specifically, the testimony in that case concerned "whether there was any legitimate reason for Perkins to kick," or "any law enforcement reason for Perkins's kicks."  Id. at 158-59 (quotation marks and brackets omitted).  The court noted that the word "reasonable" had "specific legal meaning" because, under the relevant statute, the jury was required to determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force."  Id. at 159.

At the same time, the court distinguished the term "reasonable" from technical terms like "negligence" or "fraud" because those terms "had their common vernacular stem from their legalistic roots."  Id.  The Fourth Circuit determined that it was "difficult . . . to conclude that testimony was unhelpful to the jury unless the testimony actually framed the term in its traditional legal context."  Id. at 160.  In the circumstances of that case, the court held that it was justified to "differentiat[e] between the officers' testimony that they saw no 'law enforcement' or 'legitimate' reason for Perkins's kicks and testimony that Perkins's actions were 'objectively unreasonable,'" and thus that it was not error to admit the testimony.  Id. at 160.  However, the court repeatedly noted the challenges in its analysis, observing that the question was "very close," and that the distinction was "a fine one," which "must be measured in inches, not feet."  Id. at 159-60.

Proposed testimony by plaintiffs' experts as to whether defendants' actions were "timely" does not track the language of any relevant statute or legal principle, and does not present a legal

12

conclusion. However, testimony concerning whether defendants' actions were "adequate" is a different matter.

Based on the record, the court anticipates that the particular actions which plaintiffs' experts will describe as "adequate" or "inadequate" are actions regarding any warnings or instructions that defendants provided regarding their products. Like "reasonableness," the term "adequate" has a common vernacular meaning separate from its legal meaning. However, when used to apply to warnings, testimony concerning adequacy tracks the language of section 99B-5 of the North Carolina General Statutes, which pertains to "[c]laims based on inadequate warning or instruction." See N.C. Gen. Stat. § 99B-5. Thus, the issue of whether defendants provided an adequate warning or instruction is a key element of a failure to warn claim. See N.C. Gen. Stat. § 99B-5(a) (requiring "any product liability action for a claim based upon inadequate warning or instruction" to show "that the manufacturer or seller acted unreasonably in failing to provide such warning or instruction."), see also N.C. Pattern Instruction-Civil 741.70 (requiring plaintiff asserting claim of inadequate warning or instruction to prove, among other elements, that "the defendant failed to provide an adequate warning or instruction.").

Furthermore, testimony describing a warning as adequate or inadequate has a specialized legal meaning. This is because, in contrast to Perkins, testimony which specifically addresses whether any warnings or instructions were or were not "adequate" sufficiently "frame[s] the term in its traditional legal context." See In re C.R. Bard, 948 F. Supp. 2d at 629 ("The questions of whether Bard's Avaulta products were not reasonably safe, for example, or whether Bard failed to warn, are questions for the jury, not for [plaintiff's expert]."); see also Strong, 667 F.2d at 686 (affirming district court's exclusion of expert testimony in response to question "Is this an adequate

13

warning?," because the question was similar to "Did he have capacity to make a will?"). Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 614 and n. 31 (D.N.J. 2002) (excluding expert's opinion as to whether "Defendants failed to provide adequate warnings" because it "encroach[ed] upon the province of the jury.").

Accordingly, because expert opinion specific as to whether a warning was "adequate" or "inadequate" would draw a legal conclusion, it is unhelpful to the jury and plaintiffs' experts will not be allowed to offer such specific opinions.

Defendant Ford's motion also addresses anticipated expert testimony "as to whether Ford's corporate conduct in utilizing asbestos-containing friction components . . . was reasonable," (Memo. In Supp., 1). As detailed above, Perkins noted the nuances in the use of the term "reasonable." Perkins, 470 F.3d at 157-60. On the other hand, in McIver the court specifically noted testimony on the issue of whether a product is "unreasonably dangerous" as an example of inadmissible evidence. McIver, 470 F.3d at 562.

The term "reasonableness," when used in the context of describing defendants' use of asbestos, has legal significance in this case. Under North Carolina law, a product manufacturer may be liable for inadequate design or formulation of a product when, among other things, "the claimant proves that at the time of its manufacture the manufacturer acted *unreasonably* in designing or formulating the product." N.C. Gen. Stat. § 99B-6 (emphasis added); see also Durkee v. C.H. Robinson Worldwide, Inc., 765 F. Supp. 2d 742, 758 (W.D.N.C. 2011) (noting duty "to use *reasonable* care throughout the manufacturing process, including making sure that the product is free of any potentially dangerous defect in manufacturing or design.") (emphasis added); Wilson v. Lowe's Asheboro Hardware, Inc., 259 N.C. 660, 664 (1963) (emphasis added) (producer of

14

products "must operate with that degree of care which a *reasonably* prudent person would use in similar circumstances . . . [Including] in designing the article, [and] in selecting proper materials with which to make the article.") (emphasis added) (citations omitted).

Furthermore, while the term "reasonable" may have a common meaning distinct from its legal meaning, presenting testimony as to whether a particular design or selection of materials was "reasonable" would "frame[ ] the term in its traditional legal context" in a manner distinguishable from the use of the term in Perkins, 470 F.3d at 160, and more closely analogous to the testimony as to whether a product is "unreasonably dangerous," which McIver noted to be inadmissible. See McIver, 470 F.3d at 562.

Accordingly, the court will exclude expert testimony as to whether defendants acted "reasonably" in using asbestos materials, along with expert testimony as to whether a warning or instruction was "adequate."

        e.        Testimony as to the "Known Standard of Care"

As noted, plaintiffs indicate that they will offer opinion testimony as to whether defendant Ford's actions complied with the "known standard of care" in medicine and industrial hygiene. Plaintiffs' experts are qualified to opine as to the standards of care in their respective fields. However, as explained below, such testimony is properly excluded under Rule 403.

        f.        Other Specific Examples of Opinions Challenged by Ford

Defendant Ford offers a number of other examples of opinions it asserts would be "impermissible," including 1) "opinions as to whether Ford's corporate actions were or were not in accordance with principles of public health or appropriate for the protection of employees and end-users of products," 2) "whether or not Ford should have undertaken different or additional actions

15

to investigate or analyze the dangers of asbestos," and 3) "whether or not Ford should have included different or additional warnings regarding asbestos-containing components." (Memo. In Supp., 4).

Plaintiffs' experts may opine as to whether defendants' conduct was consistent with public health principles. For the reasons explained above, Mark and Hays are qualified to opine as to what was known about the risks of asbestos, when it was known, and when certain methods of protection were known. Based on their respective knowledge and expertise as a pathologist and industrial hygienist with specialization in matters dealing with asbestos, these experts may offer opinion as to principles or standards within their field that relate to asbestos exposure.[2] Expert testimony regarding particular health and industry standards pertaining to the risks and appropriate uses of asbestos would utilize the experts' specialized knowledge and experience in a manner which could be helpful to the jury.

The experts may also evaluate whether defendants' conduct conformed to these standards or principles (with the exception of the "standard of care," which is addressed below). Experts are permitted to base their opinions "on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. If the testimony is sufficiently linked to specific practices or standards within their given fields, this expert testimony falls within these experts' relevant knowledge and experience. Thus, the comparison of defendants' conduct to specific principles and standards in the fields of public health and industrial hygiene "will . . . employ

---

[2] Notably, pursuant to the temporal considerations noted above regarding analysis of when defendants "should have known" certain risks, the relevant standards or principles that could be used to evaluate defendants' conduct are those standards or principles that existed at the time of plaintiff Graham Yates's exposures (for purposes of his "failure to warn" claim) or at the time the products left defendants' control (for purposes of other products liability claims based in negligence). See N.C. Gen. Stat. § 99B-6 (requiring determination of manufacturer's reasonable conduct to consider "[t]he extent to which the design or formulation conformed to any applicable government standard *that was in effect when the product left the control of its manufacturer*."); see also Sexton v. Bell Helmets, Inc., 926 F. 2d 331, 337 (4th Cir. 1991) ("A product can only be defective if it is imperfect when measured against a standard existing at the time of sale . . . .").

16

'scientific, technical, or other specialized knowledge'" and is therefore "a proper subject" for expert testimony. Kopf, 993 F.2d at 377. In addition, testimony as to principles and health standards does not necessarily "track[ ] the language of the legal principle at issue or of the applicable statute" in a manner which would warrant a general order excluding all such testimony. See Barile, 286 F.3d at 760.

Finally, for the reasons explained above regarding testimony on the "timeliness" or "adequacy" of defendants' actions, the court will exclude Mark from opining on whether defendants "should have" issued warnings or undertaken investigations. Yet, again for the reasons explained above, Hays is qualified to offer such opinions. Furthermore, the court does not find that such testimony, in the abstract, necessarily tracks the language of any law or legal principle in such a way as to render a legal conclusion. Opinions of what defendants "should have" done, given from the Hays' perspective as an industrial hygienist, do not purport to "apply[ ] law to the facts." See McIver, 470 F.3d at 561-62.

      2.      Rule 403

Defendant Ford also asserts that testimony regarding corporate conduct should be excluded under Federal Rule of Evidence 403 as unduly prejudicial and misleading to the jury. Rule 403 allows exclusion of evidence when "its probative value is substantially outweighed by a danger of [negative factors including]. . . unfair prejudice [or] misleading the jury." Fed. R. Evid. 403. Rule 403 is a "rule of inclusion, 'generally favor[ing] admissibility." United States v. Wells, 163 F.3d 889, 896 (4th Cir. 1998). " 'Unfair prejudice' does not include within its purview the damage done to a defendant's case which arises from the legitimate probative force of the evidence." United States v. Heater, 63 F.3d 311, 321 (4th Cir. 1995) (quotation marks omitted).

17

The negative factors in Rule 403 compel the court to preclude plaintiffs' experts from opining as to "the known standard of care in medicine . . . and industrial hygiene." (Pls'. Resp., 3). As noted, one of the "essential elements" of a products liability action lying in negligence is "evidence of a standard of care owed by the reasonably prudent person *in similar circumstances*." City of Thomasville v. Lease-Afex, Inc., 300 N.C. 651, 656 (1980). The standard of care applicable to physicians or industrial hygienists is not the same as the standard of care applicable to manufacturers. For instance, the standard of care owed by a manufacturer designing or formulating a product incorporates numerous factors, including "[t]he nature and magnitude of the risks of harm associated with the design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product," "[t]he utility of the product, including the performance, safety, and other advantages associated with that design or formulation," and "[t]he technical, economic, and practical feasibility of using an alternative design or formulation at the time of manufacture," among others. N.C. Gen. Stat. § 99B-6(b). There is no evidence that the standard of care for someone in medicine or industrial hygiene would account for such factors, which are unrelated to health. Introduction of testimony regarding these other "standards of care" would therefore pose a risk of confusing the issues, misleading the jury, and subjecting defendants to unfair prejudice which would substantially outweigh any probative value from such testimony.

With respect to testimony regarding other matters of corporate conduct, the court believes that adherence to the legal principles noted in the above discussion will minimize the risk of undue prejudice or misleading the jury. Any Rule 403 concerns raised by specific aspects of expert testimony regarding corporate conduct may be addressed at trial, with the benefit of considering the actual testimony which is proffered.

18

## CONCLUSION

For the reasons explained above, defendant Ford's motion to exclude expert testimony regarding corporate conduct is granted in part (DE 291), joined by defendant Honeywell (DE 360), is granted in part, and denied in part. The court summarizes its rulings as follows:

A. Brody may not offer opinion as to corporate conduct, given that plaintiffs have not carried their burden to offer evidence establishing the admissibility of his testimony on this subject.

B. Plaintiffs' experts are precluded from testifying as to whether defendants actually knew the dangers of asbestos at the relevant time period, or other matters as to intent, motive, or state of mind.

C. Plaintiffs' experts likewise are precluded from testifying as to whether any warnings or instructions were "adequate" or "inadequate," or whether the selection of asbestos was "reasonable."

D. Plaintiffs' experts may opine as to the state of medical and scientific knowledge at various times, including the state of knowledge regarding how to prevent asbestos disease at those times. They may also opine on whether defendants' internal documents or the testimony provided by defendants' employees includes information regarding these subjects.

E. Plaintiffs' experts may compare defendants' conduct to specific standards or principles in their respective fields. However, they may not testify as to a "standard of care" in medicine or industrial hygiene.

F.	Mark is precluded from testifying as to the "timeliness" of any of defendants' actions, or whether defendants should have undertaken investigations or issued warnings. However, Hays may offer opinion on these matters.

SO ORDERED, this the 29th day of May, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge