IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-752-FL

| | | |
|---|---|---|
| GRAHAM YATES and BECKY YATES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| FORD MOTOR COMPANY and HONEYWELL INTERNATIONAL, INC., | ) ) ) ) | |
| Defendants. | ) | |

This matter comes now before the court on five motions in limine filed by defendants Ford Motor Company ("Ford") and Honeywell International, Inc. ("Honeywell"), all of which raise issues regarding expert testimony on particular subjects or items of evidence (DE 254, 259, 276, 279, 287). These motions have been fully briefed. In this posture, the issues raised are ripe for ruling as set forth below.[1]

**BACKGROUND**

Plaintiffs allege that Graham Yates was exposed to brake dust from brakes manufactured or

---

[1] Plaintiffs' motion to introduce a witness at hearing next week through video-conferencing technology, (DE 400), was allowed at telephonic hearing and conference May 28, 2015. The court also confirmed no evidence will be offered of the type which would implicate several of plaintiffs' motions in limine, (DE 303, 307), and, accordingly, denied these motions as moot. Separate order issued May 26, 2015, on plaintiffs' motion to strike motions, denying same. (DE 387). The court issued ruling May 11, 2015, on eight interrelated motions in limine variously filed by defendants. (DE 255, 256, 261, 281, 283, 285, 289, 294). Certain other motions were addressed at telephonic hearing April 8, 2015. (DE 277, 311, 330). Finally, on May 29, 2015, the court issued order granting in part, and denying in part, defendant Ford's motion in limine to exclude expert testimony regarding corporate conduct (DE 291). As of this date, there remain pending the parties' additional motions in limine, (DE 257, 258, 260, 273, 297, 299, 301, 305, 309, 380, 382), together with plaintiffs' motion to amend complaint. (DE 377).

supplied by defendant Honeywell's predecessor, The Bendix Corporation ("Bendix"). Plaintiffs allege that Graham Yates was exposed to asbestos from Bendix brakes as a gas station attendant from 1956 to 1957, from brake jobs performed on personal vehicles in the 1950s and 1960, and from working as a clerk in an automobile parts warehouse from 1961 to 1962. Plaintiffs also allege that Graham Yates was exposed to defendant Ford's products while working as a gas station attendant in 1956 and 1957, and while working as a parts salesman and delivery driver for an independent Ford dealership in 1960. These exposures allegedly caused Graham Yates' mesothelioma, diagnosed August 13, 2012.

The testimony of the parties' designated experts promises to feature prominently in each side's case, and has been the subject of heated dispute, as the following discussion illustrates.

**COURT'S DISCUSSION**

A.  Defendant Honeywell's Motion to Exclude Case Reports, Compilations of Case Reports and Opinion Testimony Based on Case Reports (DE 254); Defendant Ford's Motion to Exclude Anecdotal Evidence of Disease (DE 279), joined by defendant Honeywell (DE 360)

Defendant Honeywell moves to exclude evidence regarding "case reports," which it defines as "reports in medical journals describing clinical events involving one individual or a few individuals." (Honeywell Memo. In Supp., 1) (DE 263) (citing Mary Sue Henifin, et al., "Reference Guide on Medical Testimony," in Reference Manual on Scientific Evidence, 474-75, 480 2d ed. (Federal Judicial Center 2000)). Defendant Ford's motion to exclude anecdotal evidence likewise relates to "anecdotal reports of other individuals who reportedly contracted asbestos-related diseases," which defendant Ford also refers to as "case reports." (Ford Memo. In Supp., 1) (DE 280). Defendants challenge the case reports on the basis of the standards of relevancy and reliability, argue that epidemiological studies are necessary to support such reports, and contend that

introduction of the reports would be prejudicial under Federal Rule of Evidence 403.  The court considers the objections in turn.

    1.    Relevance

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The "basic standard of relevance . . . is a liberal one."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 587 (1993).

Plaintiffs' response suggests two reasons for offering case reports: 1) as evidence that defendants had notice, and 2) as evidence of causation.

        a.    Notice

Case reports may be reelevant to show notice.  The universe of available knowledge on a subject, also known as the "state of the art," is relevant to a showing of whether defendants should have known about the risk of their products and/or the need for warning.  Horne v. Owens-Corning Fiberglas Corp., 4 F.3d 276, 281 (4th Cir. 1993).  Case reports constitute part of that universe of available knowledge on the subject of the dangers of asbestos and appropriate methods of protection.

The Fourth Circuit has previously upheld the admissibility of case reports to show notice regarding the danger of a product.  Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378 (4th Cir. 1995).  In Benedi, the plaintiff brought suit against the manufacturer of Tylenol for failure to warn of the possible dangers of mixing Tylenol with alcohol and for breach of implied warranties.  Id. at 1381. McNeil-P.P.C., Inc. ("McNeil") contended that the district court erred when it admitted into evidence certain case reports known as Drug Experience Reports ("DERs"), along with summary charts of the DERs.  Id. at 1385.  The reports documented cases of liver injury associated with combining

3

acetaminophen – the active ingredient in Tylenol – with alcohol. Id. at 1383. The Fourth Circuit affirmed the introduction of the case reports because they were offered to prove that McNeil had notice of the dangerous propensities of Tylenol and alcohol. Id. at 1385-86. See also Brown v. Novartis Pharms. Corp., No. 7:08-CV-130-FL, 2012 WL 3066588, at *9 (E.D.N.C. July 27, 2012) (allowing adverse drug experience reports to show defendant's notice).

As in Benedi, the existence of case reports detailing the diagnosis of asbestos-related disease under circumstances similar to plaintiff, in the relevant time period, makes it more probable that defendants had notice regarding the dangers of their products. The evidence is therefore relevant to the issue of notice.

      b.     Causation

Within certain constraints, case reports documenting other episodes of asbestos-related disease likewise pass the liberal standard of relevance in showing causation. To satisfy the element of causation that is required for plaintiffs' negligence and failure to warn claims, plaintiffs must demonstrate both that exposure to asbestos can cause mesothelioma as a general matter (i.e. "general causation"), and that Graham Yates's specific instances of exposure were the cause of his own mesothelioma (i.e. "specific causation"). See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 263 (4th Cir. 1999) ("In order to carry the burden of proving a plaintiff's injury was caused by exposure to a specified substance, the plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure.") (quotation marks omitted); Doe v. Ortho-Clinical Diagnostics, Inc., 440 F. Supp. 2d 465, 471 (M.D.N.C. 2006) (distinguishing between general and specific causation).

Regarding causation, the facts of consequence in this case concern the potential of chrysotile

asbestos to cause mesothelioma, whether mesothelioma may be contracted from work with brakes containing asbestos, and whether plaintiff Graham Yates' own mesothelioma was contracted through is work with brakes containing asbestos. The diagnosis of mesothelioma or other asbestos-related lung diseases persons who have been exposed to chrysotile asbestos, including in brake products, makes it more probable that plaintiff Graham Yates' mesothelioma was caused by asbestos. See Rule 401, 402. The degree of similarity which is necessary is discussed further below.

    2.     Reliability

        a.     Reliability of Case Reports, in General

Defendants' motions challenge the admissibility of case reports under Rule 702 of the Federal Rules of Evidence and Daubert. Rule 702 provides that expert testimony is appropriate when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Id. Courts have distilled the requirements of Rule 702 into two crucial inquiries: 1) whether the proposed expert's testimony is relevant, and 2) whether it is reliable. Kumho Tire, 526 U.S. at 141; see Daubert, 509 U.S. at 589; United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). In assessing the reliability of expert testimony, a court should consider

> (1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (quoting Daubert, 509 U.S. at 593-94)

(quotation marks omitted). This list of factors is not definitive or exhaustive. Crisp, 324 F.3d at 266.

For the purpose of formulating opinion as to what was known regarding asbestos and defendants' brake products in the relevant time period, there is nothing unreliable about consulting case reports, as a general matter. Indeed, case reports may be "highly probative on the issue of notice." Benedi, 66 F.3d at 1386. The gravamen of defendants' motions is not directed at plaintiffs' use of case reports to establish notice, but rather to establish causation. Further discussion on the reliability of using the case reports to show causation is unnecessary.

As noted by defendants, some courts have excluded opinions which rely on case reports to demonstrate causation. Dunn v. Sandoz Pharms. Corp., 275 F. Supp. 2d 672, 682-83 (M.D.N.C. 2003); see also Glastetter v. Novartis Pharms. Corp., 252 F.3d 986, 989-90 (8th Cir. 2001). Such reports have been criticized as reliable evidence of causation because they are not controlled studies, are not verified through peer review, fail to exclude other potential causes, and frequently lack analysis. Dunn, 275 F. Supp. at 682; Glastetter, 252 F.3d at 989-90.

However, the weight of the authorities hold that case reports may be used to support other reliable proof of causation. Rider v. Sandoz Pharms. Corp., 295 F.3d 1194, 1199 (11th Cir. 2002) ("*[W]hile they may support other proof of causation,* case reports alone ordinarily cannot prove causation.") (emphasis added); Watkins v. Cook Inc., No. 2:13-CV-20370, 2015 WL 1395773, at *6-7 (S.D.W. Va. Mar. 25, 2015) ("While I agree that animal studies and case reports do not by themselves conclusively demonstrate causation . . . it does not follow, as Cook suggests, that an expert's reliance on these works renders her opinion inadmissible under Daubert, especially when she has relied on other sources to reach the opinion."); Mahaney *ex rel.* Estate of Kyle v. Novartis

Pharms. Corp., 835 F. Supp. 2d 299, 312 (W.D. Ky 2011) (rejecting a "general rule of exclusion" for adverse drug experience reports, and finding they are proper to prove "causation in correlation" when appearing alongside other evidence); Nucor Corp. v. Bell, No. C/A 206-CV-02972-DCN, 2008 WL 4442571, at *7 (D.S.C. 2008) (noting that "courts have accepted the use of anecdotal evidence when used to confirm conclusions arrived at by other, more reliable methods"); Smith v. Wyeth-Ayerst Labs. Co., 278 F. Supp. 2d 684, 695 (W.D.N.C. 2003) ("Standing alone, case reports may or may not be a sufficient basis for expert opinion regarding causation. Nonetheless, case reports can provide supportive or corroborating data.").

Plaintiffs' experts rely on a variety of sources to support their expert opinions, in addition to case studies. For example, plaintiffs' expert Eugene Mark, M.D. ("Mark"), refers to epidemiological studies, studies regarding the release of asbestos fibers during various activities, including brake maintenance and opening brake boxes, animal studies, and cellular experiments, among other authorities. See (Expert Report and Decl. of Eugene Mark, 12) (DE 184-20). The experts have not relied solely on case reports as the source of their opinions, and the scope of defendants' instant motions is not broad enough to encompass the reliability of these other sources. The court thus declines to adopt a general rule excluding case reports or anecdotal evidence as a source of evidence regarding causation.

      b.      Reliability of Using Case Reports in Light of Epidemiological Studies

Defendant Honeywell presents a narrower variation of the argument against case studies, asserting that epidemiological studies are needed to support a causation opinion in toxic tort cases such as the present case.

Before reaching the merits of the objection, some definition of concepts and terminology is

7

Case 5:12-cv-00752-FL   Document 409   Filed 05/30/15   Page 7 of 20

in order. "Epidemiology is the field of public health that studies the incidence, distribution, and etiology of disease in human populations." Michael D. Green, et al., "Reference Guide on Epidemiology," in Reference Manual on Scientific Evidence, 569 (3d ed. 2011), (available at http://www.fjc.gov/public/pdf.nsf/lookup/SciMan3D01.pdf/$file/SciMan3D01.pdf) ("Federal Reference Manual").[2] The field "focuses on the question of general causation (i.e., is the agent capable of causing disease?) rather than that of specific causation (i.e., did it cause disease in a particular individual?)." Id. at 570. Importantly, however, "*an association is not equivalent to causation.*" Id. Thus, "epidemiology cannot prove causation; rather, causation is a judgment for epidemiologists and others interpreting the epidemiologic data." Id. at 616; see also Deutsch v. Novartis Pharms. Corp., 768 F. Supp. 2d 420, 431 (E.D.N.Y. 2011) ("Although epidemiology does not directly address the question of causation, the results of epidemiologic studies can be highly probative on the issue of causation.") (quoting DeLuca by DeLuca v. Merrell Dow Pharm., Inc., 911 F. 2d 941, 958 (3d Cir. 1990)) (quotation marks omitted).

In contrast to case studies or reports dealing with only a few individuals, epidemiological studies consider large numbers of people to identify associations between a particular agent and a disease. See Federal Reference Manual, 569 (defining "epidemiology" as the study of "disease in human populations."); Jackson v. Louisville Ladder Inc., 586 F. App'x 882, 884 (3d Cir. 2014) (defining epidemiology as "the study of the incidence of disease in large populations"); Bickel v. Pfizer, Inc., 431 F. Supp. 2d 918, 922 n.1 (N.D. Ind. 2006) (defining "epidemiological studies" as "studies of large numbers of humans exposed to some chemical in order to determine if they are

---

[2] Citations to page numbers in the Federal Reference Manual are to the PDF page numbers that appear online, and not to the page numbers that actually appear at the bottom of the actual document.

more likely to get a particular disease or diseases than people not so exposed"); Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 715 (Tex. 1997) ("Epidemiological studies examine existing populations to attempt to determine if there is an association between a disease or condition and a factor suspected of causing that disease or condition."). Courts have recognized epidemiological studies as a generally superior form of evidence on causation. See Norris v. Baxter Healthcare Corp., 397 F.3d 878, 882 (10th Cir. 2005) ("[E]pidemiology is the best evidence of general causation in a toxic tort case."); Allison v. McGhan Med. Corp., 184 F.3d 1300, 1316 (11th Cir. 1999) ("[I]n the face of controlled, population-based epidemiological studies which find otherwise, these case studies pale in comparison."); Allen v. Pa. Eng'g Corp., 102 F.3d 194, 197 (5th Cir. 1996) ("Undoubtedly, the most useful and conclusive type of evidence in a case such as this [involving question regarding occupational exposure to a chemical] is epidemiological studies").

However, the Fourth Circuit has repeatedly resisted promulgating a hard and fast rule requiring epidemiological evidence to support expert opinion on causation. "Under the Daubert standard, epidemiological studies are not necessarily required to prove causation, as long as the methodology employed by the expert in reaching his or her conclusion is sound." Benedi, 66 F.3d at 1384; see also City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 980 n. 2 (4th Cir. 1987) (rejecting argument that city was required to introduce epidemiological studies in order to support a finding that levels of asbestos contamination in city hall posed a serious risk of asbestos-related disease).

At any rate, defendant Honeywell does not actually assert that plaintiffs' expert opinions are completely lacking in support from epidemiological studies. In fact, a number of the studies cited in Mark's expert report appear to meet the criteria of studies which examine large numbers or

9

populations of people to consider the incidence of disease. Indeed, in support of its motion, defendant Honeywell submitted an expert report from David Garabrant, M.D., M.P.H. ("Garabrant"), which appears to cite to two of the same studies as Mark. See (Garabrant Aff., ¶ 15) (DE 263-1); (Mark Report & Decl., 16) (DE 184-20) (both citing Hansen and Roelofs to support opinions on whether exposure from chrysotile asbestos from brake products can cause mesothelioma).

Defendant Honeywell's primary contention is that case reports must be excluded because superior epidemiological evidence exists on the subject of whether exposure to brake dust causes mesothelioma. As noted above, however, epidemiology alone cannot prove causation. Federal Reference Manual at 616; see also Deutsch, 768 F. Supp. 2d at 431. Analysis must bear in mind that the ultimate "touchstone" for the admissibility of testimony utilizing case reports to demonstrate causation is whether the use such case reports would be "reliable." See Crisp, 324 F.3d at 268 ("The touchstones for admissibility under Daubert are two: reliability and relevancy."); Benedi, 66 F.3d at 1384 (rejecting argument that expert testimony be restricted to opinions based only on epidemiological data, because "Daubert merely requires that the expert testimony be both relevant and reliable."). Pursuant to the authorities noted above, as a general matter, case studies may provide data which corroborates or otherwise supports epidemiological studies regarding causation. E.g. Wyeth-Ayerst Labs., 278 F. Supp. 2d at 695. Experts may properly rely upon these documents, as long as doing so would be consistent with sound methodology. Benedi, 66 F.3d at 1384.

The court thus turns to consider the specific evidence that has been presented in this case on the issue of whether it is sound methodology to rely upon case reports in conjunction with other evidence of causation. Mark himself declares that "[i]t has been generally accepted by the medical and scientific community for approximately fifty years that a history of asbestos exposure in a given

10

case is reliable evidence upon which to base a causation determination in that case." (Mark Report and Decl., 3-4, n. 1). In support, Mark refers to a case record from Massachusetts General Hospital in 1947, studies from Holland in the 1950s, and other studies in the 1960s. (Id.). Plaintiffs also refer to Dr. Harvey Checkoway for the following proposition:

> Case series reports are particularly informative in situations where there are identified occurrences of very rare conditions for which there are few, if any, established causal factors . . . In fact, recognition of even a small number of cases of the "sentinel" diseases—such as liver angiosarcoma and malignant mesothelioma, which is strongly related to asbestos exposure – can sometimes be invoked as prima facie evidence of exposure to the putative causal agent . . . . Case series reports can be virtually conclusive in their own right when the health outcome is a very rare disease or an uncommon manifestation of a relatively common condition.

Checkoway, et al., Research Methods in Occupational Epidemiology, 248 (2d ed. 2004) (citation omitted) (DE 318-3)

In addition, the court takes note of a report by A.M. Langer and W.T.E. McCaughey, describing a 55-year-old brake maintenance and repair worker who was diagnosed with mesothelioma after servicing automobiles for almost 40 years. Langer and McCaughey, "Mesothelioma in a Brake Repair Worker," Lancet (Nov. 13, 1982) (DE 338-5) ("Langer and McCaughey Report"). This case report was more recently noted by Marty Kanarek in an article conducting a worldwide literature review of asbestos and associated mesothelioma which reaches the conclusion that chrysotile asbestos has caused mesothelioma. Kanarek, Mesothelioma from Chrysotile Asbestos: Update," 21 Annals Epidemiology 688, 690 (2011) (DE 333-4).

The court also views this evidence in light of the Federal Reference Manual. As is particularly relevant to the opinion of Mark, a physician, the Federal Reference Manual notes that, "physicians will often use any type of evidence that might support causation, for example . . . case

11

reports," and further provides that, "[a]lthough they are at the bottom of the evidence hierarchy, unsystematic clinical observations or case reports may be the first signals of adverse events or associations that are later confirmed with larger or controlled epidemiological studies." Federal Reference Manual, 724.

Defendant Honeywell, meanwhile, presents evidence disputing reliability through the affidavit of its expert, Garabrant. Garabrant testifies that "[c]ase reports do not provide any methodological basis for determining general causation," and that "[t]hey cannot be considered scientific evidence of causation unless they contain information that allows a systematic evaluation of the validity of the hypothesis." (Id., ¶ 12).

The court finds plaintiffs' evidence is sufficient to carry their burden of showing reliability, where the weight of the record evidence, along with the court's consideration of public documents, indicates that the technique of using case reports as supplemental evidence of causation has been subjected to peer review and is generally accepted in the scientific and medical communities.

4. Unfair Prejudice and Misleading the Jury

Defendants also argue that the case reports are unfairly prejudicial and misleading under Rule 403. Case reports effectively constitute evidence of prior incidents regarding use of defendants' products. Before such evidence can be admitted into the record, plaintiffs must demonstrate that the case reports meet a baseline level of similarity with the case at hand. See Benedi, 66 F.3d at 1386 (requiring case reports to be "sufficiently similar to Benedi's case to be admissible on the issue of notice."); Mirchandani v. Home Depot U.S.A., Inc., 470 F. Supp. 2d 579, 583 (D. Md. 2007) ("Where a party seeks to introduce evidence of other accidents, he must present a factual foundation for the court to determine that the other accidents were substantially similar to the accident at issue");

12

Buckman v. Bombardier Corp., 893 F. Supp. 547, 552 (E.D.N.C. 1995) (same). The rationale behind these "similarity" requirements is that other incident evidence has significant potential to be highly prejudicial, as well as to consume time and distract the jury to focus on collateral matters. See Landis v. Jarden Corp., 5 F. Supp. 3d 808, 813 (N.D.W. Va. 2014); Tunnell v. Ford Motor Co., 330 F. Supp. 2d 707, 730 (W.D. Va. 2004); Buckman, 893 F. Supp. at 552.

The degree of similarity required is contingent on the purpose for which the evidence is offered. "When prior incidents are admitted to prove notice, the required similarity of the prior incidents to the case at hand is more relaxed . . . . The incidents need only be sufficiently similar to make the defendant aware of the dangerous situation." Benedi, 66 F. 3d at 1386. In Benedi, for example, prior case reports were found "sufficiently similar" where "all of the reports at issue involved liver injury associated with therapeutic doses (near or slightly above the recommended doses) of Tylenol in alcohol drinkers." Id. at 1386.

On the other hand, where other-incident evidence is offered to prove the existence of a defective product, negligence, or causation, a higher degree of similarity, often referred to as "substantial similarity," is necessary. Landis, 5 F. Supp. 3d at 813 ("Where other-incident evidence is offered to prove the existence of a defect or negligence, a high degree of similarity is required."); In re C.R. Bard, No. 2:11-CV-195, 2013 WL 3282926, at *5 (S.D.W. Va. June 27, 2013) (requiring evidence of other injuries from case reports to "be substantially similar to those in the case at bar."); Derosiers v. MAG Indus. Automation Sys., LLC, 675 F. Supp. 2d 598, 602 (D. Md. 2009) ("Substantial similarity is especially important in cases in which the evidence is proffered to show the existence of a dangerous condition or causation.") (quoting Louis R. Frumer & Melvin Friedman, 3 Products Liability § 18.02[1][b]); Buckman, 893 F. Supp. at 552 (requiring accidents to be

13

"'substantially similar' . . . . "irrespective of whether the proponent attempts to introduce evidence of other accidents as proof of an alleged design defect, causation, or notice of a defect."). Given that the purpose for which evidence is offered affects the degree of similarity required, it may also follow that other incidents need not have the same level of similarity to show general causation as is required to show specific causation.

At this juncture, where specific case reports have not been submitted for the court's review, and the precise purpose of each case report (i.e. to show general causation, specific causation, or notice) has not been fully delineated, it is not possible to assess whether the reports contain the requisite similarity to the incidents of plaintiffs' own situation. The defendants' instant motions, which seek broad exclusion of all case reports, have not sufficiently alerted plaintiffs of any need to show the requisite level of similarity for any specific case report. Instead, defendants only bring general and conclusory arguments that the probative value of case reports, as a whole, will be substantially outweighed by unfair prejudice, issue confusion and misleading the jury. The court thus denies defendants' motions, without prejudice to further arguments raised as to specific case reports.

5. Conclusion

Accordingly, for the reasons provided above, the court will deny defendants' motions to exclude case reports and other anecdotal evidence. Defendants may raise objections to specific evidence regarding specific case reports at trial.

C. Defendant Ford's Motion to Exclude Evidence Related to the Australian Mesothelioma Registry ("AMR") (DE 276), joined by Defendant Honeywell (DE 360)

Defendant Ford moves to exclude any "testimony, evidence, or reference . . . as well [as] any

14

data, analysis, or studies based on the AMR." (Mot. To Exclude AMR, 1). The AMR is a record assembled by the Australian government, documenting deaths caused by mesothelioma, and providing information on the occupational and environmental history of the deceased. See (Leigh, et al., "The Incidence of Mesothelioma in Australia 1996 to 1998," Australian Mesothelioma Register Report 2001, 8 (July 2001) (DE 278-4).[3] Defendant Ford moves to exclude the evidence as unreliable, unduly prejudicial and misleading. Plaintiffs' response indicates that they do not intend to introduce the AMR directly into evidence, but only seek to use it to he extent that it is discussed in peer-reviewed articles that their experts have relied upon. (Pls'. Resp., 2) (DE 318).

As noted above, plaintiffs have the burden of showing that expert testimony is admissible. See Cooper, 259 F.3d at 199. Because the AMR will be used as a basis of the testimony of plaintiffs' experts, Federal Rule of Evidence 703 applies.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703.

Plaintiffs' response on this issue is insufficient. The only evidence they point to regarding the AMR's reliability is that the AMR has been referenced in peer-reviewed articles, accompanied by a conclusory assertion that "[t]hese materials are reliable and are part of the body of materials on which Plaintiffs' experts have based their opinions in this case." (Pls'. Resp., 1-2).

However, "publication (or lack thereof) in a peer reviewed journal . . . [is] a relevant, though not dispositive, consideration" in establishing the reliability of expert testimony. Daubert, 509 U.S.

---

[3] Footnote citation is to the page numbers assigned in the court's docket, not the page number that appears in the report itself.

15

at 592-93. Plaintiffs' response provides no details as to how the AMR was referenced in these reports, or whether those reports used the AMR in the same way that plaintiffs' experts seek to use this document. Plaintiffs' response does not present the peer reviewed articles themselves. They have not satisfied their burden of demonstrating that expert testimony based on the report is reliable. Accordingly, defendant Ford's motion is granted.

D.  Honeywell's Motion to Exclude Welch Article (DE 259); Ford's Motion to Exclude Welch Paper (DE 287)

Defendants file separate motions seeking to exclude a paper written by Laura S. Welch, M.D. "Abestos Exposure Causes Mesothelioma, But Not *This* Asbestos Exposure: An Amicus Brief to the Michigan Supreme Court," 13 Int'l. J. Occup. Env't Health 318 (2007) (DE 288-2) ("Welch Paper"). The article collects evidence which allegedly supports the conclusion that asbestos from brakes can and does cause mesothelioma. (Welch Paper, 2)[4]. Welch is joined by 51 signatories, including plaintiffs' experts Mark and Brody, along with other consultants, doctors, professors, and public health officials. (Id., 9). Defendants argue that the article is hearsay, cannot serve as the basis of expert testimony, and is unduly prejudicial. The court agrees that exclusion is proper.

Plaintiffs' response states that the Welch Paper will be used to support their experts' opinions "that working with asbestos brakes and clutches can be a substantial factor in increasing the risk of developing mesothelioma." (Pls'. Resp., 2) (DE 325). Such use will entail using out of court statements made in the Welch Paper to prove the truth of the matters asserted. This is the definition of hearsay, and thus properly excluded unless it meets an exception. Fed. R. Evid. 801, 802. Plaintiffs nevertheless argue that the article may be used as a "Learned Treatise" under Federal Rule

---

[4] Pin citations are to the page number assigned in the court's document, not the page number that appears in the publication itself.

16

Case 5:12-cv-00752-FL   Document 409   Filed 05/30/15   Page 16 of 20

of Evidence 803(18).

The "Learned Treatise" exception to hearsay provides that statements contained in treatises, periodicals or pamphlets may be offered for truth if:

> (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
> (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

Fed. R. Evid. 803(18).

The preparation of a report or opinion specifically for the purpose of litigation has been recognized as a characteristic which undermines the reliability of that report or opinion. See United States v. Tran Trong Cuong, 18 F.3d 1132, 1143-44 (4th Cir. 1994) (finding it doubtful that medical report met the Rule 703 standards for the basis of expert testimony, because "[r]eports specifically prepared for purposes of litigation are not, by definition, of a type reasonably relied upon by experts in the particular field.") (quotation marks omitted); Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 204 (4th Cir. 2000) (holding that accident investigation report prepared primarily for litigation was unreliable for purposes of establishing the business records exception to hearsay); Wehling v. Sandoz Pharms. Corp., No. 97-2212, 1998 WL 546097, at *3 (4th Cir. Aug. 20, 1998) ("Another significant fact weighing against admitting the testimony is where, as here, the expert developed his opinions expressly for the purposes of testifying."); Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People, 27 F. Supp. 3d 671, 673 (E.D. Va. 2013) ("An additional factor to consider [in the admissibility of expert testimony] is whether the expert testimony was prepared solely for purposes of litigation, or whether it flowed naturally from the expert's research or technical work."). The principle applies equally to treatises that were initially

prepared for the purposes of asserting a position in litigation.

The Welch Paper itself demonstrates that it was prepared as an amicus brief to the Michigan Supreme Court, in order to respond to arguments raised before that court that "any conclusion that asbestos from brakes has caused a signature asbestos-related disease in a particular person must be 'junk science.'" (Welch Paper, 2). Other jurisdictions have excluded the Welch Paper on finding that it lacks the necessary indicia of reliability. Barabin v. Albany Int'l Corp., No. C07-1454RSL, 11 (W.D. Wash. Sept. 18, 2009) ("The Court recognizes that this brief is an advocacy piece intended to persuade the Michigan Supreme Court, not an independent, peer-reviewed study."); Mannahan v. Caterpillar, No. 12-Cl-02070 (Cir. Ct. App. Ky.) (March 10, 2014) ("The Court finds that this is not a 'learned treatise' contemplated by [Kentucky Rule of Evidence 803(18), the state parallel to Rule 803(18)], but an article written for the purpose of advocating a particular position."); Ring v. Alfa Laval, Inc., No. 07-00275200 (Cir. Ct. App. Va.) (July 26, 2008) ("I don't know how . . . an Amicus brief, legal brief, filed with somebody can ever be considered as scientific evidence."). The court follows suit here. The Welch Paper does not meet the requirements of Rule 803(18), and must be excluded as hearsay.

Plaintiffs have not shown that any experts will be able to establish the Welch Paper as a reliable authority. It does not appear that any expert would reasonably rely on facts or data presented in a legal amicus brief in forming an opinion as to causation. Plaintiffs repeatedly point to the number of signatories to the Welch Paper, but lending one's signature to support a paper is a different matter than relying on that paper. Plaintiffs also broadly impugn the motivations behind studies, asserting that "defendant Ford was part of the consortium of asbestos product defendants that have spent $30 Million to create a body of published asbestos-brakes-are-safe articles for solely one

18

purpose – defense of litigation." (Pls'. Resp., 3) . No motions have been filed to exclude any of these unnamed studies. Moreover, the admissibility of other studies is not the issue in the present motion. Plaintiffs have failed to show that a hearsay exception applies to the Welch Paper.

For the same reasons, the court finds that plaintiffs have failed to show that the Welch Paper may be used as a basis of expert witness testimony under Rule 703. Because the document is not sufficiently reliable, it would not be reasonable for experts to rely on it in forming an opinion on the subject. See Fed. R. Evid. 703; Tran Trong Cuong, 18 F.3d at 1143-44 ("Reports specifically prepared for purposes of litigation are not, by definition, of a type reasonably relied upon by experts in the particular field.").

For these reasons, the court grants defendants' motions to exclude the Welch Paper. (DE 259, 287).

## CONCLUSION

Based on the foregoing, the court orders the following:

A. Defendant Honeywell's Motion to Exclude Case Reports, Compilations of Case Reports and Opinion Testimony Based on Case Reports (DE 254) and Defendant Ford's Motion to Exclude Anecdotal Evidence of Disease (DE 279) are DENIED.

B. Defendant Ford's Motion to Exclude Evidence Related to the Australian Mesothelioma Registry ("AMR") (DE 276) is GRANTED.

C. Defendant Honeywell's Motion to Exclude Welch Article (DE 259) and defendant Ford's Motion to Exclude Welch Paper (DE 287) are GRANTED.

SO ORDERED, this the 29th day of May, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge